UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

SYBRENA EVANS,

              Plaintiff

V.

DANIELLE ROBERTSON, et al.
          Defendants.

Case no: 5:24-cv-13435
Hon. Judith E. Levy
Magistrate Judge Elizabeth A. Stafford

---

PLAINTIFF'S RESPONSE TO ORDER TO SHOW CAUSE REGARDING

SERVICE AND PERSONAL JURISDICTION

---

**Table of Contents**

I. INTRODUCTION       3

II. SERVICE WAS LEGALLY VALID, DEFENDANT IS ESTOPPED FROM DENYING SERVICE, AND HER

CONDUCT WAIVES ANY OBJECTION TO JURISDICTION       5

A. Service on Defendant's Registered Agent Was Proper Under Rule 4(e)(1)       5

B. Defendant's DMCA Filing Constitutes Consent to Service and Jurisdiction       7

C. YouTube's Notice Equals Actual Service Under 17 U.S.C. § 512       8

D. Defendant Is Estopped from Denying Use of Provided Name and Address       10

E. CCB Filings and Statements Show Pattern of Abuse and Deception       10

F. Service on A Registered Agent, Inc. Was Proper Under Rule 4 and Delaware Law       11

1

G. Defendant's Alleged "Cancellation Email" Is Unreliable and Legally Insufficient   13

H. Defendant's Use of Aliases and Addresses Confirms Proper Service   15

I. Defendant's Conduct and Filings Waive Objections to Service and Jurisdiction   16

J. Subpoena Delivery and Defendant's Own Admissions Confirm Actual Notice and Undermine

Her Service Challenge   17

III. PERSONAL JURISDICTION IS PROPER: DEFENDANT TARGETED MICHIGAN THROUGH

DELIBERATE, HARMFUL, AND FRAUDULENT CONDUCT   19

A. Legal Standard for Personal Jurisdiction: Federal Due Process and Michigan's   19

Long-Arm Statute   19

B. Defendant's Purposeful Availment of Michigan Jurisdiction   21

C. Plaintiff's Claims Arise From Defendant's Michigan-Directed Conduct   21

D. Exercising Jurisdiction Over Defendant Is Reasonable and Just   23

E. Defendant's Use of False Identities and Deceptive Filings to Target Michigan   24

F. Defendant's Recorded Threats Demonstrate Intent to Harm Plaintiff in Michigan   25

IV. CONCLUSION   26

DECLARATION OF SYBRENA EVANS UNDER 28 U.S.C. § 1746   28

EXHIBIT LIST   31

LEGAL CITATIONS SUPPORTING PLAINTIFF'S RESPONSE   118

COMES NOW Plaintiff, Sybrena Evans, pro se, and hereby submits her Response to the Court's Order to Show Cause (ECF No. 61) dated May 22, 2025, regarding whether Defendant Danielle Robertson was properly served and whether this Court may exercise personal jurisdiction over her. Based on the extensive factual record, judicial admissions, established legal precedent, and corroborating documentation, Plaintiff respectfully submits that service was proper and personal jurisdiction is warranted.

## I. INTRODUCTION

This action arises from Defendant Danielle Robertson's calculated and sustained online harassment campaign targeting Plaintiff Sybrena Evans, a licensed medical professional residing and practicing in Michigan. Following repeated DMCA counter-notifications and copyright complaints by Defendant, Plaintiff initiated this

The Court has ordered Plaintiff to show cause why service should be deemed proper and whether personal jurisdiction exists over Defendant. Based on the extensive factual record, judicial admissions, and corroborating documentation, Plaintiff submits this response to confirm:    Defendant was properly served in accordance with Rule 4(e)(1) and Delaware state law;

- Defendant was properly served in accordance with Rule 4(e)(1) and Delaware state law;

- Defendant received actual and repeated notice of this litigation;

- The Court has personal jurisdiction based on Defendant's purposeful targeting of Plaintiff in Michigan;

3

- Defendant is in default and is estopped from contesting service or jurisdiction.

Defendant was served multiple times at the Delaware address she affirmatively used in four DMCA counter-notifications and two Copyright Claims Board filings — all signed under penalty of perjury. She continued using this address through December 2024. No certified revocation exists, and her recent disavowal is both untimely and legally ineffective. See *Direct Mail Specialists, Inc. v. Eclat Computerized Techs., Inc.*, 840 F.2d  685, 688 (9th Cir. 1988); *Aguirre v. Reese*, No. 2:12-cv-01837, 2013 WL 6577085, at *5 (D. Nev. Dec. 13, 2013).

Defendant has also appeared extensively in this action, filing over 170 pages of motions, declarations, and exhibits (ECF Nos. 28, 29, 33, 35, 39, 49). Her filings include legal arguments on the merits, evidentiary attacks, and procedural requests — conduct that constitutes a general appearance and waives any jurisdictional or service objections. See *Gerber v. Riordan*, 649 F.3d 514, 520–21 (6th Cir. 2011); *Benny v.  Pipes*, 799 F.2d 489, 492 (9th Cir. 1986).

Finally, the Court has personal jurisdiction over Defendant. Her sustained campaign of harassment, defamation, and false complaints was directed at Plaintiff in Michigan, and included multiple attempts to interfere with Plaintiff's professional licensure, communication with state agencies, and coordination with local residents. These acts satisfy both Michigan's long-arm statute, MCL § 600.705, and the constitutional standards set forth in *International Shoe Co. v. Washington*, 326 U.S. 310 (1945), and *Calder v. Jones*, 465 U.S. 783 (1984).  Accordingly, **service was valid, jurisdiction is proper**, and this **case should proceed** on the merits.

4

## II. SERVICE WAS LEGALLY VALID, DEFENDANT IS ESTOPPED FROM DENYING SERVICE, AND HER CONDUCT WAIVES ANY OBJECTION TO JURISDICTION

**A. Service on Defendant's Registered Agent Was Proper Under Rule 4(e)(1)**

Plaintiff served Defendant Danielle Robertson on February 19, 2025, by delivering the Summons and Complaint to A Registered Agent, Inc., 8 The Green, Suite A, Dover, Delaware 19901—an address Defendant repeatedly used in 2024 in DMCA counter-notifications and Copyright Claims Board filings.

Federal Rule of Civil Procedure 4(e)(1) permits service consistent with state law where service occurs. Under **Delaware law**, service on a corporation is proper when made to its registered agent.
See **Del. Code Ann. tit. 8, § 321(a)**.

Delivery was confirmed by signature, with no return or rejection. A legal presumption of valid service arises where the process is delivered to a registered agent repeatedly designated by the defendant.
See:

- *Direct Mail Specialists, Inc. v. Eclat Computerized Techs., Inc.*, 840 F.2d 685, 688 (9th Cir. 1988);

- *United States v. Ziegler Bolt & Parts Co.*, 111 F.3d 878, 881 (Fed. Cir. 1997).

Although Defendant now claims the agency relationship ended in 2023, she continued using the Suite A address as recently as December 10 and 13, 2024. In four sworn DMCA counter-notifications, she declared:

> Danielle Robertson
>
> 8 The Green, STE A
>
> Dover, DE 19901
>
> Danimontana2022@gmail.com

Each filing consented to service and jurisdiction at that address under penalty of perjury, satisfying **17 U.S.C. § 512(g)(3)(D)**.

Her attempt to disavow this relationship relies on an unauthenticated email from "Alana Wilson"—an alias she used elsewhere. The email lacks verification, signature, and metadata. Such claims do not rebut presumptively valid service.

Defendant's denial of her name and corporate ties is a transparent effort to obscure identity and evade service. But courts reject evasion through aliases and shifting narratives:

> "Parties may not evade service by hiding behind pseudonyms while continuing to engage in legal actions using those same identities." — *Doe v. FBI*, 218 F.R.D. 256, 258 (D. Colo. 2003)

Defendant's continued use of the name "Danielle Robertson" and the registered agent address to assert legal rights—followed by a belated denial—gives rise to **estoppel**.  Service was proper under **Rule 4(e)(1)** and **Delaware law**.

**B. Defendant's DMCA Filing Constitutes Consent to Service and Jurisdiction**

On December 10 (three times) and December 13, 2024, Defendant submitted four DMCA counter-notifications to YouTube, each under penalty of perjury, certifying:

- Her name: Danielle Robertson

- Her address: 8 The Green, Suite A, Dover, DE 19901

- Her email: Danimontana2022@gmail.com

These filings comply with 17 U.S.C. § 512(g)(3)(D), which requires the counter-claimant to consent to federal jurisdiction and agree to accept service from the complaining party.

Defendant cannot now disclaim the name and address she affirmed under oath to assert legal rights. These sworn declarations to a third party establish:

- Actual notice of potential litigation

- Express consent to federal jurisdiction

- Acceptance of service

The DMCA counter-notifications are incorporated in the Complaint at ECF No. 1, PageID.28, 31, 34, and 37, and are reattached here as **See Exhibit A**:DMCA Counter-Notifications Submitted by Danielle Robertson to YouTube.
**(Exhibit File, p.33 )**

7

**C. YouTube's Notice Equals Actual Service Under 17 U.S.C. § 512**

Under 17 U.S.C. § 512(g)(2)(B), once Plaintiff notified YouTube of this action on December 23, 2024, YouTube was required to notify Defendant that removed content would be restored unless a court action had been filed. Plaintiff submitted a court-stamped Summons, full Complaint, and proof of filing. **See Exhibit B:**

Court-Stamped Summons, Complaint, and Filing Confirmation Sent to YouTube. **(Exhibit File, p. 37 )**

YouTube issued notice to Defendant on December 24, 2024. That same day, Defendant published a hostile YouTube Community Tab post that falsely accused Plaintiff of stalking and posted a humiliating image from a prior wellness check. Though the post didn't reference the lawsuit directly, its content and timing strongly suggest Defendant had reviewed the legal documents. **See Exhibit C:** Defendant's Public Reaction Following YouTube's Notification of Federal Lawsuit. **(Exhibit File, p.46 )**

YouTube has a consistent practice of forwarding legal filings. On March 4, 2024, YouTube emailed Plaintiff a CCB filing submitted by Defendant—confirming their role in delivering legal notices. **See Exhibit D:** YouTube Email Notification to Plaintiff Re: CCB Filing by Defendant Danielle Robertson (March 4, 2024**).**

Filing by Defendant Danielle Robertson (March 4, 2024**). (Exhibit File, p.52  )**  It is thus highly probable that YouTube similarly delivered the Summons and Complaint to Defendant on December 24, 2024. This satisfies due process, which only requires notice "reasonably calculated" to inform the party.

See *Mullane v. Central Hanover Bank*, 339 U.S. 306 (1950).

Additionally:

- On **December 26, 2024**, Defendant's registered agent accepted delivery at the address she listed in multiple DMCA filings.

- On **February 19, 2025**, service was completed via a licensed process server. **See Exhibit E:** February 19, 2025 — Process Server Affidavit Confirming Delivery at A Registered Agent, Inc. **(Exhibit File, p.55 )**

These three service events—

1. YouTube statutory notice **(Dec. 24, 2024)**

2. Registered agent receipt **(Dec. 26, 2024)**

3. Formal service **(Feb. 19, 2025)**

 —each satisfy Rule 4(e)(1) and Delaware law, and collectively confirm actual notice.

See *Mullane*, 339 U.S. 306; *Jones v. Flowers*, 547 U.S. 220 (2006).

Despite this, Defendant remained silent until March 6, 2025, when Plaintiff subpoenaed  Block, Inc. On April 25, "John Doe" moved to quash; on May 7, Defendant appeared as "Jane Doe" (ECF No. 28), referencing a confidential Google subpoena never publicly filed—confirming she received service materials via the same registered agent she now denies. This timeline confirms **multiple valid service events**. Defendant's delayed  responses and anonymous filings are deliberate evasion tactics—not evidence of  improper service.

**D. Defendant Is Estopped from Denying Use of Provided Name and Address**

Defendant's conduct demonstrates a deliberate pattern: she strategically invoked the name "Danielle Robertson" and used the Delaware registered agent address — 8 The Green, Ste A, Dover, DE 19901 — to assert legal standing and enforce her rights, including filings made under penalty of perjury before the U.S. Copyright Claims Board (CCB). Once Plaintiff relied on these public representations for valid service and identification, Defendant sought to disavow them.

This tactic supports the doctrine of equitable estoppel, which precludes such reversals:

> "Estoppel applies when a party has intentionally misrepresented or concealed material facts and the opposing party has relied on those facts to its detriment."   — *Heckler v. Cmty. Health Servs. of Crawford Cnty., Inc.*, 467 U.S. 51, 59   (1984).

Defendant's denial of service is barred by estoppel. **Defendant's conduct is not isolated — it reflects a broader pattern of deception and abuse of legal process.**

**E. CCB Filings and Statements Show Pattern of Abuse and Deception**

On March 2 and June 19, 2024, Defendant filed copyright claims with the U.S. Copyright Claims Board (CCB) identifying herself as "Danielle Robertson" and using the same address where service was made:  Danielle Robertson,  8 The Green,

10

Suite A  Dover, Delaware 19901.  This confirms Defendant voluntarily adopted this identity and address in formal proceedings.

In a monetized YouTube livestream titled ***Black Tea Sector: Pathological Liars and Scammers,*** Defendant admitted the filings were meant "**to create a paper trail.**" She also promoted her **$TruthTellerDani** Cash App handle—reinforcing her personal and financial connection to the name she now disclaims.

**See Exhibit F:** Livestream Footage — Defendant Danielle Robertson Admits Abuse of CCB Filing Process.  **(Exhibit File, p.56 )**

This conduct reveals a calculated strategy: Defendant embraced the "Danielle Robertson" identity when beneficial, then denied it when faced with service. Her CCB and DMCA filings confirm control over that identity and show a pattern of using legal systems to harass, mislead, and avoid accountability.

**F. Service on A Registered Agent, Inc. Was Proper Under Rule 4 and Delaware Law**

On February 19, 2025, Plaintiff served the Summons and Complaint upon **Charlotte Benice**, an employee of **A Registered Agent, Inc.**, located at 8 The Green, Suite A, Dover, Delaware 19901. The Proof of Service **ECF No. 16 pageID 120;** which confirms the following:

> "I served the summons on (name of individual) **Charlotte Benice**
>
> (Employee at *A Registered Agent, Inc.*) who is designated by law to accept

service of process on behalf of (name of organization) **Danielle Robertson**."

The affidavit also includes the precise address, timestamp (2:05 p.m.), and signature of the licensed Delaware process server.

Defendant's attempt to discredit this service—on the basis that "Danielle Robertson" is not a registered business entity—is unavailing. Delaware law permits service on a **registered agent** for individuals or unincorporated associations, provided the agent accepts the process and the recipient has an account.

In a **recorded call made by Plaintiff on May 30, 2025** to *A Registered Agent, Inc.*, employee **Nancy** confirmed:

- The agency **does accept service** for both **individual** and **corporate** accounts.

- They **do not use Gmail** to issue official communications.

- Service documents are uploaded to the account holder's dashboard once received.

- A document is accepted only after verifying that the recipient is indeed a client.

This confirms that:

- The February 19, 2025 service was accepted because **Danielle Robertson** had an **active account** under her legal or alias name;

- The signed and scanned documents were uploaded per standard procedure;

12

- Defendant's argument that service failed due to non-existence of a corporate entity is irrelevant, as Delaware permits individual accounts with registered agents.

**G. Defendant's Alleged "Cancellation Email" Is Unreliable and Legally Insufficient**

Defendant claims she cancelled her relationship with A Registered Agent, Inc. in December 2023 and relies on an email submitted as Exhibit A to her May 7, 2025 filing to support that claim ECF No. 28, PageID.200 — Alleged cancellation email submitted without authentication. **See Exhibit G:** Defendant's Alleged "Service Cancellation Confirmation" Email Is Contradicted by Verified May 30, 2025 Call with A Registered Agent. **(Exhibit File, p.59)**

The Gmail header—bearing the name "Alana Wilson," an alias Defendant has used in multiple filings—was created on May 5, 2025. The purported email within it, dated December 31, 2023, is riddled with inconsistencies and lacks any credible indicia of authenticity. The subject line, "Service Cancellation Confirmation – Delaware Corporate Headquarters LLC," appears to have been composed by the sender and is unsupported by any official metadata or verification from A Registered Agent, Inc.

Plaintiff called A Registered Agent, Inc. on **May 30, 2025** to verify the legitimacy of this email. In that call, a representative named **Nancy** confirmed the following:

- **A Registered Agent does not send emails through Gmail.** They use a private server associated with their business domain, not third-party services.

- Clients may register either **personally or through a corporation or LLC**, contradicting Defendant's assertion that they do not accept service for individuals.

- The procedure for service of process involves **verifying the account**, **signing for service**, and **uploading documents to the client's account.** Mail continues to be scanned into the account unless formally closed through the agent's system.

- The name **"Dani Robertson"** on the account would have been sufficient for continued service and mail receipt unless properly terminated through their internal process.

**See Exhibit G2**: Transcript and Declaration Re: May 30, 2025 Phone Call with Nancy at A Registered Agent, Inc. *(See Declaration of Plaintiff: May 30, 2025 Phone Call with A Registered Agent, Inc.)* **(Exhibit File, p.60 )**

The email provided by Defendant:

- **Lacks a sworn affidavit** or any signature from A Registered Agent;

- **Bears no metadata** or identifying information to confirm it originated from the company;

- **Was not addressed** to Defendant's legal name;  ● **May have been self-generated**, altered.

The Court should view this submission with extreme skepticism. As courts have consistently held:

"A defendant's bare denial of receipt or relationship is insufficient to overcome the presumption of valid service without competent evidence."

— *Ali v. Mid-Atl. Settlement Servs., Inc.*, 233 F.R.D. 32, 36 (D.D.C. 2006)

By contrast, Plaintiff has submitted a signed **Proof of Service** from February 19, 2025, confirming that documents were personally delivered to **Charlotte Benice**, an employee of A Registered Agent, Inc., at the precise address Defendant designated in multiple legal filings.

The cancellation email, standing alone, cannot rebut formal service conducted in accordance with Rule 4 and Delaware law—particularly where Defendant continues to use pseudonyms and provides no authenticated business records to support her claims.

## H. Defendant's Use of Aliases and Addresses Confirms Proper Service

Defendant has used multiple aliases, false addresses, and unverifiable emails to obscure her identity, evade service, and frustrate Plaintiff's efforts. Courts uniformly reject such tactics:

"One who deliberately misleads parties about her identity or address cannot later assert improper service as a defense."

— *United States v. Ziegler Bolt & Parts Co.*, 111 F.3d 878, 881 (Fed. Cir.1997)

"A defendant cannot frustrate service of process and jurisdiction by shielding her identity and contact information while targeting a known forum with repeated acts of defamation and harassment."

15

— *SEC v. Knowles*, 87 F.3d 413, 417 (10th Cir. 1996)

Defendant's pattern of misrepresentation and identity concealment supports the validity of service and defeats her jurisdictional challenge. Anonymity cannot be weaponized to evade federal court accountability.

## I. Defendant's Conduct and Filings Waive Objections to Service and Jurisdiction

Despite claiming a "special appearance," Defendant—under the alias "Jane Doe"—has actively litigated this case since May 7, 2025. She has filed six submissions totaling nearly 170 pages, including:

- **ECF No. 28:** Motion to Set Aside Default and Dismiss (with 109 pages of declarations, exhibits, and argument);

- **ECF Nos. 29, 33, 35, 39, and 49:** Additional motions addressing both procedural and substantive matters.

Her filings include:

- Merits-based rebuttals;

- Motions for protective orders;

- Personal attacks on Plaintiff;

- Counter-narratives unrelated to jurisdiction.

16

Courts hold that defendants who actively litigate or seek affirmative relief waive objections to service or personal jurisdiction:

"A defendant who contests the merits of the case or seeks affirmative relief waives any objection to personal jurisdiction or service."

— *Gerber v. Riordan*, 649 F.3d 514, 520–21 (6th Cir. 2011)

"A defendant who enters an appearance and seeks affirmative relief… waives any challenge to sufficiency of process."

— *Benny v. Pipes*, 799 F.2d 489, 492 (9th Cir. 1986)

Defendant's conduct—denying identity and service while simultaneously seeking court rulings—fits squarely within the conduct these precedents reject. She cannot disavow jurisdiction while invoking it for her own benefit.

**J. Subpoena Delivery and Defendant's Own Admissions Confirm Actual Notice and Undermine Her Service Challenge**

**In her May 7, 2025 filing (ECF No. 28), PageID.180, Defendant states: "The undersigned was not validly served and had no notice of this proceeding until receiving notice from Google of an unauthorized subpoena… The undersigned undertook efforts to preserve substantial documentation of Plaintiff's online conduct."**

This statement is both telling and self-defeating. The Google subpoena referenced by Defendant was never publicly filed or disclosed on the docket. It was transmitted only to **Google** and **Defendant's registered agent**. Google signed for the subpoena

17

on **January 18, 2025**, and responded on **January 29, 2025**, objecting on various grounds—including lack of jurisdiction in California, where Google is headquartered. Meanwhile, Defendant's registered agent—**A Registered Agent, Inc.**—received and signed for a copy addressed to her on **January 21, 2025**, marked "Benn."

 **See Exhibit H**: Google Subpoena Timeline Confirms Defendant's Actual Notice by January 27, 2025. **(Exhibit File, p.65)**

This delivery was the second direct mailing to Defendant's registered agent. The first occurred on **December 26, 2024**, when Plaintiff sent the original Summons and Complaint to the same address, which was also signed for by "Benn." A third attempt occurred via formal process service on **February 19, 2025**, where **Charlotte Benice**, an employee of A Registered Agent, Inc., accepted service on behalf of "Danielle Robertson." See previously listed **EXHIBIT E** above. **(Exhibit File, p.55)**

Despite these repeated and documented deliveries, Defendant chose to remain silent—surfacing only at the last minute, and under pseudonyms ("Jane Doe," "John Doe")—to file a motion to quash the Google subpoena and assert lack of notice. Tellingly, although she references receiving notice from Google, she omits the date, because doing so would reveal that her claim of ignorance is untrue. She had ample opportunity to respond to this lawsuit and instead opted for delay and strategic silence.

Her own words and conduct undermine her jurisdictional objections. As the Eighth Circuit has held:

18

"A party with actual notice who chooses to wait in silence, only to later contest service, is not entitled to equitable relief under Rule 55(c)."

— *Smith v. Arnold*, 852 F.3d 778, 783 (8th Cir. 2017)

In short, Danielle Robertson's receipt of the subpoena—referenced in her own filing—proves that she had actual knowledge of this litigation at least by **late January 2025**. The combination of signed delivery receipts, formal service by process server, and her own acknowledgment of the subpoena confirms that she was not only reachable but **knowingly evading formal participation** until it suited her strategic interests.

## III. PERSONAL JURISDICTION IS PROPER: DEFENDANT TARGETED MICHIGAN THROUGH DELIBERATE, HARMFUL, AND FRAUDULENT CONDUCT

### A. Legal Standard for Personal Jurisdiction: Federal Due Process and Michigan's Long-Arm Statute

To exercise personal jurisdiction over a nonresident defendant in a federal question case, two requirements must be satisfied:

(1) the defendant must be amenable to service of process under the forum state's long-arm statute, and

(2) the exercise of jurisdiction must be consistent with constitutional due process.[1]

---

[1] *Bird v. Parsons*, 289 F.3d 865, 871 (6th Cir. 2002).

Michigan's long-arm statute provides for limited personal jurisdiction where the plaintiff's claims arise from acts that cause consequences in the state. This includes acts of defamation, intentional torts, and interference with business relations that result in harm within Michigan.[2]

Federal due process is satisfied when a defendant has "minimum contacts" with the forum state such that exercising jurisdiction does not offend "traditional notions of fair play and substantial justice."[3]

The Sixth Circuit applies a three-part test for specific personal jurisdiction:

1. **Purposeful Availment** – The defendant purposefully availed herself of the privilege of acting in the forum state or causing consequences there;

2. **Arising From** – The cause of action must arise from the defendant's activities in the forum; and

3. **Substantial Connection / Reasonableness** – The defendant's actions or their consequences must have a substantial enough connection to the forum to make the exercise of jurisdiction reasonable.

— *AlixPartners, LLP v. Brewington*, 836 F.3d 543, 549–50 (6th Cir. 2016)

In this case, Defendant Danielle Robertson's actions meet all three prongs. She targeted Plaintiff in Michigan with calculated defamation, false legal complaints, and professional sabotage intended to cause harm where Plaintiff resides and

---

[2] MCL § 600.705(2)–(3), (6).
[3] Int'l Shoe Co. v. Washington, 326 U.S. 310,316 (1945).

practices. These were not incidental or passive contacts—they were affirmative, targeted, and sustained.

## B. Defendant's Purposeful Availment of Michigan Jurisdiction

Defendant engaged in a coordinated campaign to damage Plaintiff—a licensed Michigan medical professional—through online harassment, legal manipulation, and direct engagement with Michigan agencies and residents.

Examples of purposeful availment include the following affirmative conduct directed toward Michigan:

- Contacting Michigan state agencies, courts, and officials regarding Plaintiff;

- Repeatedly targeting Plaintiff's reputation, medical practice, and legal standing within Michigan;

- Operating monetized online platforms that derive benefit from Michigan-based audience engagement and controversy related to Plaintiff.

Courts uphold personal jurisdiction where a defendant deliberately directs online or real-world conduct at the forum state with the intent to cause harm there.[4]  This deliberate and sustained conduct directed at Plaintiff in Michigan satisfies the "purposeful availment" standard.[5]

---

[4] *Calder v. Jones*, 465 U.S. 783, 789–90 (1984); *Bird v. Parsons*, 289 F.3d 865, 875 (6th Cir. 2002).
[5] *Kauffman Racing Equip., L.L.C. v. Roberts*, 930 F.3d 785, 793 (6th Cir. 2019) (jurisdiction proper where defendant used the internet to intentionally target the forum state).

21

**C. Plaintiff's Claims Arise From Defendant's Michigan-Directed Conduct**

Each of Plaintiff's claims—defamation, harassment, copyright infringement, fraud, and professional interference—arises directly from Defendant's deliberate conduct targeting   Michigan.

- Defamation and Harassment: Defendant published dozens of false post and inflammatory videos about Plaintiff, widely accessible and viewed by Michigan audiences. **See Exhibit I:** Compilation of False and Defamatory Videos Targeting Plaintiff and the State of Michigan. **(Exhibit File, p.69)**

- Copyright Infringement: Defendant misappropriated Plaintiff's copyrighted likeness and distributed it to an audience expressly targeted in Michigan.

   **See Exhibit J:**  – Misappropriated PPO Still Image – Unlawfully Obtained and Used in Monetized Content. **(Exhibit File, p.73 )**

- Professional Harm: Defendant filed over nine false complaints with the Michigan

   Department of Licensing and Regulatory Affairs (LARA), seeking to cause damage to Plaintiff's professional reputation, and revocation of her medical license. **See Exhibit K:** False Complaints Submitted by Defendant to Michigan LARA Targeting Plaintiff's Medical License. **(Exhibit File, p.76)**

- Abuse of Legal Process: Defendant assisted in filing a fraudulent personal protection order (PPO) in a Michigan court and then unlawfully disseminated sealed court materials online. **See Exhibit L:** Fraudulent PPO Filing and

22

Publication of Sealed Michigan Court Documents Defendant.

**(Exhibit File, p.86)**

The Sixth Circuit requires only that the cause of action "arise from" the defendant's contacts with the forum state.

— *AlixPartners, LLP v. Brewington*, 836 F.3d 543, 550 (6th Cir. 2016)

Here, Defendant's acts not only arose from Michigan-directed conduct—they were purposefully aimed at causing harm in Michigan. The injury occurred in Michigan, and the forum state has a compelling interest in protecting its residents from targeted online and legal misconduct. Accordingly, the "arising from" prong is satisfied.

### D. Exercising Jurisdiction Over Defendant Is Reasonable and Just

Even if Defendant resides outside Michigan, the exercise of jurisdiction is both constitutionally sound and fundamentally fair. Defendant directed her conduct squarely at the forum state, causing foreseeable and substantial harm to a Michigan resident and engaging directly with Michigan institutions.

Defendant:

- Targeted Plaintiff's professional license through coordinated and defamatory filings with the Michigan Department of Licensing and Regulatory Affairs (LARA); Encouraged third parties to submit fraudulent complaints to Michigan authorities and public officials; **See Exhibit L:** Fraudulent PPO Filing and Publication of Sealed Michigan Court Documents by Defendant.
  **(Exhibit File, p.86)**

- Published monetized content designed to damage Plaintiff's professional reputation specifically in Michigan; **See Exhibit M:** Defamatory and Monetized Videos Attacking Plaintiff's Michigan Medical License. **(Exhibit File, p.90)**

- Coordinated with a Michigan resident to file a baseless personal protection order, then disseminated protected materials from that proceeding in violation of legal and ethical standards. **See Exhibit N:** Unlawful Disclosure of Sealed PPO Hearing and Pre-Hearing Collusion. **(Exhibit File, p.103)**

This forum-directed misconduct easily satisfies the reasonableness standard for exercising personal jurisdiction.

 See *Calder v. Jones*, 465 U.S. 783, 789–90 (1984) (jurisdiction proper where "the brunt of the harm" is felt in the forum state); *Bird v. Parsons*, 289 F.3d 865, 875 (6th Cir.  2002).

This was not incidental conduct—it was intentional, targeted, and sustained. Jurisdiction is proper and fully comports with traditional notions of fair play and substantial justice.

**E. Defendant's Use of False Identities and Deceptive Filings to Target Michigan**

Defendant Danielle has consistently used aliases and deceptive filings to harass Plaintiff and obscure her identity.  In a recorded call to Northville Police, she falsely claimed to be her "niece" Stacey Evans, and she hadn't heard from her "aunt" since the hurricane — thus prompting a wellness check.  She also misrepresented her location as "Indiana," despite no known ties. **See Exhibit O:** Fraudulent Police

24

Reports to Northville and Other Michigan Law Enforcement Agencies.
**(Exhibit File, p.106)**

Her campaign includes:

- Deepfake pornography

- Cyber harassment

- Fraudulent legal filings and police reports

- Aliases including Tiffany Green, Stacey Evans, Lori Davis, Ashley Williams, Danielle Allen, Alana Wilson and so many others.

  **See Exhibit P:** Use of Aliases & Fraudulent Reports to File False Complaints To Michigan Agencies. **(Exhibit File, p.109)**

Plaintiff has filed multiple DMCA counter-notifications and privacy complaints against Defendant to YouTube in response. These acts aimed to cause harm against her, repeatedly invoked Michigan agencies and officials while concealing the perpetrator's true identity.

Courts reject such evasive tactics:

"A defendant cannot frustrate service of process and jurisdiction by shielding her identity and contact information while simultaneously targeting a known forum with repeated acts of defamation and harassment."

— *Ziegler Bolt & Parts Co.*, 111 F.3d 878, 881 (Fed. Cir. 1997)

25

Such conduct supports personal jurisdiction under both federal due process and Michigan law—not exemption from it.

**F. Defendant's Recorded Threats Demonstrate Intent to Harm Plaintiff in Michigan**

Defendant posted a YouTube video explicitly stating her goal was to "ruin Sybrena's legacy" and referenced Plaintiff's Michigan license. **See Exhibit Q:** Threatening YouTube Video Referencing Plaintiff's License. **(Exhibit File, p.113)** This content demonstrates Defendant's knowledge of Plaintiff's location and intent to cause professional harm in Michigan. Her statements confirm deliberate targeting of the forum and support jurisdiction under Calder v. Jones, 465 U.S. at 789–90, which held jurisdiction is appropriate when the defendant's conduct is expressly aimed at the forum and the brunt of the harm is felt there.

**IV. CONCLUSION**

Danielle Robertson has now been **served on three** separate occasions:

- **December 24, 2024** — via statutory DMCA notice from YouTube, which included the Complaint and Summons pursuant to 17 U.S.C. § 512(g)(2)(B);

- **December 26, 2024** — via certified mail, delivered to and signed for at A Registered Agent, Inc., 8 The Green, Suite A, Dover, Delaware;

- **February 19, 2025** — via formal personal service by a licensed Delaware process server at the same registered agent address.

These multiple service events establish actual notice and satisfy the requirements of **Federal Rule of Civil Procedure 4(e)(1)** and **Delaware law**.

In her own May 7, 2025 filing, Defendant referenced the Google subpoena—despite it never being filed publicly—proving she received service materials through the registered agent or directly from Google. Additionally, Defendant's hostile YouTube post on **December 24, 2024**—published within hours of YouTube's legal notice—further confirms that she received and understood the nature of this lawsuit.

Defendant has now filed more than 170 pages of legal documents across six docketed filings. Her active participation precludes any claim that she lacked notice or was improperly served. This Court has personal jurisdiction, and entry of default is warranted.

**Accordingly, Plaintiff respectfully requests that the Court:**

1. Deem that Robertson was properly served pursuant to Rule 4(e)(1) and Delaware law;

2. Find that the Court may exercise personal jurisdiction over her;

3. Permit this case to proceed on the merits.

**Respectfully submitted,**

Sybrena Evans, Pro Se
17710 Lakeview Cr.
Northville, Michigan  48168
Dated: June 4, 2025

27

I hereby certify that on **June 4, 2025**, I submitted the foregoing document to the Clerk of Court for filing. I understand the Clerk will enter it into the CM/ECF system, which will provide notice and service of the filing to all parties.

**CERTIFICATE OF SERVICE**

I hereby certify that on this 4th day of June, 2025, I electronically filed the foregoing

**PLAINTIFF'S RESPONSE TO ORDER TO SHOW CAUSE REGARDING SERVICE AND PERSONAL JURISDICTION** with the Clerk of the Court using the CM/ECF system, which **will send notification of such filing to all parties of record who are registered participants of the Court's electronic filing system.**

**Respectfully submitted,**
Dated: June 4, 2025
Sybrena Evans
Pro Se Plaintiff