UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

SYBRENA EVANS,

Plaintiff,

v.

DANIELLE ROBERTSON, *et al.*,

Defendants.

Case No. 24-cv-13435
Honorable Judith E. Levy
Magistrate Judge Elizabeth A. Stafford

---

## REPORT AND RECOMMENDATION
## TO SET ASIDE THE CLERK'S ENTRY OF DEFAULT AND TO GRANT
## IN PART AND DENY IN PART DEFENDANT'S MOTIONS TO DISMISS
## (ECF NO. 28, 39)

---

### I.      Introduction

Plaintiff Sybrena Evans, proceeding pro se, sues Defendant Danielle

Robertson[1] and Jane Does 1-10 for copyright infringement, defamation,

fraud, and harassment.  ECF No. 1.  The Honorable Judith E. Levy referred

the case to the undersigned for all pretrial matters under 28 U.S.C.

§ 636(b)(1).  ECF No. 7.  Robertson moves to set aside the Clerk's entry of

---

[1] Robertson made a special appearance as a Jane Doe stating that
"Danielle Robertson" is not her legal name.  ECF No. 28, PageID.183.  For
the sake of clarity, the Court will nevertheless refer to this individual as
Robertson.

default and to dismiss the action.  ECF No. 28; ECF No. 39.  The Court

**RECOMMENDS** that Robertson's motion to set aside the default be

**GRANTED** and that her motions to dismiss be **GRANTED IN PART AND**

**DENIED IN PART**.

## II.    Background

Evans, a Michigan resident, alleges that Robertson engaged in a

pervasive campaign of harassment and cyberbullying on her social media

platforms and websites from 2022 to 2024.[2]  ECF No. 1, PageID.7-9.

Robertson allegedly posted YouTube videos calling Robertson "Teddy

Bundy" and falsely accusing her of stalking and other crimes.  *Id.*,

PageID.8, 15, 45-47, 75; ECF No. 67, PageID.654.  Evans also alleges that

Robertson published deepfake pornography using Evans's likeness.  *Id.*,

PageID.9, 42, 50.  In a YouTube video, Robertson allegedly discussed

Evans's divorce and published documents from those proceedings, and

encouraged her followers to likewise post content harassing Evans.  *Id.*,

PageID.12, 74-75; ECF No. 67, PageID.667.

---

[2] Robertson's alleged social media usernames include: "Dani Montana,"
"Dani Robertson," "Truth Teller Dani," "Lori Davis," "Unhinged with Bundy,"
"WhewChile The Ghetto," "Danie Monroe," "Public Awareness to Medical
Malpractice," and "For The Basics."  ECF No. 1, PageID.4, 6, 9, 14.  Her
websites include MessyDani.com and ICANTICANT.com.  *Id.*, PageID.8.
Evans contends that Robertson changed at least one of these usernames
and removed content after this action was filed.  ECF No. 65, PageID.604.

Posing as Evans's family member, Robertson allegedly made several fraudulent calls to local police to report concerns about Evans's mental health and animal cruelty.  ECF No. 1, PageID.10.  Officers then performed wellness checks on Evans and recorded her on bodycam.  *Id.*, PageID.10, 52.  Evans claims that Robertson obtained the bodycam footage through a Freedom of Information Act (FOIA) request and published content from the footage to YouTube and her websites.  *Id.*, PageID.10, 54; ECF No. 65, PageID.606; ECF No. 67, PageID.658.

Evans next alleges that Robertson conspired with an unnamed petitioner to obtain a personal protective order (PPO) against Evans, posted about a hearing on the PPO, and published the PPO on her website.  ECF No. 1, PageID.15, 38-41; ECF No. 66, PageID.644.  Robertson then allegedly obtained content from the virtual PPO hearing that she published in a YouTube video.  ECF No. 1, PageID.7, 41; ECF No. 66, PageID.629.

In social media postings, Robertson allegedly accused Evans, a physician assistant, of being found guilty of medical malpractice.  ECF No. 1, PageID.8-9, 49.  Evans claims that Robertson later reported her for professional misconduct to the Michigan's Department of Licensing and Regulatory Affairs (LARA).  *Id.*, PageID.9-11; *see also* ECF No. 66,

PageID.633, 639.  One of the complaints was allegedly made by the PPO

petitioner in coordination with Robertson, as Robertson posted about the

complaint and published a letter from LARA on YouTube and her website.

ECF No. 1, PageID.11, 58-61; ECF No. 66, PageID.637, 640.

Robertson also urged her social media followers to file anonymous

complaints against Evans and provided links to the required forms on the

LARA website.  ECF No. 1, PageID.9-10, 49, 51, 55-56.  One alleged post

states:

> Michigan complaint form: You can file anon.  There's an option
> to report possible drug/substance abuse, such as her alleged
> but apparent alcohol consumption, and a box to fill in
> complaints such as mental illness, etc.  [Link to LARA website].
> Here's the information needed to complete the complaint: [two
> more links].

*Id.*, PageID.51; ECF No. 68, PageID.670.  And Evans claims that

Robertson created a Change.org petition accusing Evans of unethical

behavior and seeking to damage her professional reputation.  ECF No. 1,

PageID.15; ECF No. 67, PageID.647.  One post promoting the petition

states:

> Hey everyone, as stated, I was going to create a PSA petition
> for Michigan patients and people worldwide to be aware of
> unethical physician assistants who cyberbully, dox, and harass
> innocent people… Evans, PA, is currently under investigation
> with the Medical board.  Other officials and agencies are also
> being made aware of her unethical behavior…Sign the petition
> here.  [Link to Change.org website].

4

ECF No. 1, PageID.48.  The unethical behavior Robertson alleged in the petition included stalking, "doxxing,"[3] and cyberbullying.  ECF No. 68, PageID.674.  LARA informed Evans that no violations could be substantiated and closed the matters.  ECF No. 1, PageID.10-11, 57; ECF No. 66, PageID.636.

Evans has her own YouTube channels, "Unwinewithteddy" and "RunTellThatToo."  ECF No. 1, PageID.12.  Robertson allegedly impersonated others to file hundreds of false copyright and privacy complaints with YouTube, claiming ownership of Evans's content.  *Id.*, PageID.12, 14, 62-68.  YouTube terminated Evans's accounts but later reinstated some videos after finding the claims invalid.  *Id.*, PageID.12, 14. Robertson also allegedly filed multiple copyright infringement claims against Evans with the Copyright Claims Board (CCB).  *Id.*, PageID.12, 14, 69-70.

Evans sues for copyright infringement, defamation, false reports and fraudulent claims, cyberbullying and harassment, impersonation, and conspiracy.  *See generally* ECF No. 1, PageID.1-18.  Robertson, whose

---

[3] "Doxxing" is the practice of publicly disclosing a person's identifying information such as their home address or their social media username in hopes that others will likewise harass the "outed" person "(e.g., plastering their Facebook wall with hateful comments)."  *Vangheluwe v. Got News, LLC*, 365 F. Supp. 3d 850, 852, 860 (E.D. Mich. 2019).

legal name and residence are unknown, made a special appearance in this case challenging personal jurisdiction and the sufficiency of service, among other arguments.  ECF No. 28, PageID.182-183, 192-194.  The Court ordered Evans to show cause whether personal jurisdiction may be exercised over Robertson and whether she was properly served.  ECF No. 61.  Evans and Robertson both responded.  ECF No. 64; ECF No. 71.

### III.    Analysis

### A.

To start, Evans argues that Robertson waived any challenge to personal jurisdiction and service by appearing in the action and making filings.  ECF No. 64, PageID.571-572.  The Court rejects this argument.

A defendant must challenge personal jurisdiction or improper service in a pre-answer motion, or the defense is waived.  Fed. R. Civ. P. 12(b), (h).  "In other words, a defendant who wishes to raise a defense to the court's personal jurisdiction [or improper service] must do so when he makes his first defensive move."  *Blessing v. Chandrasekhar*, 988 F.3d 889, 898 (6th Cir. 2021) (cleaned up).  Waiver is a fact-intensive inquiry into "whether the actions of the defendant amounted to a legal submission to the jurisdiction of the court."  *Id.* (cleaned up).  "Only those submissions, appearances and filings that give the plaintiff a reasonable expectation that

6

the defendant will defend the suit on the merits or must cause the court to go to some effort that would be wasted if personal jurisdiction is later found lacking, result in waiver of" those defenses."  *Id.* at 895 (cleaned up); *Boulger v. Woods*, 917 F.3d 471, 477 (6th Cir. 2019).

Robertson's first filing sought dismissal for lack of personal jurisdiction and improper service, along with relief from Evans's premature discovery requests.  ECF No. 28, PageID.181-183, 192-194; ECF No. 29; ECF No. 35; ECF No. 73.  In a supplemental filing, Robertson argued that Evans stated no valid claim.  ECF No. 39.  Robertson's other filings include responses to Evans's filings and to the Court's order to show cause.  ECF No. 33; ECF No. 49; ECF No. 71.  Robertson said in each filing that she neither consents to the Court's jurisdiction nor intends to waive her jurisdictional defenses.  *See, e.g.*, ECF No. 28, PageID.179; ECF No. 49, PageID.464; ECF No. 73, PageID.715.

Evans contends that Robertson waived the jurisdictional and service defenses because she also seeks dismissal on the merits under Rule 12(b)(6).  ECF No. 64, PageID.572.  But the Court sees no reasonable expectation that Robertson intended to defend on the merits.  And nothing in the procedural rules prevents a defendant from combining defenses under Rule 12(b)(2) and 12(b)(6) in the same motion.  *See Blessing*, 988

F.3d at 894 (evaluating a combined motion to dismiss for lack of personal jurisdiction, improper venue, and failure to state a claim).  This view tracks Rule 12(h)'s purpose of "eliminat[ing] unnecessary delays before the court undertakes adjudication of the issues on the merits."  *My Ret. Accounts Servs. v. Alternative IRA Servs., LLC*, No. 5:19-CV-122, 2019 WL 5298718, at *3 (W.D. Ky. Oct. 18, 2019) (cleaned up) (finding that a defendant did not waive a personal jurisdiction defense presented concurrently with a Rule 12(b)(6) defense).

The court found waiver in *Brunson v. Capitol CMG, Inc.*, reasoning that the defendant had not argued failure to state a claim *in the alternative* to lack of personal jurisdiction.  No. 3:20-cv-01056, 2021 WL 3406686, at *1-2 (M.D. Tenn. Aug. 4, 2021).  By contrast, Robertson's supplement seeking dismissal under Rule 12(b)(6) states that she did not waive her jurisdictional defenses.  ECF No. 39, PageID.348.

Nor does *Gerber v. Riordan* help Evans.  In that case, the defendants participated in the action for three years by appearing at pretrial conferences and submitting discovery responses before moving to dismiss for lack of personal jurisdiction.  649 F.3d 514, 516-17 (6th Cir. 2011).  Although the court suggested that the defendants waived the jurisdictional argument when counsel filed an appearance, the Sixth Circuit has since

8

clarified that the waiver "must be read in the context of the defendants'
extensive participation in the litigation." *Id.* at 520; *see also Blessing* 988
F.3d at 897.  Robertson's actions here have shown her intent to cut short
the litigation rather than to engage in extensive litigation.

## B.

The Court now turns to whether it may exercise personal jurisdiction
over Robertson.

To decide a motion to dismiss for lack of personal jurisdiction, courts
apply a burden shifting standard.  The plaintiff must first make a prima facie
case for personal jurisdiction and may rely solely on the allegations in the
complaint.  *Peters Broad. Eng'g, Inc. v. 24 Capital, LLC*, 40 F.4th 432, 437
(6th Cir. 2022).  The burden then shifts to the defendant to support her
motion with evidence that exercising jurisdiction would be unreasonable.
*Id.*  "The burden then shifts back to the plaintiff, who may no longer stand
on his pleadings but must, by affidavit or otherwise, set forth specific facts
showing that the court has jurisdiction." *Id.* at 437-38 (cleaned up).  Courts
must view the pleadings and filings in a light most favorable to the plaintiff
and may not weigh conflicting evidence offered by the defendant.  *Neogen
Corp. v. Neo Gen Screening, Inc.*, 282 F.3d 883, 887 (6th Cir. 2002).  But
the plaintiff bears the ultimate burden of showing personal jurisdiction.  *Id.*

9

When subject-matter jurisdiction arises from a federal question, "personal jurisdiction over a defendant exists if the defendant is amenable to service of process under the forum state's long-arm statute and if the exercise of personal jurisdiction would not deny the defendant due process." [4]  *Bird v. Parsons*, 289 F.3d 865, 871 (6th Cir. 2002) (cleaned up).  Evaluation of Michigan's "long-arm statute requires a separate analysis from the Due Process Clause."  *Sullivan v. LG Chem, Ltd.*, 79 F.4th 651, 664-66 (6th Cir. 2023).  The long-arm statute recognizes both "general" and "limited" personal jurisdiction.  Mich. Comp. Laws §§ 600.701, 600.705.  General personal jurisdiction requires the defendant's physical presence or domicile in the state at the time of service or the defendant's consent to suit.  *Id.* § 600.701.  Limited personal jurisdiction exists when, as relevant here, "[t]he doing or causing an act to be done, or consequences to occur, in the state result[s] in an action for tort."  *Id.* § 600.705(2).

---

[4] National service of process does not apply here, as Congress did not include such a provision in the Copyright Act.  *See Penguin Grp. (USA) Inc. v. American Buddha*, 609 F.3d 30, 35 (2d Cir. 2010); *Med. Mut. of Ohio v. DeSoto*, 245 F.3d 561, 567 (6th Cir. 2001) (cleaned up).  Thus, the personal jurisdiction analysis is like that applied in diversity cases.  *Alisoglu v. Cent. States Thermo King of Okla., Inc.*, No. 12-cv-10230, 2012 WL 1666426, at *4 (E.D. Mich. May 11, 2012) (citing *Omni Cap. Int'l, Ltd. v. Rudolf Wolff & Co., Ltd.*, 484 U.S. 97, 108 (1987)).

Evans does not claim that general jurisdiction exists under the long-arm statute.  ECF No. 64, PageID.575.  It does not appear that Robertson was physically present or domiciled in Michigan, nor has Robertson consented to suit in Michigan.  Thus, general jurisdiction is lacking.

Specific jurisdiction under § 600.705(2) exists if "*either* the tortious conduct *or* the injury occurs in Michigan."  *Sullivan*, 79 F.4th at 668 (cleaned up) (interpreting § 600.715(2), a provision governing jurisdiction over corporations that is identical to § 600.705(2), which applies to individuals).  Thus, § 600.705(2) "encompasses a defendant's acts outside the state which have consequences inside the state."  *Id.* (cleaned up).  Evans alleges that, because of Robertson's actions described above, she suffered reputational emotional, professional, and financial harm in Michigan.  ECF No. 1, PageID.6-16.  These allegations meet the statutory requirements of § 600.705(2).  *See Cherry Indus. LLC v. Pangrle*, No. 24-cv-12060, 2025 WL 2426301, at *6 (E.D. Mich. Aug. 21, 2025) (finding that similar allegations of online defamation satisfied § 600.715(2)).

Courts must also ensure that exercising personal jurisdiction satisfies due process.  *Sullivan*, 79 F.4th at 670.  Due process requires that a nonresident defendant "have certain minimum contacts with the forum State such that the maintenance of the suit does not offend traditional

notions of fair play and substantial justice." *AlixPartners*, 836 F.3d at 549 (cleaned up). As with the long-arm statute, "contacts with a forum state may generate two potential types of personal jurisdiction over an out-of-state defendant—'specific' jurisdiction arising from the defendant's case-related contacts and 'general' jurisdiction arising from the defendant's generic connections to the State." *Johnson v. Griffin*, 85 F.4th 429, 432 (6th Cir. 2023). Evans argues only that specific personal jurisdiction exists. ECF No. 64, PageID.575.

Courts evaluate three factors in determining whether this standard is satisfied:

> First, the defendant must *purposefully avail* himself of the privilege of acting in the forum state or causing a consequence in the forum state. Second, the cause of action must arise from the defendant's activities there. Finally, the acts of the defendant or consequences caused by the defendant must have a substantial enough connection with the forum state to make the exercise of jurisdiction over the defendant reasonable.

*Id.* at 549-50 (cleaned up). The exercise of specific jurisdiction is claim specific, meaning that jurisdiction can exist over some claims but not others. *Salom Enters., LLC v. TS Trim Indus., Inc.*, 464 F. Supp. 2d 676, 685 (E.D. Mich. 2006); *see also Abiola v. Beasley*, No. 10-13377, 2010 WL 5296953, at *3 n.5 (E.D. Mich. Dec. 20, 2010) (collecting cases).

Two Supreme Court cases delineate the boundaries of personal jurisdiction for intentional torts.  In *Calder v. Jones*, a California actress sued Florida journalists in a California court for a libelous article published in the National Enquirer, a Florida corporation.  465 U.S. 783, 785 (1984). Concluding that the California court had personal jurisdiction over the journalists, the Supreme Court fixed on the article's effects.  *Id.* at 788-89. The "focal point" of the article was California, as it "concerned the California activities of a California resident," impugned the professionalism of an actress whose career was centered in California, was drawn from California sources, had its largest readership in California, and caused emotional and reputational harm in California.  *Id.*  In short, the article was not the product of "untargeted negligence" but was "expressly aimed" at California.  *Id.* at 789.

In the second case, *Walden v. Fiore*, Nevada residents sued in their home state after an officer seized cash from them at a Georgia airport.  571 U.S. 277, 280-81 (2014).  The Supreme Court held that the Nevada court lacked personal jurisdiction over the officer, as the minimum contacts inquiry could not be satisfied based on contacts between the plaintiffs (or a third party) and the forum state.  *Id.* at 284.  Though the plaintiffs resided in Nevada, the officer's contacts with them were insufficient for the court there

13

to exercise jurisdiction over him.  "Rather, it is the defendant's conduct that must form the necessary connection with the forum State that is the basis for its jurisdiction over him." *Id.* at 285.  Put differently, "[d]ue process requires that a defendant be haled into court in a forum State based on his *own affiliation with the State*, not based on the 'random, fortuitous, or attenuated' contacts he makes by interacting with other persons affiliated with the State."  *Id.* at 286 (emphasis added).

Against this backdrop, the Court evaluates whether it has specific jurisdiction over each of Evans's claims.

### 1.

Evans asserts claims of copyright infringement and conspiracy to commit fraud and cause emotional distress, which stem from the same set of factual allegations.  Robertson allegedly conspired with the PPO petitioner, a Michigan resident, to file a PPO request against Evans.  ECF No. 1, PageID.7, 15.  Evans maintains that "[t]he petition's language and accusations closely align with [Robertson's] rhetoric."  *Id.*  And Robertson allegedly posted about the PPO proceedings on her website both before and after the hearing, although this information was not public.  *Id.*, PageID.7, 15, 41, 79, 81; ECF No. 66, PageID.644.  The PPO petitioner unlawfully recorded and copied Evans's image during the virtual hearing,

14

and Robertson allegedly published that image in YouTube videos and in deepfake pornography on her website. *Id.*

The copyright claim is more like *Calder* than *Walden*. Robertson allegedly used copyrighted images of a Michigan resident captured during a virtual hearing that took place in Michigan and concerned another Michigan resident. Robertson knew that the court proceedings took place in Michigan, as she posted court filings bearing the Wayne County Circuit Court's caption and identifying the parties' names and addresses. ECF No. 1, PageID.41.[5] And the brunt of Robertson's posts using these images was felt by Evans in Michigan. Thus, the focal point of Robertson's posts was Michigan.

But this Court has no personal jurisdiction over Robertson for Evans's conspiracy claim. Personal jurisdiction is proper under a conspiracy theory if the plaintiff plausibly alleges (1) the defendant was part of a conspiracy and (2) a co-conspirator performed a substantial act in furtherance of the conspiracy in Michigan. *See Chrysler Corp. v. Fedders Corp.*, 643 F.2d 1229, 1236-37 (6th Cir. 1981); *see also Charles Schwab Corp. v. Bank of*

---

[5] The parties' names and addresses are redacted. It is unclear whether Evans redacted that information when she filed it or whether Robertson redacted it in her original post.

*Am. Corp.*, 883 F.3d 68, 87 (2d Cir. 2018); *Unspam Tech., Inc. v. Chernuk*, 716 F.3d 322, 329 (4th Cir. 2013).[6]  Those allegations of conspiracy must be supported by "factual assertions" such as affidavits or other evidence. *Chrysler Corp.*, 643 F.2d at 1236.

Evans has produced screenshots of Robertson's posts about the PPO proceedings made before and after the hearing.  ECF No. 1, PageID.41, 79, 81; ECF No. 66, PageID.644.  But she offers no evidence or particularized allegations showing a "meeting of the minds" between Robertson and the PPO petitioner.  *See Odish v. Peregrine Semiconductor, Inc.*, No. 13-cv-14026, 2015 WL 1119951, at *13 (E.D. Mich. Mar. 11, 2015) ("A plaintiff asserting a conspiracy claim must allege sufficient facts to suggest a meeting of the minds to participate in unlawful activity among the alleged coconspirators.  A plaintiff cannot simply incant the magic words 'conspiracy' or 'agreement' in order to adequately plead a conspiracy claim." (cleaned up)).  Evans's allegation that the PPO petitioner acted as Robertson's proxy because the court filings adopted a similar rhetoric as

---

[6] Some authorities caution courts against assessing plausibility when deciding whether personal jurisdiction exists.  5B Charles Alan Wright, Arthur R. Miller & Edward H. Cooper, Federal Practice & Procedure § 1351 (4th ed.).  But when a defendant's contacts with a forum hinge on allegations of conspiracy, courts do consider whether the plaintiff has supported those allegations.

Robertson's posts is nothing but unsupported speculation.  And although Robertson allegedly posted court filings and images of Evans from the hearing, nothing suggests that the PPO petitioner—rather than some other source—gave those materials to Robertson.  Because personal jurisdiction over the conspiracy claim is lacking, the claim should be dismissed.

**2.**

Next, Evans asserts a defamation claim based on Robertson's alleged posts stating that Evans was under investigation by the medical board, accusing Evans of stalking and murder, and using Evans's image in deepfake pornography.  ECF No. 1, PageID.8-9.  The Court also construes as alleged defamation Evans's allegations of "false reports and fraudulent claims" stemming from Robertson's calls to the police department and resulting social media posts with images from the bodycam footage.  *Id.*, PageID.10-11.[7]

---

[7] The complaint includes supporting factual allegations under each individual claim.  Yet Evans also intersperses allegations of defamation within other claims.  "Judges are not like pigs, hunting for truffles that might be buried in the record."  *Knight Cap. Partners Corp. v. Henkel AG & Co., KGaA*, 930 F.3d 775, 780 n.1 (6th Cir. 2019).  It was incumbent on Evans to present her claims in a clear, understandable manner, and the Court declines to scour the complaint for allegations of defamation asserted under different claims.

The Sixth Circuit examined personal jurisdiction in cases involving online harassment and defamation.  In *Blessing*, a group of Kentucky high school students sued California comedian Kathy Griffin and a New Jersey doctor in a Kentucky court about their tweets condemning the students' behavior during a rally in Washington, D.C.  988 F.3d at 892.  The Sixth Circuit found that the Kentucky court lacked personal jurisdiction over the defendants.  *Id.* at 907.  Noting that "personal jurisdiction is absent when the communication was not specifically directed at the forum state," the court found no evidence that the defendants aimed their tweets at Kentucky or its residents rather than their Twitter followers generally.  *Id.* at 905.  The court distinguished *Calder*, reasoning that Kentucky was not the focal point because the tweets concerned the students' conduct in Washington, D.C., not Kentucky.  *Id.* at 906.  And "posting allegedly defamatory comments or information on an internet site does not, without more, subject the poster to personal jurisdiction wherever the posting could be read (and the subject of the posting may reside)."[8]  *Id.* at 905 n.15.

---

[8] A later concurring opinion states, "In the social media context, our precedent and other circuits illustrate that 'something more' most likely means a sufficient showing of intent," such as evidence that defendants made their posts hoping to reach the forum state specifically rather than their followers generally.  *Johnson*, 85 F.4th at 437 (Cole, J., concurring).

The Sixth Circuit later confronted a Tennessee case about defamatory tweets by Kathy Griffin against Samuel Johnson, the CEO of Tennessee-based company VisuWell. *Johnson*, 85 F.4th at 431. Retweeting a video capturing a dispute between Johnson and a Tennessee high school student, Griffin condemned Johnson's homophobic behavior and tagged VisuWell. *Id.* After several VisuWell customers threatened to sever business ties, VisuWell fired Johnson and announced the decision on Twitter. *Id.* at 432. Griffin responded to VisuWell asking if it had also removed Johnson from the board of directors, and VisuWell replied that it had. *Id.*

The court likened the case to *Calder* and concluded that the Tennessee court had personal jurisdiction over Griffin. *Id.* at 431, 433. It reasoned that the tweets concerned the Tennessee activities of a Tennessee resident; impugned the professionalism of an executive whose career was centered in Tennessee; drew the story from Tennessee sources; and resulted in the termination of Johnson's employment in Tennessee. *Id.* at 433. Griffin intentionally targeted Tennessee by tagging VisuWell, directly urging them to fire Johnson and threatening that "the nation will remain vigilant" if it did not. *Id.* These actions had "real world

19

consequences for Tennessee: Johnson not only lost his livelihood, but VisuWell also lost its leader and likely customers."  *Id.* at 434.

According to Evans, Robertson allegedly posted that Evans had committed professional misconduct and was under investigation by LARA, even publishing a letter from LARA.  ECF No. 1, PageID.8-9, 49; ECF No. 66, PageID.637, 640.  Robertson also allegedly directly contacted LARA to submit misconduct complaints and urged her followers to do the same. ECF No. 1, PageID.9-11, 49, 51, 55-56; ECF No. 68, PageID.670.  The post included a link to the complaint form on the LARA website.  ECF No. 1, PageID.51; ECF No. 68, PageID.670.  Robertson also created a Change.org petition accusing Evans of unethical behavior, including stalking and cyberbullying.  ECF No. 1, PageID.15; ECF No. 68, PageID.674.  A social media post about the petition was expressly aimed at "Michigan patients" and included a link to sign the petition.  ECF No. 1, PageID.48; ECF No. 68, PageID.671.  Other social media posts had links to a blog titled "Michigan Medical Malpractice" and called for Robertson's followers to "hold Michigan medical professionals…accountable for their heinous, unethical actions."  ECF No. 67, PageID.651.

If these allegations are true, Robertson intentionally targeted Michigan.  As in *Johnson*, Robertson allegedly commented on the Michigan

activities of a Michigan resident and impugned the professionalism of a physician assistant whose career was centered in Michigan.  The sources for the posts were drawn from Michigan, given that Robertson published a letter from LARA.  Robertson also directly contacted LARA and addressed "Michigan patients" in her posts.  And those posts had consequences in Michigan: LARA investigated Evans, and Evans's professional reputation and livelihood were threatened.  These allegations align almost exactly with *Johnson*, and exercising personal jurisdiction is thus supported.

Yet, due process does not allow the Court to exercise personal jurisdiction over Evans's defamation claims that were not directed to a Michigan audience.  Evans must show that Robertson had "'fair warning that [ ] *particular [defamatory] activity* may subject [her] to the jurisdiction of'" Michigan.  *Salom Enters.*, 464 F. Supp. 2d at 685 (quoting *Shaffer v. Heitner,* 433 U.S. 186, 218 (1977) (Stevens, J., concurring in judgment)) (emphasis added in *Salom*); *see also Edwards v. Schwartz*, 378 F. Supp. 3d 468, 491-92 (W.D. Va. 2019) ("That these six additional claims were pled collectively and presented under two umbrella counts, however, belies the fact that each constitutes a discrete cause of action arising under distinct circumstances for which a separate jurisdictional analysis is required.  In other words, Edwards' pleading numerous instances of

21

defamation under two counts does not relieve him of establishing, nor the court of evaluating, jurisdiction on a claim-by-claim basis.").

Evans alleges that Robertson's YouTube videos described her "as a psychopathic serial killer," nicknamed her "Teddy Bundy," accused her of stalking, and called her "a Black Karen" who was involved with other crimes.  ECF No. 1, PageID.8, 15, 45-47, 75; ECF No. 67, PageID.654.  An opinion in *Twin Flames Universe.com, Inc. v. Cole*, is instructive on the question of whether the Court has personal jurisdiction over these defamation claims.  528 F. Supp. 3d 708, 718 (E.D. Mich. 2021).  In *Twin Flames*, an Arizona defendant's defamatory social media posts about the plaintiffs' activities in Michigan did not establish personal jurisdiction.  *Id*. Michigan was not the "focal point" of the article, as the defendant did not target Michigan readers or mention Michigan anywhere in her posts.  *Id.* at 716-17.  Thus, "something more than knowledge of the Plaintiffs' presence in the forum must be found, such as purposely reaching into the forum state to create reputational harm to the plaintiff in the forum state."  *Id.* at 718.

Because the videos at issue allegedly referenced unsolved cold cases in Michigan, Robertson's intent to create contacts with the forum is less clear cut than in *Twin Flames*.  But dicta from the concurring opinion in

22

*Johnson* is helpful.  Judge Cole stated that, had Griffin defamed Johnson and identified him as a resident of Tennessee without identifying his employer, the court "would need to further scrutinize the record as to whether Griffin's post was (a) 'passive' activity on the internet meant to facilitate her broader advocacy efforts by condemning problematic behavior, or instead, (b) deliberately directed into Tennessee with the intent to cause consequence there."  *Johnson*, 85 F.4th at 438 (Cole, J., concurring) (citing *Shrader v. Biddinger*, 633 F.3d 1235, 1241 (10th Cir. 2011)).

Nothing suggests that Robertson intentionally targeted her videos about Evans's alleged crimes toward Michigan viewers rather than her followers at large.  The reference to Michigan in the title was incidental, and Evans does not describe whether Michigan was central to the video's content.  *See Vangheluwe v. Got News, LLC*, 365 F. Supp. 3d 850, 863-64 (E.D. Mich. 2019) (declining to exercise personal jurisdiction based on the defendant's social medial post calling the plaintiff a terrorist and druggie and including a link to an article describing the plaintiff's ties to Michigan). Personal jurisdiction over the claims stemming from Robertson's YouTube videos accusing Evans of crimes is thus lacking.

The same rationale applies to Evans's allegations that Robertson posted deepfake pornography featuring her likeness.  While reprehensible, nothing in the alleged posts ties them to Michigan beyond Evans's presence in the forum.  And nothing suggests that Robertson intended the posts to reach Michigan specifically, so the Court finds that it lacks personal jurisdiction over the claims related to the deepfake pornography. *See Blessing*, 988 F.3d at 904, 906; *Twin Flames*, 528 F. Supp. 3d at 718.

Next, the Court evaluates Evans's defamation claim stemming from her allegations that Robertson made false reports to the police.  Evans claims that Robertson falsely reported to police in Michigan her concerns about Evans's mental health and animal cruelty.  ECF No. 1, PageID.10. These calls prompted the police to perform wellness checks at Evans's residence in Michigan.  *Id.*  Robertson obtained bodycam footage from at least one of those wellness checks by allegedly submitting a FOIA request to the police department in Michigan.  *Id.*  Robertson then posted video clips and images of Evans from the footage; two videos were entitled, "Morning Chit Chat: My Obsessed Stalker Was Exposed" and "My Turn: My Stalker Teddy Bundy Police Footage."  *Id.*, PageID.10, 52-54; ECF No. 65, PageID.606; ECF No. 67, PageID.658.

24

These allegations, if true, show that Robertson intentionally targeted Michigan and caused consequences in the forum.  The local police department spent resources in performing wellness checks and in preparing the bodycam footage in response to the FOIA request.  And Robertson's videos of the footage drew on Michigan sources and allegedly harmed the reputation of a Michigan resident.  Because Michigan is the focal point of these allegations, exercising personal jurisdiction over them is proper.

**3.**

Evans's claims of "cyberbullying and harassment" and "impersonation of others to commit fraud" allege that Robertson filed hundreds of allegedly fraudulent copyright and privacy complaints with YouTube and the CCB, resulting in the termination or suspension Evans's accounts.  ECF No. 1, PageID.12-14.  Evans also alleges that Robertson harassed her by publishing details about her divorce and by urging Robertson's followers to likewise harass Evans.  *Id.*, PageID.12.  These claims boil down to allegations of online harassment and doxxing, to which the *Blessing* and *Johnson* analysis applies.

Nothing ties Evans's allegations that Robertson filed fraudulent complaints with YouTube and the CCB to Michigan.  As discussed, Evans's

25

presence in Michigan is not enough to sustain personal jurisdiction.  *See*

*Walden*, 571 U.S. at 285 ("[T]he plaintiff cannot be the only link between

the defendant and the forum."); *Twin Flames*, 528 F. Supp. 3d at 718.

Evans does not allege that YouTube is based in Michigan.  And the CCB is

in Washington, D.C.  Because Evans has not shown minimum contacts

with respect to this claim, exercising personal jurisdiction is not justified.

The same reasoning applies to Evans's generalized claims of doxxing.

But Robertson also allegedly posted a YouTube video about Evans's

divorce and published documents from those proceedings.  ECF No. 1,

PageID.12, 74-75; ECF No. 67, PageID.667.  One post states, "Good

morning.  I will do a quick live to discuss Teddy Bundy's divorce.  Here are

the divorce documents [link to Robertson's website]."  *Id.*, PageID.74; ECF

No. 67, PageID.667.  The post contains a picture of Evans styled as a

"Wanted" poster and states, "Approach with extreme caution."  *Id.*  And in a

video titled "Humpty Bundy Had a Great Fall!  The Smelly P Divorce," a

document bearing a heading from the Wayne County Circuit Court is

visible.  ECF No. 1, PageID.75.

These posts do show that Robertson intentionally targeted Michigan.

Robertson allegedly obtained legal filings made in a Michigan court and

involving a Michigan resident.  A reasonable inference arises that

Robertson or someone acting on her behalf contacted the court for those records and that the court sent them to her.  And the harm from Robertson's allegedly insulting commentary about the divorce was felt by Evans in Michigan.  Michigan was thus the focal point of these posts, so personal jurisdiction is supported.

## C.

Robertson summarily contends that venue is improper in the Eastern District of Michigan because she does not reside in, have substantial ties to, or conduct business within the state.  ECF No. 28, PageID.182.  Venue for a civil action is proper in "a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred."  28 U.S.C. § 1391(b)(2).  As discussed, the claims over which the Court has personal jurisdiction are tied to Robertson's alleged acts targeting Michigan.  And because Robertson does not engage in a substantive analysis showing that venue is improper, she has waived this issue.  *See McPherson v. Kelsey*, 125 F.3d 989, 995-96 (6th Cir. 1997) ("Issues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived.  It is not sufficient for a party to mention a possible

argument in the most skeletal way, leaving the court to put flesh on its bones." (cleaned up)).

### D.

The Court evaluates Robertson's motion to set aside default and to dismiss for insufficient service of process together.  When "a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, the clerk must enter the party's default."  Fed. R. Civ. P. 55(a) (cleaned up).  District courts have discretion to set aside a clerk's entry of default on a showing of good cause.  Rule 55(c).  The Court must first consider whether Evans properly served Robertson.  *Adams v. Sunlighten Inc.*, 328 F.R.D. 477, 481 (W.D. Mich. 2018) (citing *O.J. Distrib., Inc. v. Hornell Brewing Co.*, 340 F.3d 345, 355 (6th Cir. 2003)).  If she did not, the default must be set aside without reference to good cause.  *Id.*

A party may seek to dismiss a lawsuit for insufficient service of process under Federal Rule of Civil Procedure 12(b)(5).  The plaintiff bears the burden of proving that service was proper.  *Metro. Alloys Corp. v. State Metals Indus., Inc.*, 416 F. Supp. 2d 561, 563 (E.D. Mich. 2006).  "In deciding a motion to dismiss under Rule 12(b)(5), the court may refer to record evidence in determining the sufficiency of service."  *Id.*  Courts may also consider "[f]acts as attested to in uncontroverted affidavits."  *Id.*

28

(cleaned up).  Courts have broad discretion in deciding under Rule 12(b)(5)

whether to dismiss an action for failure to serve or to retain the case but

quash service.  *Voice Sys. Mktg. Co., L.P. v. Appropriate Tech. Corp.*, 153

F.R.D. 117, 129 (E.D. Mich. 1994).

The appropriate manner of service is governed by Rule 4(e)-(j).

Federal Rule of Civil Procedure 4(e)(2) permits serving an individual by:

> (A)  delivering a copy of the summons and of the complaint to
> the individual personally;
>
> (B) leaving a copy of each at the individual's dwelling or usual
> place of abode with someone of suitable age and discretion
> who resides there; or
>
> (C) delivering a copy of each to an agent authorized by
> appointment or by law to receive service of process.

Delivery on an agent "means personal service on the appropriate

individual, not service by mail."  *Fleury v. Polk Cnty. Sheriff's Off.*, No. 24-

cv-11417, 2024 WL 4894846, at *4 (E.D. Mich. Nov. 26. 2024) (cleaned

up).

Rule 4(e)(1) also permits a plaintiff to serve an individual by following

state law in the state where the action is pending or where service is made.

Plaintiffs could have served Robertson under Michigan law by:

> (1)  delivering a summons and a copy of the complaint to the
> defendant personally; or
>
> (2)  sending a summons and a copy of the complaint by
> registered or certified mail, return receipt requested, and

> delivery restricted to the addressee.  Service is made when the
> defendant acknowledges receipt of the mail.  A copy of the
> return receipt signed by the defendant must be attached to
> proof showing service under subrule (A)(2).

Mich. Ct. R. 2.105(A).  Michigan also permits substituted service on a

nonresident individual by:

> (a) serving a summons and a copy of the complaint in Michigan
> on an agent, employee, representative, sales representative, or
> servant of the defendant, and

> (b) sending a summons and a copy of the complaint by
> registered mail addressed to the defendant at his or her last
> known address.

Mich. Ct. R. 2.105(B)(1).  Again, substituted service requires personal

service on an agent in Michigan and mailing the summons and complaint to

the defendant's last known address.  *See Gray-El v. Jennifer*

*Lopez/Nuyorican Prods., Inc.*, No. 19-10952, 2019 WL 8750506, at *14 n.3

(E.D. Mich. Dec. 18, 2019).

Last, under Delaware law, process "may be served on the defendant

in the manner prescribed by any rule of court, or by stating the substance

of it to the defendant personally, or by leaving a copy of it at the

defendant's usual place of abode, in the presence of some adult person."

10 Del. Code § 3103(a) (cleaned up).  The Delaware Superior Court Rules

permit service by:

> [D]elivering a copy of the summons, complaint and affidavit, to
> that individual personally or by leaving copies thereof at that

individual's dwelling house or usual place of abode with some person of suitable age and discretion then residing therein, or by delivering copies thereof to an agent authorized by appointment or by law to receive service of process.

Del. Super. Ct. R. 4(f)(1)(I).  "Delivery" on an agent by certified mail is insufficient under Delaware law.  *See Chapman v. Homecoming Fin. Servs., LLC*, No. 07-4553, 2008 WL 1859540, *2 n.3 (E.D. Pa. Apr. 25, 2008); *Shipley v. Orndoff*, 491 F. Supp. 2d 498, 503 (D. Del. June 7, 2007).

Evans first tried to serve Robertson's alleged registered agent by certified mail sent to 8 The Green, Suite A, Dover, DE 19901.  ECF No. 13, PageID.108.  The Court determined that this method of service was improper and ordered Evans to serve Robertson in accordance with federal, Michigan, or Delaware law.  *Id.*, PageID.114; ECF No. 14; ECF No. 17.  Evans then hired a process server who personally served Charlotte Benice, an employee of A Registered Agent (ARA), at the Dover address.  ECF No. 12, PageID.100; ECF No. 16.

The Court ordered Evans to show cause why the second attempt at service was proper, as it was unclear whether ARA was Robertson's authorized agent.  ECF No. 20.  The Court considered an email in which Robertson agreed to receive service of process at the Dover address for allegedly infringing content posted to YouTube.  *Id.* (citing ECF No. 12, PageID.104).  But the Court noted that the email did not identify any agent

31

by name and only listed the Dover address.   ECF No. 20, PageID.126.

And the exhibit was neither Robertson's sworn statement nor an unsworn

declaration under 28 U.S.C. § 1746.  *Id.* at PageID.126-127.

In response to the show cause order, Evans offered CCB copyright

claims that Robertson filed against her in March and June 2024, which

listed the Dover address as her mailing address.  ECF No. 23, PageID.142-

143.  And in July 2023 communications under another assumed name,

Alana Wilson, Robertson instructed YouTube to send all legal and business

documents to ARA at the Dover address.[9]  *Id.*, PageID.144-145.  The Court

suggested that Evans may have adequately shown that service was proper

but required Evans to file a written certification under penalty of perjury that

the exhibits were authentic.  ECF No. 24.  Evans did so.  ECF No. 32.

Before the Court could resolve the service issue, Robertson

appeared and challenged the sufficiency of service.  ECF No. 28.

Robertson first argues that service is defective because it was not made in

her legal name.  ECF No. 28, PageID.183; ECF No. 71, PageID.684.  But

"if the right party is before the court (with actual notice) but simply has been

sued under the wrong name, an amendment to cure the misnomer is

---

[9] The parties do not dispute that "Alana Wilson" is Robertson's alias.  *See*
ECF No. 64, PageID.561, 568, 580; ECF No. 71, PageID.681, 699.

preferable to dismissal."  5B Wright & Miller, Federal Practice & Procedure § 1353 (4th ed.) (cleaned up).  Robertson admits that she is "the individual improperly named in this lawsuit as 'Danielle Robertson,'" and she maintained an account with ARA under the name "Dani Robertson."  *See* ECF No. 28, PageID.195, 200.  This error is not grounds to dismiss the action.

Robertson also argues that ARA is no longer her authorized agent, claiming that she cancelled services with ARA before this action was filed. *Id.*, PageID.182.  December 2023 emails from Delaware Corporate Headquarters LLC[10] confirm cancellation of Robertson's registered agent, virtual office, and phone services.  *Id.*, PageID.200-202.  Robertson also stated in an unsworn declaration under penalty of perjury that ARA does not offer registered agent services for individuals, only business entities. *Id.*, PageID.195.  And ARA had no record of a business name in Robertson's account history.  *Id.*, PageID.195, 203.  Her personal

---

[10] Delaware Corporate Headquarters is the same entity as ARA.  A September 2024 email from the business contains a signature with both business names.  ECF No. 71, PageID.702.  And the companies appear to share the same website.  *See* https://corp.delaware.gov/agents (last visited September 9, 2025).  For the sake of clarity, the Court refers to this business as ARA.

knowledge of these facts is based on a September 2024 email, in which

ARA stated:

> We would only get Service of Process if we are still listed on the
> State record as the Registered Agent… However I do want to
> advise that it does not even look like we have an actual
> Company name on record for you.  So we may not be able to
> receive a Service of Process.

*Id.*, PageID.203.  Robertson makes similar arguments in her response to

the order to show cause.  ECF No. 71, PageID.681-684.

Although the September 2024 email from ARA states that it can only

accept service of process for a business if it is named as a business's

registered agent with the state, that email does not expressly state that

ARA does not accept service on behalf of individuals.  ECF No. 23,

PageID.203.  And it says only that ARA "*may* not be able to" accept service

for Robertson because she had no business name on file.  *Id.* (emphasis

added).  Whether ARA accepts service for individuals remains an open

question.

Evans insists that Robertson used the Dover address in

YouTube infringement proceedings as recently as December 2024.  ECF

No. 64, PageID.561-562.  The exhibits supporting that contention are

undated.  *Id.*, PageID.589-591.  But Robertson still listed the Dover address

34

in filings made with the CCB in March and June 2024, *after* the alleged December 2023 cancellation.  ECF No. 23, PageID.142-143.

In her own declaration, Evans stated under penalty of perjury that ARA informed her that it does accept service of process for individuals. ECF No. 66, PageID.618-619.[11]  She also explained, "When a process server delivers legal documents [to ARA], the account is first verified prior to signature, the documents are accepted and scanned into the client's portal, and the account holder is notified directly."  *Id.* (cleaned up).  But Evans's statements may not be considered because they contain inadmissible hearsay—out-of-court statements by an ARA employee offered for their truth.  *See Beydoun v. Wataniya Restaurants Holding, Q.S.C.*, 768 F.3d 499, 506 (6th Cir. 2014) ("In general, it is improper for a court to consider hearsay statements when ruling on a motion to dismiss.").

A factual question exists whether ARA was Robertson's authorized agent.  Robertson kept using the address for service of legal documents even after the alleged December 2023 cancellation.  And it is unclear whether ARA accepts service of process for individuals.

---

[11] Evans offers another summary of her call with ARA, but it is not a valid declaration because it is not signed under penalty of perjury.  ECF No. 66, PageID.615-617; *see Tenneco Auto. Operating Co. v. Kingdom Auto Parts*, 410 F. App'x 841, 847-48 (6th Cir. 2010).

"Any factual question raised by the affidavits or other evidence presented on a Rule 12(b)(5) motion should be determined by the district court in accordance with Rule 12(i), except that factual issues intertwined with the merits of the case may have to wait until trial for their resolution and cause a deferral of a decision of the motion."  5B Charles Alan Wright, Arthur R. Miller & Edward H. Cooper, Federal Practice & Procedure § 1353 (4th ed.).  But the Court need not resolve this question.  Even if service were improper, the default should be set aside and alternate service is justified.  The Court will order Evans to serve Robertson by alternate service in a separate order.

Although Evans does not expressly seek alternate service, her arguments may be construed as making that request.  Evans argues that her efforts to serve Robertson have been frustrated because Robertson is evading service by hiding behind multiple aliases.  ECF No. 64, PageID.561, 570.  Robertson admits that Danielle Robertson is not her real name, and it is undisputed that she uses multiple aliases, even for transacting business with ARA.  ECF No. 28, PageID.183 200.  She has also intentionally sowed confusion regarding her address.  Robertson used ARA's registered agent services and used the Dover address as her mailing address.  ECF No. 23, PageID.144-145.  She then cancelled those

36

services but continued to use the Dover address in CCB filings.  *Id.*, PageID.142-143.  Most recently, Robertson used an address at 30 N. Gould St., #51402, Sheridan, WY 82801 in her filings.  *Id.*, PageID.197.  As Evans points out, another registered agent operates from this address—an agent whose services a troubling number of illegitimate businesses engage.  *See* ECF No. 51, PageID.489.[12]

Under Michigan law, if a plaintiff shows that "service of process cannot reasonably be made," courts may authorize service in another manner "reasonably calculated to give the defendant actual notice of the proceedings and an opportunity to be heard."  Mich. Ct. R. 2.105(I)(1). Evans has shown that she cannot reasonably serve Robertson, as her legal name is unknown.  And although substituted service typically requires the serving party to show that she made a "diligent search for an absentee defendant," Evans cannot locate Robertson without her legal name, which has been well concealed.  *Reyes-Trujillo v. Four-Star Greenhouse, Inc.*,

---

[12] International Consortium of Journalists, *Millions in Covid Relief Funds Went to Shadowy Companies Registered at a Wyoming Storefront that Hundreds of Thousands of Firms Used as an Address*, https://www.icij.org/investigations/pandora-papers/millions-in-covid-relief-funds-went-to-shadowy-companies-at-a-wyoming-storefront-that-hundreds-of-thousands-of-firms-used-as-an-address (last viewed September 11, 2025).

No. 20-11692, 2021 WL 534488, at *4 (E.D. Mich. Feb. 12, 2021) (cleaned up).

"[I]n cases where Defendants have conducted business online, via email, or other electronic means, courts in this Circuit have permitted service of process by email and other alternative methods." *Id.* (cleaned up); *see also N. Atl. Operating Co., Inc. v. Scott*, No. 16-12076, 2016 WL 8671223, at *6 (E.D. Mich. July 1, 2016) (citing *Elcometer, Inc. v. Tqc-Usa, Inc.*, No. 12-cv-14628, 2013 WL 592660, *2 (E.D. Mich. Feb. 14, 2013); *McCluskey v. Belford High Sch.*, No. 2:09-cv-14345, 2010 WL 2696599 (E.D. Mich. Jun. 24, 2010)).  Because Robertson already has actual notice of the litigation and has included her email address in her filings, service of process at that email address—danimontana2022@gmail.com—is reasonably calculated to give her notice of the proceedings.

As set forth in another order, Evans must serve Robertson at her email address.  By October 3, 2025, Evans must file a notice with evidence confirming that email was sent.  By November 3, 2025, Robertson must file a notice identifying her legal name and postal address.  For privacy purposes, Robertson may retain a registered agent and use that address. Once Robertson's legal name is known, Evans must amend the complaint to reflect the correct name.

**E.**

Robertson also argues that Evans fails to state a valid claim.  ECF No. 39, PageID.348-350.  "In the absence of 'proper service of process, consent, waiver, or forfeiture, a court may not exercise personal jurisdiction over a named defendant.'"  *Boulger*, 917 F.3d at 476 (quoting *King v. Taylor*, 694 F.3d 650, 655 (6th Cir. 2012)).  And without personal jurisdiction, a court is "powerless to proceed to an adjudication" on the merits.  *Id.* (cleaned up).  Until Robertson is served, the Court cannot address the merits of the claims.  Thus, her motion to dismiss for failure to state a claim should be denied without prejudice.

**F.**

The Court notes that both Evans and Robertson included URLs purportedly linked to media exhibits shared on Google drive.  *See, e.g.*, ECF No. 28-2, PageID.225; ECF No. 66, PageID.625-627.  Filings media exhibits in this manner was improper.  Under Rule 19(c) of the Court's electronic filing policies and procedures, "[m]edia files (see R1(i)), such as an audio clip or video clip, may be filed only with leave of court," and the filing party must adhere to certain procedural requirements when seeking leave to submit those files.  Evans and Robertson did not adhere to these guidelines.  And because the Court may not open URLs supplied by

39

litigants for security reasons, it declines to consider these improperly filed exhibits.

## IV.    Conclusion

The Court thus **RECOMMENDS** that Robertson's motion to set aside the Clerk's entry of default be **GRANTED** and that her motions to dismiss be **GRANTED IN PART AND DENIED IN PART** (ECF Nos. 28, 39). Evans's remaining claims would include: (1) copyright infringement stemming from the use of Evans's likeness; (2) defamation stemming from Robertson's alleged posts about Evans's professional misconduct, false reports to police, and posts including bodycam footage; and (3) cyberbullying and harassment stemming from Robertson's posts about Evans's divorce.

s/Elizabeth A. Stafford
ELIZABETH A. STAFFORD
United States Magistrate Judge

Dated: September 25, 2025

## NOTICE TO THE PARTIES ABOUT OBJECTIONS

Within 14 days of being served with this report and recommendation, any party may serve and file specific written objections to this Court's findings and recommendations.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P.

72(b)(2).  If a party fails to timely file specific objections, any further appeal is waived.  *Howard v. Secretary of HHS*, 932 F.2d 505 (6th Cir. 1991).  And only the specific objections to this report and recommendation are preserved for appeal; all other objections are waived.  *Willis v. Secretary of HHS*, 931 F.2d 390, 401 (6th Cir. 1991).

Each **objection must be labeled** as "Objection #1," "Objection #2," etc., and **must specify** precisely the provision of this report and recommendation to which it pertains.  Within 14 days after service of objections, **any non-objecting party must file a response** to the objections, specifically addressing each issue raised in the objections in the same order and labeled as "Response to Objection #1," "Response to Objection #2," etc.  The response must be **concise and proportionate in length and complexity to the objections**, but there is otherwise no page limitation.  If the Court determines that any objections lack merit, it may rule without awaiting the response.

## <u>CERTIFICATE OF SERVICE</u>

The undersigned certifies that this document was served on counsel of record and any unrepresented parties via the Court's ECF System to their email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on September 25, 2025.

<u>s/Davon Allen</u>
DAVON ALLEN
Case Manager