POOR QUALITY ORIGINAL

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION



FILED
JAN 14 2026
CLERK'S OFFICE
DETROIT

SYBRENA EVANS,

    Plaintiff

V.

    Case no: 5:24-cv-13435
    Hon. Judith E. Levy
    Magistrate Judge Elizabeth A. Stafford

DANIELLE ROBERTSON, et al.,

    Defendants.

---

## PLAINTIFF'S MOTION FOR LEAVE TO FILE PROPOSED SUPPLEMENTAL PLEADING

Pursuant To Fed. R. Civ. P. 15(d)

---

## I. INTRODUCTION

Plaintiff Sybrena Evans, appearing pro se, respectfully moves for leave to file the attached Proposed Supplemental Pleading pursuant to Federal Rule of Civil Procedure 15(d).

In post-complaint filings submitted between November 17, 2025 and January 7, 2026, (ECF Nos. 109, 114, 116, 120, and 127), Defendant Danielle Robertson made judicial admissions and engaged in post-pleading conduct that materially altered the factual and jurisdictional posture of this case. These developments were not available at the time the original Complaint ECF No. 1 was filed and directly affected the viability of Count 1 (Copyright Infringement), Count 5 (Impersonation to Commit Fraud), and Count 6 (Conspiracy to Commit Fraud and Cause Emotional Distress).

1

Plaintiff previously sought leave to supplement. That motion was denied without prejudice solely because it did not reproduce the entire proposed pleading as required by E.D. Mich. LR 15.1 (ECF No. 123). The Court did not reach the merits. Plaintiff now refiles a corrected motion that fully cures that procedural defect.

The attached Proposed Supplemental Pleading is a complete, self-contained document that reproduces the entire pleading as supplemented and does not incorporate prior pleadings by reference, fully complying with Local Rule 15.1.

## II. RULE 15(d) LEGAL STANDARD

Federal Rule of Civil Procedure 15(d) permits a party, on motion and reasonable notice, to supplement a pleading to set out "any transaction, occurrence, or event that happened after the date of the pleading," even where the original pleading was alleged to be defective. *See* Fed. R. Civ. P. 15(d). Supplementation is appropriate where post-pleading developments materially affect jurisdictional prerequisites or the merits of the claims.

E.D. Mich. Local Rule 15.1. "A party who moves to amend a pleading shall attach the proposed amended pleading to the motion. Any amendment to a pleading, whether filed as a matter of course or upon a motion to amend, must, except by leave of court, reproduce the entire pleading as amended, and may not incorporate any prior pleading by reference."

Leave to supplement should be freely granted when post-pleading events materially affect jurisdiction, statutory prerequisites, or the merits of existing claims, and where supplementation will not cause undue prejudice.

## III. SUPPLEMENTAL FACTS ARISING AFTER THE ORIGINAL PLEADING

Four categories of post-pleading developments compel supplementation here:

### A. Completion of Administrative Exhaustion Under 17 U.S.C. § 411(a)

On December 1, 2025, the U.S. Copyright Office issued a decision on Application No. 1-14583975161, stating that "we must refuse registration…" (Exhibit B). As the Supreme Court held in *Fourth Estate Pub. Benefit Corp. v. Wall-Street.com, LLC*, "registration occurs, and a copyright claimant may commence an infringement suit, **when the Register has registered a copyright or has refused registration**." 586 U.S. 201, 205–06 (2019). Under this holding, the December 1 Refusal satisfies § 411(a)'s statutory prerequisite for suit.

The Refusal therefore cures the timing issue identified in Defendant's Renewed Motion to Dismiss (ECF 77) and preserves all remedies under 17 U.S.C. §§ 502–503, including injunctive relief and impoundment or destruction of infringing copies. The Refusal does not eliminate Count I; it completes administrative exhaustion and preserves the Court's authority to adjudicate infringement, unauthorized fixation, and misuse of the Original PPO Zoom Image (Recorded by Non-Party).

### B. Defendant's Judicial Admissions of Possession and Source of Restricted Judicial Material

After the Complaint and after the Magistrate Judge issued the R&R (ECF 75), Defendant filed (ECF Nos. 109 and 114), revealing for the first time that she possessed and used restricted material from the April 9, 2024 PPO hearing.

In ECF 109 (PageID.2302–2303), Defendant introduced Exhibit G1 labeled "Original PPO Zoom Image (April 2024 – Recorded by Non-Party)" and Exhibit G2 labeled "Cropped Face Extracted

3

From Original (Used in Meme)" (Exhibit C). Defendant repeated these same labels in

(ECF No. 114, PageID.2342–2343) Exhibit D.

These are Defendant's first admissions that she:

- Possessed the **"Original PPO Zoom Image (Recorded by Non-Party)"**;

- Knew the April 9, 2024 PPO hearing was non-public and could not lawfully be recorded;

- Affirmatively excluded Plaintiff as the source of the image; and

- Identified the source as a **non-party PPO participant**.

These admissions directly address attribution, unlawful acquisition, and knowledge—facts the

Magistrate Judge previously found insufficiently developed based on the record available at that

time. Because these admissions arose only through Defendant's post-pleading filings,

supplementation is the appropriate mechanism to place them before the Court.

**C. Defendant's Admissions Concerning Manipulation and Creation of Derivative Works**

Defendant further admitted that she personally:

- Cropped and extracted Plaintiff's face from the Original PPO–derived image;

- Removed the original background;

- Composited Plaintiff's likeness into a new visual context; and

- Disseminated the resulting images through monetized platforms.

These admissions convert what were previously allegations into **undisputed facts** bearing

directly on unauthorized derivative works, willfulness, and intent under the Copyright Act, as well

as on Plaintiff's related tort claims.

4

**D. Defendant's Post-Pleading Interference With Plaintiff's Pending Copyright Registration (USCO Contact and Same-Day Motion Practice)**

On November 26, 2025, while this litigation was pending, Defendant submitted written correspondence to the United States Copyright Office ("USCO") challenging Plaintiff's pending copyright application relating to the PPO-derived image (Exhibit E)

December 1, 2025, at approximately 10:19 a.m., the USCO logged an inquiry concerning Plaintiff's pending application that Plaintiff did not initiate. Later that day, when Plaintiff contacted the USCO regarding the status of the application, Plaintiff was informed that an earlier inquiry had already occurred that morning from a caller identifying as Plaintiff or acting on Plaintiff's behalf.

That same day, December 1, 2025, Defendant filed ECF No.116 in this Court asserting Plaintiff's lack of completed copyright registration as a basis for dismissal while the administrative examination process remained pending.

Taken together, these post-pleading events are material to Defendant's knowledge, intent, and willfulness, and further support supplementation under Rule 15(d) so the Court may consider the case on a complete and accurate record.

**E. Defendant's Post-Pleading Identification of a "Principal Actor" (ECF No. 127)**

On January 7, 2026, Defendant identified non-party PPO petitioner Keva Williams as the "principal actor" whose conduct constitutes the "operational core" of the events at issue (ECF No. 127, PageID.2646).

This filing—submitted after the original Complaint and after briefing on Defendant's renewed motion to dismiss—constitutes a **new judicial admission** regarding coordination and shared

5

conduct. Defendant's characterization of Williams' role bears directly on the factual basis for Plaintiff's conspiracy allegations and attribution of conduct.

These facts were not available at the time of filing and therefore fall squarely within Rule 15(d).

## IV. Why Defendant's New Admissions Matter and Why They Are Properly Considered Post-Pleading Facts Under Rule 15(d)

### A. Plaintiff's Prior Allegations (ECF No. 104)

In ECF No. 104, PageID.2047, Plaintiff alleged that Defendant Danielle Robertson obtained and disseminated PPO-related content "within hours of court issuance," demonstrating unlawful possession of sealed Michigan judicial material and coordinated activity with Jane Doe #1 (Williams) to weaponize those proceedings online. Plaintiff further alleged that the synchronized messaging, timing, and monetized commentary between Robertson and Williams evidenced a "meeting of the minds" and a deliberate plan to exploit Michigan court actions for reputational harm.

At that time, Plaintiff could only infer Defendant's access based on Defendant's rapid publication and her April 10, 2024 Dani Montana Tv YouTube livestream "*Black Tea Sector: Teddy Bundy The Real Tea April 9th*", in which Defendant recounted non-public statements, timing, and procedural details from the April 9, 2024 PPO hearing. Defendant denied possessing any PPO footage or image, leaving Plaintiff without the evidentiary basis to allege the full chain of custody.

Defendant's April 10, 2024 morning livestream contains the following admission:

> *"This person told me that the judge apologized to them at the very end…*
> *once they heard them out more, the judge apologized and said, 'I'm sorry.'"*

6

Only a participant in the April 9 PPO hearing could have conveyed such non-public, off-record exchanges. Defendant's statement confirms real-time communication with the PPO Petitioner immediately after the hearing.

When combined with Defendant's later filings acknowledging possession of the "Original PPO Zoom Image (April 2024 – Recorded by Non-Party)," these facts establish a direct transmission channel between the individual who unlawfully recorded the PPO hearing and Defendant.

These post-pleading admissions supply the previously missing factual link necessary to demonstrate coordinated conduct. They do not merely support Plaintiff's conspiracy allegations; they now ground them in concrete documentary evidence rather than inference.

This newly revealed information provides the factual nexus that could not have been alleged earlier and establishes the evidentiary basis for conspiracy. "A civil conspiracy is an agreement between two or more persons to injure another by unlawful action. Express agreement among all the conspirators is not necessary to find the existence of a civil conspiracy." *Hooks v. Hooks,* 771 F.2d 935 (6th Cir. 1985).

## V. SUPPLEMENTATION IS NECESSARY AND APPROPRIATE

### A. Supplementation Clarifies Rather Than Expands the Case

Plaintiff does not assert new causes of action. The Proposed Supplemental Pleading integrates post-pleading developments into the existing counts to present a complete and chronological statement of claims, curing deficiencies identified in earlier rulings.

7

## B. No Undue Prejudice to Defendant

All supplemental facts arise from Defendant's own filings or post-complaint conduct. Defendant cannot claim surprise or prejudice from her own admissions. Discovery has not yet commenced, and supplementation at this stage promotes efficiency rather than delay.

## C. Compliance With Local Rule 15.1

Plaintiff has attached the entire Proposed Supplemental Pleading as **(Exhibit A)**. It reproduces the full pleading as supplemented and does not incorporate prior pleadings by reference, fully satisfying E.D. Mich. LR 15.1.

## VI. EFFECT ON PENDING MOTIONS

The Report and Recommendation issued without the benefit of:

- The Copyright Office refusal;
- Defendant's admissions of possession and manipulation;
- Defendant's identification of a non-party principal actor; and
- Clarified jurisdictional facts.

Supplementation ensures that the Court resolves pending dispositive motions on an accurate and complete record.

## VII. CONCLUSION

Because material events occurred after the filing of the Complaint—events that directly affect jurisdiction, attribution, intent, and the viability of existing claims—leave to supplement is warranted under Rule 15(d).

**PRAYER FOR RELIEF**

Plaintiff respectfully requests that this Court:

1. **GRANT** leave to file the Proposed Supplemental Pleading under Fed. R. Civ. P. 15(d);

2. **ACCEPT** (Exhibit A) as the operative pleading; and

3. **CONSIDER** the supplemental facts in resolving Defendant's pending motions.


Respectfully submitted,

/s/ **Sybrena Evans**

Plaintiff, Pro Se

17710 Lakeview Cr.

Northville, MI 48168

January 14, 2026


**CERTIFICATE OF SERVICE**

I certify that on January 14, 2026, I served a copy of this Notice by First-Class U.S. Mail,

postage prepaid, to:

Danielle Robertson

D30 N. Gould St. #51402

Sheridan, WY 82801

DaniMontana2022@gmail.com

/s/ **Sybrena Evans**

9

**Exhibit B –** December 1, 2025 – United States Copyright Office Refusal Decision for

**Application No. 1-14583975161.** [Redacted]



10

**Exhibit C**

November 17, 2025 Defendant's *Exhibit G1 – Original PPO Zoom Image (April 2024 –*
*Recorded by Non-Party).*    Referenced in ECF No.109 (PageID.2302–2303).



November 17, 2025, Defendant's *Exhibit G2 – Cropped Face Extracted From Original (Used*
*in Meme).*    Reference in ECF No. 109 (PageID.2302–2303)



11

**Exhibit D**

November 21, 2025 Defendant's *Exhibit G1 – Original PPO Zoom Image (April 2024 –*
*Recorded by Non-Party).* Referenced in ECF No.114 (PageID.2342–2343).



November 21, 2025, Defendant's *Exhibit G2 – Cropped Face Extracted From Original (Used*
*in Meme).* Reference in ECF No. 114 (PageID.2342–2343).



12

**Exhibit E**

**November 26, 2025** – Defendant Danielle Robertson Email Written Correspondence to the United States Copyright Office Challenging Plaintiff's Pending Copyright Application as Fraudulent.

(a) Defendant's two-page email to the USCO;



Evans is attempting to rep            a composite meme that I created, and (2) a still frame extra Michigan PPO virtual court hearing, which she did not fix; did not record, did not author, a lawfully acquire.

**1. Summary of the Problematic Copyright Application**

Evans filed Copyright Application No. 1-14583975161, claiming she created an "original phot of herself.

However, the work she submitted contains:
- A cropped still frame from sealed PPO court footage,
- A third-party commercial iStock background,
- And digital edits, assembly, and layout created by me, not her.

Evans did not take the photograph.

In fact, she admits in her federal court filings that:
1. The image was "captured from a video recording" that she did not make, and
2. It was unlawfully obtained, because recording the PPO hearing violates Michigan Com 8.115(C)(3),
3. And a third person—not Evans—took or extracted the image from the court hearing.

Her own exhibits state that the footage is "the property of the State of Michigan Third Judicial Ci Court," and that she did not "create or author this particular still image."

(See ECF No. 104, PageID.1979–2012.)

MAIL 1121

This alone makes her copyright application defective.

**2. Fixation Originated With the Court — Not Evans**

The still frame is not a photograph by Evans. It is:
- A court-created recording,
- Fixed by the Third Judicial Circuit Court,
- Sealed,
- Prohibited from being recorded by any party, and
- Not created, filmed, or authored by Evans.

The official Notice of Hearing warned all participants:

**"It is unlawful to record any Court Proceeding."**
(Complaint Exhibit B, ECF No. 1, PageID.38-39.)
003_evans ocr full complaint

Therefore:

- Evans could not have legally obtained the frame,
- Evans could not have legally fixed the frame,
- Evans could not have legally authored the frame,
- And Evans cannot register a still image she neither created nor lawfully pos

### 3. Evans Admits Third-Party Authorship

In addition to admitting the image came from illegally obtained footage, Evans also
her filings that:

- She did not record the hearing,
- She did not create the still image,

This destroys any aut...

Being the subject of a recording is not authorship and does not create copyright owners.

### 4. Additional Misrepresentation: Use of a Third-Party iStock Image

The composite meme Evans submitted also includes:

- A commercial iStock background image
- That neither she nor I licensed,
- And which Evans falsely presents as part of an "original photograph."

A work containing third-party elements cannot be registered as her original creation, and disclose this constitutes **material misrepresentation** under 17 U.S.C. § 411(b).

### 5. Request for § 411(b) Review

Given:

- Evans' admissions that she did not create the image,
- Her admission that the footage was unlawfully obtained,
- Her admission that "someone else" took the still,

1. A § 411(b) material-misrepresentation review
2. Referral to the Register of Copyrights process, and
3. Consideration of the federal court record before registration is issued or enforced

I can supply certified exhibits or sworn statements if needed

Thank you for your time and attention to this matter

Sincerely,

**Danielle Robertson**

(b) The USCO's internal response;

**From:** registrationprogramoffice
**Sent:** Thursday, December 11, 2025 1:12 PM
**To:** 'danimontana2022@gmail.com' <danimontana2022@gmail.com>
**Subject:** RE: Request for Review – Potentially Fraudulent Copyright Application Owned Footage and My Composite Work

We are writing in response to your email, received November 26, 2025, requesting that the Copyright Office intervene in an application for copyright registration filed by Sybrena Evans. Your email asserts that this application contains fraudulent information. We have also taken administrative notice that the work or works submitted with this registration may be at issue in active litigation in the District Court for the Eastern District of Michigan under docket number [...]

[...] further action regarding [...]

As a general rule, the Copyright Office does not invite, and will not entertain, requests to intervene, cancel or in any other way address or application by any party other than the claimant named in the certificate of registration. As an office of public record, the Copyright Office does not conduct interference or adversarial proceedings. Likewise, the Copyright Office will not provide legal opin or advice to applicants, copyright litigants, their attorneys, or the general public on matters such as rights of persons in connection with contracts, infringement disputes, or matters of a similar nature C.F.R. § 201.2(a)(3). If there is a dispute between two or more parties, it is the responsibility of ea party to pursue their claims in an appropriate court.

Additionally, the Copyright Office will not adjudicate adverse or conflicting claims submitted for registration. Each claim is examined to determine whether it complies with statutory and regulator requirements; if it does, it is registered. Even where conflicting claims are received, the Office ma both claims on record if each is acceptable on its own merits. *Compendium (Third)* § 1808.8. It is responsibility of the parties involved in a dispute to pursue their rights in their works. If an applica uses this system to perpetrate fraudulent actives, this is a matter that can only be resolved in an appropriate court of law.

Accordingly, and as stated above, the Office will take no further action regarding your request. W also written to provide the same information, and a copy of this letter to Ms. Evans. This letter is your information only. No reply is necessary.

15

December 11, 2025, letter mailed to Plaintiff from the USCO informing her of the following: "The

U.S. Copyright Office received the enclosed email from Danielle Robertson on November 26,

2025.  They contend that registration **1-14583975161,** for a work, or works titled *"Miss Evans"* is

fraudulent, and enumerates several alleged deficiencies…

(c) The USCO's subsequent formal notification to Plaintiff).



**DECLARATION OF SYBRENA EVANS**

In Support of Plaintiff's Motion for Leave to File Proposed Supplemental Pleading Under Rule 15(d)

I, Sybrena Evans, pursuant to 28 U.S.C. § 1746, declare under penalty of perjury that the following is true and correct:

1. I am the Plaintiff in this action and make this Declaration in support of my Motion for Leave to File a Supplemental Pleading under Fed. R. Civ. P. 15(d).

2. I have reviewed the Motion and the proposed Supplemental Pleading attached as (Exhibit A). To the best of my knowledge and belief, the factual allegations contained therein are true and accurate.

3. I have reviewed the legal authorities cited in the Motion and Proposed Supplemental Pleading, and to the best of my knowledge, information, and belief, they are accurately quoted, paraphrased, and applied.

4. On December 1, 2025, I received the Refusal to Register issued by the U.S. Copyright Office for Copyright Application No. 1-14583975161, the work underlying Count I. A true and properly redacted copy is attached as (Exhibit B).

5. On November 17, 2025, and November 21, 2025, Defendant filed submissions in this action (ECF Nos. 109 and 114) attaching exhibits labeled "Original PPO Zoom Image (April 2024 – Recorded by Non-Party)" and "Cropped Face Extracted From Original (Used in Meme)." (Exhibit C and D).

6. On or about November 26, 2025, Defendant filed a written correspondence to the United States Copyright Office ("USCO") challenging my pending copyright application relating to PPO-derived material.

7. I did not submit that correspondence.

17

8. On December 1, 2025, I contacted the USCO to inquire about the status of my pending copyright application.

9. During that contact, I was informed that an earlier inquiry regarding my application had already occurred that day from a caller identifying as me or acting on my behalf.

10. On or about December 1, 2025, Defendant caused a certified letter addressed to me to be mailed using a Michigan return address.

11. Official United States Postal Service tracking data reflects that the mailing referenced in paragraph 17 was physically accepted at a regional distribution facility in Phoenix, Arizona.

12. The certified mailing referenced above was undeliverable and returned to the sender.

13. If called as a witness, I could and would testify competently to the facts stated in this Declaration.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on **January 14, 2026**, in Northville, Michigan

**Sybrena Evans**

Plaintiff, Pro Se

17710 Lakeview Cr.

Northville, MI 48168

**TABLE OF AUTHORITIES**

**Cases**

- *Fourth Estate Public Benefit Corp. v. Wall-Street.com, LLC*, 586 U.S. 201 (2019)

- *Hooks v. Hooks,* 771 F.2d 935 (6th Cir. 1985)

**Statutes & Rules**

- 17 U.S.C. § 411(a)

- Fed. R. Civ. P. 15(d)

- Michigan Court Rule 8.115(F)(2)

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

SYBRENA EVANS

               Plaintiff

v.

DANIELLE ROBERTSON, et al.

               Defendants.

Case no: 5:24-cv-13435
Hon. Judith E. Levy
Magistrate Judge Elizabeth A. Stafford

Non–Jury Trial

## PLAINTIFF'S PROPOSED SUPPLEMENTAL PLEADING

Pursuant To Fed. R. Civ. P. 15(d)

**EXHIBIT A**

Plaintiff Sybrena Evans, appearing pro se, submits this Proposed Supplemental Pleading against Defendant Danielle Robertson, including her known aliases, and unknown Doe Defendants. Pursuant To Fed. R. Civ. P. 15(d), and E.D. Mich. Local Rule 15.1, "A party who moves to amend a pleading shall attach the proposed amended pleading to the motion. Any amendment to a pleading, whether filed as a matter of course or upon a motion to amend, must, except by leave of court, reproduce the entire pleading as amended, and may not incorporate any prior pleading by reference."

Accordingly, this Proposed Supplemental Pleading reproduces the operative allegations of the original Complaint while integrating new transactions, occurrences, and events that have happened since the date of the original pleading.

1

## NATURE OF THE CASE

1.    This federal action arises from a sustained campaign by Defendant Danielle Robertson to harm Plaintiff Sybrena Evans through copyright infringement, defamation, harassment, privacy violations, and cyberbullying.

2.    Since at least 2022, Defendant has repeatedly violated Plaintiff's rights by unlawfully exploiting copyrighted materials and filing fraudulent copyright claims and complaints, frequently through impersonation or misrepresentation.

3.    Defendant's conduct caused repeated disruptions to Plaintiff's online presence, including the suspension and termination of Plaintiff's YouTube channels, UNWINEWITHTEDDY and RunTellThatToo, resulting in substantial reputational, emotional, professional, and financial harm.

4.    This action further arises from Defendant's unlawful acquisition, possession, alteration, and exploitation of restricted judicial material originating from a closed Personal Protection Order ("PPO") proceeding conducted via Zoom in the Wayne County, Michigan Third Judicial Circuit on April 9, 2024.

5.    The April 9, 2024 PPO hearing was a non-public judicial proceeding that expressly prohibited recording, reproduction, or dissemination of its contents.

6.    Following the hearing, upon information and belief, Defendant used material derived from the sealed proceeding to create and disseminate derivative works, defamatory content, and monetized publications targeting Plaintiff.

7.    Plaintiff brings this action against Defendant Danielle Robertson, also known as Dani Robertson, Dani Montana, Truth Teller Dani, Lori Davis, and Danielle Robertson, LLC, for Defendant's own acts and omissions. The complaint reserves the right to amend to include additional defendants identified as "Jane Does 1-10." These placeholders represent individuals or entities whose identities are unknown.

8. Plaintiff reserves the right, consistent with the Federal Rules of Civil Procedure, to seek leave to amend this pleading to substitute named defendants for currently unidentified Doe individuals, **only if** discovery reveals facts establishing independent liability. No relief is sought against any non-party in this pleading.

9. Plaintiff references non-party actors solely for purposes of factual context, source attribution, and evidentiary completeness, and does not seek relief against any non-party.

10. This lawsuit seeks to hold Defendant accountable for violations of federal and state law, to recover compensatory and statutory damages, and to obtain injunctive relief to prevent further exploitation, harassment, and harm.

## JURISDICTION AND VENUE

11. This Court has subject-matter jurisdiction under 28 U.S.C. § 1331 because this action arises under the Copyright Act, 17 U.S.C. §§ 101 *et seq.*

12. The jurisdictional prerequisite to suit under 17 U.S.C. § 411(a) has been satisfied by the United States Copyright Office's refusal of registration issued on December 1, 2025.

13. This Court also has diversity jurisdiction over this action pursuant to 28 U.S.C. § 1332 because the parties are citizens of different states and the amount in controversy exceeds seventy-five thousand dollars ($75,000), exclusive of interest and costs. Plaintiff Sybrena Evans is a citizen of the State of Michigan, and upon information and belief, Defendant Danielle Robertson is a citizen of a state other than Michigan.

14. Venue is proper in this District under 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claims occurred in this District.

**PARTIES**

15. Plaintiff Sybrena Evans is a citizen of the State of Michigan and resides in Northville, Michigan. Plaintiff uses the email address evansservicecase13435@protonmail.com in connection with this action.

16. Defendant Danielle Robertson is, upon information and belief, a citizen of a state other than Michigan.

17. Upon information and belief, Defendant has previously utilized addresses and registered agent filings outside the State of Michigan, including in Wyoming and California.

18. Upon information and belief, Defendant caused a certified letter addressed to Plaintiff to be mailed from Phoenix, Arizona, bearing a Michigan return address.

19. Defendant has used the email address danimontana2022@gmail.com in connection with the conduct alleged herein and in communications related to this action.

20. Defendant maintains and has operated multiple social media accounts and online personas, including YouTube channels identified as Dani Robertson, Truth Teller Dani, Dani Montana (terminated), Nothing Without Me (formerly Unhinged With Bundy), The Aftershow Café (formerly WhewChile TheGhetto), and Dani Monroe.

21. Defendant has also used accounts on social media platforms including X (formerly Twitter), Facebook, Instagram, Twitch, TikTok, and Stationhead in connection with the conduct alleged herein.

**NON–PARTY**

22. Keva Williams, the non-party Personal Protection Order ("PPO") petitioner in the April 9, 2024 PPO proceeding involving Plaintiff, is referenced herein solely for purposes of factual context, source attribution, and evidentiary completeness.

4

23.   Williams is not named as a defendant in this action. Allegations concerning Williams are pleaded only to establish Defendant Danielle Robertson's conduct, admissions, knowledge, intent, and liability, including concerted or coordinated activity relevant to the claims asserted against Defendant.

## RULE 15(d) SUPPLEMENTAL BASIS AND SCOPE

24.   The allegations set forth herein include events, admissions, and representations that occurred after December 23, 2024, the filing date of the original Complaint.

25.   These post-filing facts are included pursuant to Federal Rule of Civil Procedure 15(d) and are integrated into this Proposed Supplemental Pleading to present a complete, chronological, and self-contained statement of Plaintiff's claims.

26.   References to events occurring prior to December 23, 2024 are included solely to provide necessary context for Defendant's post-complaint admissions, conduct, intent, and course of action.

## COUNTS AFFECTED BY RULE 15(d) SUPPLEMENTATION

27. Counts – 1, 5, and 6, include allegations based on events, admissions, and representations occurring after December 23, 2024, and are presented pursuant to Federal Rule of Civil Procedure 15(d).

28. Counts – 2, 3, and 4, are set forth in this Proposed Supplemental Pleading as originally pleaded and are included without substantive modification to ensure a complete and standalone filing under LR 15.1.

5

## CAUSES OF ACTION

29.   Count 1 –  Copyright Infringement.

30.   Count 2 – Defamation and Privacy Violations.

31.   Count 3 – False Reports and Fraudulent Claims.

32.   Count 4 – Cyberbullying and Harassment.

33.   Count 5 – Impersonation of Others to Commit Fraud.

34.   Count 6 – Conspiracy to Commit Fraud and Cause Emotional Distress.

## COUNT 1 – COPYRIGHT INFRINGEMENT

### Pre–Filing Factual Allegations

35.   Plaintiff Sybrena Evans is the subject of audiovisual testimony and visual images created on April 9, 2024, during a closed and non-public Hearing on Petition for Personal Protection Order ("PPO") conducted via Zoom in the Wayne County, Michigan Third Judicial Circuit, protected under the **Copyright Act of 1976**.

36.   The April 9, 2024 PPO hearing was a sealed, non-public judicial proceeding that expressly prohibited unauthorized recording, reproduction, or dissemination of its contents pursuant to MCR 8.115(F)(2)

### Ownership

37.   Plaintiff owns the copyright in her image, likeness, and audiovisual testimony as fixed in a tangible medium during said hearing, and copyright protection was automatically conferred upon creation under **17 U.S.C. § 102(a)**. Plaintiff retains the exclusive rights enumerated in 17 U.S.C. § 106 **(Exhibit A).**

6

**Factual Allegations: Unlawful Acquisition**

38. On or about April 10, 2024, Defendant Danielle Robertson, without Plaintiff's authorization, obtained access to visual images and testimonial material depicting Plaintiff derived from this hearing.

39. Upon information and belief, Defendant conspired with the non-party PPO petitioner to unlawfully record or access access, the April 9, 2024 closed PPO hearing. The non-party PPO petitioner either directly provided the unlawfully recorded content to Defendant or facilitated real-time access via phone **(Exhibit B)**.

**Factual Allegations: Unauthorized Use and Distribution**

40. On April 10, 2024, the Defendant publicly disseminated portions of the recorded content during multiple live broadcasts on her YouTube channel.

41. More specifically, on April 10, 2024, the Defendant shared details of the confidential PPO Hearing during a live broadcast titled *"Black Tea Sector: Teddy Bundy! The Real Tea April 9th"* **(Exhibit C)**.

42. Upon information and belief, Defendant's live broadcast on April 10, 2024 included non-public information concerning judicial questioning and statements not reflected in any public docket.

43. Defendant altered the background of an image depicting Plaintiff during her closed hearing testimony, without altering Plaintiff's actual likeness or appearance.

44. Upon information and belief, Defendant subsequently published the altered image in multiple monetized YouTube videos while falsely characterizing the alteration as "fair use" and a transformative modification of the original work **(Exhibit D)**.

45. Defendant did not obtain Plaintiff's permission to reproduce, alter, distribute, display, or otherwise exploit the protected material.

7

46. Defendant further created and disseminated explicit "deepfake" pornographic content using Plaintiff's likeness extracted from the "Original PPO Zoom Image," and, upon information and belief, published that content on ICANTICANT.COM and on the YouTube channel previously known as "Unhinged With Bundy," all of which was derived from the same source image **(Exhibits E and F).**

47. Defendant used the copyrighted material to humiliate Plaintiff, harm her reputation, and inflict emotional distress, while profiting through the display of the "TruthTellerDani" Cash App handle and YouTube monetization **(Exhibit G).**

**Post–Filling Factual Allegations: Original PPO Zoom Image Possession and Copyright Infringement**

48. In her own court filings, Defendant Danielle Robertson made express factual admissions concerning her possession and use of material derived from the April 9, 2024 closed Hearing on Petition for Personal Protection Order ("PPO") conducted in the Wayne County, Michigan Third Judicial Circuit, in which Plaintiff Sybrena Evans and the non-party PPO petitioner, Keva Williams, were the participants.

49. Defendant's post-filing admissions appear in her court filings at ECF No. 109, filed November 17, 2025, ECF No. 114, filed November 21, 2025, ECF No. 116, filed December 1, 2025, and ECF No. 120, filed December 10, 2025.

50. On November 17, 2025, Defendant filed (ECF No. 109, PageID.2302–2303), attaching exhibits she labeled *'Exhibit G1 – Original PPO Zoom Image (April 2024 – Recorded by Non-Party)'* and *'Exhibit G2 – Cropped Face Extracted From Original (Used in Meme),'* which identified the source as the April 9, 2024 PPO hearing **(Exhibit S1).**

51. On November 21, 2025, Defendant filed (ECF No.114,PageID.2342–2343), reaffirming her possession of *'Exhibit G1 – Original PPO Zoom Image (April 2024 – Recorded by Non-Party'* and *'Exhibit G2 – Cropped Face Extracted From Original (Used in Meme),'* and

expressly excluding Plaintiff as the individual who recorded or supplied the image **(Exhibit S2).**

52. Defendant admitted that she possessed the "Original PPO Zoom Image (April 2024 – Recorded by Non-Party)."

53. Defendant admitted that the April 9, 2024 Personal Protection Order hearing was a closed, non-public proceeding that could not lawfully be recorded.

54. Defendant affirmatively disclaimed Plaintiff as the source of the PPO-derived image.

55. Defendant further narrowed the source of the image to a "non-party PPO petitioner," thereby excluding all other potential lawful sources.

56. Through her filings, Defendant admitted that an "Original PPO Zoom Image" generated during the April 9, 2024 PPO hearing existed.

57. Defendant knowingly received, possessed, altered, and publicly disseminated PPO-derived material across multiple monetized platforms.

58. Defendant further acknowledged that the source image originated from non-public and restricted court material, establishing her knowledge of its unlawful origin at the time she manipulated and published it.

59. On December 1, 2025, Defendant altered her narrative by retreating from her admission that the meme was derived from the "Original PPO Zoom Image" and instead labeling the source an "alleged PPO still.

60. On December 10, 2025, in ECF No. 120, Defendant materially altered her account, retreating from her admission of an "Original PPO Zoom Image" to labeling it a "Discord-based" discovery of a "PPO still." This shift in narrative supports a reasonable inference that Defendant sought to obscure the chain of custody and distance herself from coordination with the non-party recorder.

9

**Factual Allegations: Manipulation of Original PPO Zoom Image and Copyright Infringement**

61. Defendant admitted that she manipulated the Original PPO Zoom Image by removing another individual's face, isolating Plaintiff's face, and digitally grafting Plaintiff's likeness onto a different body using color-blending and background-replacement techniques.

62. Defendant admitted to a specific technical process including: (a) removing another woman's face from a "red-shirt" photograph; (b) replacing that face with Plaintiff's face extracted from the PPO image; (c) inserting an unlicensed iStock background; and (d) altering lighting, tint, saturation, and color to blend the composite.

63. These admitted acts of cropping, background alteration, and compositing constitute the unauthorized preparation of derivative works under 17 U.S.C. § 106.

**Factual Allegations: Defendant's Conduct and Interference With Pending Copyright Registration**

64. On November 26, 2025, while this litigation was pending, Defendant submitted written correspondence to the United States Copyright Office ("USCO") challenging Plaintiff's pending copyright application as fraudulent (See **Exhibit S3**, comprising: (a) Defendant's two-page email to the USCO; (b) the USCO's internal response; and (c) the USCO's subsequent formal notification to Plaintiff).

65. Upon information and belief, on December 1, 2025, at approximately 10:19 a.m., the USCO logged an inquiry concerning Plaintiff's application that Plaintiff did not initiate.

66. December 1, 2025, Plaintiff contacted the USCO and was informed that an earlier inquiry had already occurred from a caller identifying as Plaintiff, which Plaintiff did not authorize.

10

67. Later that same day, December 1, 2025, Defendant filed ECF No. 116 in this Court asserting Plaintiff's lack of completed copyright registration as a basis for dismissal, while the administrative examination process remained pending.

68. Also on December 1, 2025, Defendant caused a certified mailing addressed to Plaintiff to be deposited with the United States Postal Service at an Arizona distribution facility while listing a Michigan return address (See **Exhibit S4**, comprising the December 1, 2025 USPS Tracking Slip for a Certified Mailing addressed to Plaintiff from Defendant Danielle Robertson, identifying the origin as a "Phoenix, Arizona" USPS facility despite Defendant's use of a Michigan return address).

69. Upon information and belief, Defendant's coordinated actions toward the USCO, this Court, and Plaintiff on December 1, 2025 reflect a deliberate effort to interfere with the copyright registration process while simultaneously advancing arguments based on the absence of registration.

70. Defendant's interference with Plaintiff's pending registration further evidence Defendant's knowledge of infringement, willfulness, and intent to evade liability under the Copyright Act.

**Factual Allegations: Effect of Administrative Determination**

71. On December 1, 2025, The U.S. Copyright Office issued a decision on **Application No. 1-14583975161**, stating that "we must refuse registration..." **(Exhibit S5).**

72. This refusal completed administrative exhaustion under 17 U.S.C. § 411(a), **satisfying the jurisdictional prerequisite** for Plaintiff's infringement claim.

73. The refusal did not adjudicate the legality of Defendant's conduct, did not authorize Defendant's use of Plaintiff's likeness, and did not negate Defendant's admitted acts of possessing, altering, and disseminating unauthorized derivative works created from restricted source material.

**Intent and Resulting Harm**

74. Defendant's conduct caused Plaintiff reputational harm, interference with professional relationships and opportunities, and financial injury, including lost income opportunities and costs incurred in responding to and mitigating Defendant's misconduct.

75. Defendant was unjustly enriched through the creation, publication, and dissemination of infringing and unauthorized derivative works derived from unlawfully obtained source material, including monetized videos, livestreams, and online content that generated advertising revenue, donations, audience engagement, and financial benefit to Defendant.

76. Defendant's actions were willful and knowing, or, at minimum, undertaken with reckless disregard, as evidenced by her admissions, repeated conduct after notice, exploitation of restricted judicial material, and continued dissemination of infringing content despite knowledge, or reason to know, of its unlawful origin.

**Claim for Relief**

77. Defendant infringed Plaintiff's copyright by reproducing, preparing derivative works from, distributing, and publicly displaying protected material without authorization, in violation of 17 U.S.C. §§ 106 and 501.

78. Plaintiff is entitled to enhanced damages, a permanent injunction, and an order for the destruction of all infringing materials pursuant to 17 U.S.C. §§ 502–503.

79. Defendant's judicial admission of possession regarding the source image (ECF Nos. 109, 114, 116 and 120) establishes a direct derivative relationship between a protected Michigan judicial proceeding and the resulting infringing content. This nexus confirms that Defendant's tortious acts were purposefully directed at this Forum, thereby giving rise to both Subject-Matter Jurisdiction and Personal Jurisdiction.

12

80. Defendant's infringement was willful and supports enhanced damages, injunctive relief, and all remedies available under the Copyright Act.

## COUNT 2 – DEFAMATION AND PRIVACY VIOLATIONS

**Factual Allegations: Background**

81. Between April 23, 2022, and December 12, 2024, Defendant Danielle Robertson published multiple defamatory statements and unauthorized personal information about Plaintiff, Sybrena Evans, on social media platforms including YouTube, Instagram, X, Stationhead, and her websites (*MessyDani.Com* and *ICANTICANT.COM*).

82. Defendant's statements falsely portrayed Plaintiff as a criminal, an unfit medical professional, and a person of severely flawed character.

83. These statements were false, defamatory, and made with actual malice, including knowledge of falsity or reckless disregard for the truth, and were maliciously intended to harm Plaintiff's reputation, livelihood, and professional standing.

84. Defendant unlawfully disclosed Plaintiff's private and sensitive personal information, including Plaintiff's home address, Social Security number, and professional license information, without Plaintiff's consent.

85. Defendant's disclosure of Plaintiff's private information exposed Plaintiff to harassment, threats, and heightened risk of harm.

**Factual Allegations**

86. Beginning on or about May 5, 2022, Defendant released a video series titled *"Single Black Female,"* in which Defendant falsely portrayed Plaintiff as a psychopathic serial killer comparable to Ted Bundy and assigned Plaintiff the defamatory nickname "Teddy Bundy."

13

87. Defendant continued to propagate this defamatory 'Serial Stalker' narrative (referencing Ted Bundy) through subsequent videos and publications, and she continues to do so to this day **(Exhibit H)**.

88. On April 10, 2023, defendant published *"Unsolved Michigan Cold Cases"* Episodes One and Two, falsely accusing plaintiff of stalking neighbors, being involved in a homicide, and calling her "A Black Karen" associated with other Michigan crimes **(Exhibit I)**.

89. Defendant falsely accused plaintiff, a licensed physician assistant, of unethical behavior and cyberbullying in a public post, claiming she was under investigation by the Medical Board.

90. Defendant encouraged members of the public to sign a petition intended to damage Plaintiff's professional reputation and to cause defamatory accusations about Plaintiff to appear prominently in internet search results **(Exhibit J)**.

91. On August 21, 2022, Defendant Danielle Robertson, created the defamatory Twitter account *"Public Awareness To Medical Malpractice"* and falsely claimed that public figure Dr. Sybrena Kenan was found guilty of medical malpractice, damaging the plaintiff's professional reputation **(Exhibit K)**.

92. On April 8, 2023, the defendant created and distributed explicit deepfake pornography impersonating the plaintiff through a fabricated "OnlyFans" account with links to a Docdroid.net account file. The image was made using police body camera footage obtained during a fraudulent "Wellness Check" on October 3, 2022 **(Exhibit L)**.

93. Defendant further falsely claimed that Plaintiff consumes alcohol during live broadcasts, engages in inappropriate conduct, and suffers from substance abuse or mental instability, and urged members of the public to file complaints with the Michigan Medical Board and other entities based on these false allegations.

94. Defendant falsely claimed that plaintiff "gets drunk during her live streams," engages in inappropriate behavior, and urges others to file complaints to Michigan Medical Board

14

alleging substance abuse, alcohol consumption, and mental illness. These baseless accusations constitute clear defamation intended to harm the plaintiff's reputation **(Exhibit M).**

## Intent and Resulting Harm

95. Defendant's actions constitute defamation per se, defamation per quod, and invasion of privacy under applicable law.

96. As a direct and proximate result of Defendant's conduct, Plaintiff suffered reputational harm, emotional distress, professional injury, and financial losses.

97. Each instance constitutes a deliberate effort to damage the plaintiff's personal and professional reputation and violate her privacy.

98. Plaintiff submits supporting evidence, including screenshots of video recordings and publicly accessible posts, which are attached as exhibits to this complaint.

## COUNT 3 – FALSE REPORTS AND FRAUDULENT CLAIMS

## Factual Allegations: Background

99. Between October 2022 and September 2024, Defendant Danielle Robertson, also known as Dani Montana, filed multiple false reports against the plaintiff, Sybrena Evans, with law enforcement agencies, regulatory boards, and governmental organizations

100. Defendant's fraudulent claims were submitted to entities such as the Michigan Medical Board, Northville Police Department, and Crime Stoppers.

101. The Defendant's actions were calculated to disrupt the plaintiff's personal life, career, and professional standing.

**Fraudulent Wellness Checks**

102. Defendant's campaign of harassment and defamation is rooted in a documented history of fraudulent conduct.

103. On October 3, 2022, under Incident No. 22-28031, Defendant impersonated a relative of the Plaintiff when placing an emergency call to law enforcement.

104. When asked by the responding desk officer to identify herself during that emergency call, Defendant falsely represented herself as Plaintiff's niece, "Stacy Evans." Defendant utilized this stolen identity to initiate a fraudulent wellness check by making false allegations regarding Plaintiff's mental health **(Exhibit N)**.

105. Responding officers recorded police body cam footage of the plaintiff at her residence, capturing her in a bathrobe. **(Exhibit O)**.

106. Defendant thereafter obtained the police body-camera footage through a Freedom of Information Act ("FOIA") request.

107. Defendant obtained this footage through a Freedom of Information Act (FOIA) request, extracted private images, and published them without consent on her YouTube channel and websites (MessyDani.Com and ICANTICANT.COM).

108. On June 13, 2023, under Incident No. 23-15558, Defendant again impersonated a relative of Plaintiff and initiated a second fraudulent wellness check by falsely alleging mental health concerns **(Exhibit P)**.

109. On June 15, 2023, under Incident No. 23-15718, Defendant falsely impersonated a neighbor to file a fraudulent report alleging animal cruelty and abuse against Plaintiff.

110. Defendant's malicious act resulted in an unwarranted police wellness check at Plaintiff's home.

111. Defendant's behavior including false claims constitute defamation, harassment, and invasion of privacy, causing Plaintiff emotional distress and unfairly labeling her as abusive **(Exhibit Q).**

112. Two additional false reports were made, after Defendant contacted law enforcement to intervene at the home of the Plaintiff's family members. This caused emotional distress and embarrassment to Plaintiff and relatives.

113. Defendant Robertson published police body camera footage on her social media platforms to humiliate and defame the Plaintiff

114. Despite repeated removals by YouTube for privacy violations, Defendant persistently re-uploaded video footage and photographs depicting Plaintiff in a bathrobe **(Exhibit R).**

**Factual Allegations: Fraudulent Regulatory Complaints**

115. On or about September 12, 2023, Defendant submitted a complaint to the Michigan Medical Board  (LARA) falsely alleging professional misconduct by Plaintiff without evidentiary support **(Exhibit S).**

116. Defendant solicited mass support for bogus malpractice claims against Plaintiff and encouraged others to file similar complaints **(Exhibit T).**

117. On April 16, 2024, the Bureau of Professional Licensing informed the plaintiff that no violation of the Public Health Code could be substantiated, and the matter was closed **(Exhibit U).**

118. On April 22, 2024, following the Medical Licensing Board's April 16, 2024 decision to close the case, the non-party PPO Petitioner filed a new complaint with the Medical Licensing Board.

119. Upon information and belief, the complaint submitted to the Michigan Department of Licensing and Regulatory Affairs ("LARA") was filed in retaliation for both (a) the Medical

17

Board's closure of the initial claim and (b) the court's denial of the non-party PPO petitioner's request for a Personal Protection Order against Plaintiff **(Exhibit V).**

120. Upon information and belief, on or about April 22, 2024, Defendant was contacted by the non-party PPO petitioner following the petitioner's receipt of correspondence from LARA concerning her complaint against Plaintiff's medical license..

121. Upon information and belief, immediately after receiving this update from the non-party PPO petitioner regarding LARA's response, Defendant created and broadcast a live video on her "Dani Montana" YouTube channel in which she publicly displayed and discussed the LARA correspondence.

122. Defendant's possession, display, and publication of the LARA letter shortly after its receipt by the non-party PPO petitioner constitutes evidence of coordinated conduct and a shared understanding between Defendant and the non-party PPO petitioner, establishing an illicit chain of information flow linking the protected Michigan judicial proceeding, the petitioner, and Defendant's subsequent infringing and defamatory content

123. Defendant's actions further demonstrate a joint effort to initiate or promote regulatory action against Plaintiff with the aim of revoking Plaintiff's physician assistant license and inflicting professional harm.

124. Defendant's contemporaneous public reactions, including expressions of anger and hostility regarding both the Medical Board's disposition and the court's denial of the PPO request, further support a reasonable inference of conspiratorial retaliation between Defendant and the non-party PPO petitioner **(Exhibit W).**

125. Following the Medical Board's decision to close the initial claim, Defendant escalated her conduct by filing additional unfounded complaints against Plaintiff with the Michigan Medical Board.

126. Defendants additional complaints to LARA were filed on June 11, 2024, and September 16, 2024. These claims were similarly baseless and were intended to revoke Plaintiff's

medical license. Despite the Board's prior findings of no merit, Defendant persisted in her campaign to damage Plaintiff's professional standing **(Exhibit X).**

127. Defendant's complaints jeopardized the plaintiff's medical license and professional standing, causing reputational harm and financial strain.

## Factual Allegations: Exploitation of False Reports

128. Defendant monetized the outcomes of her fraudulent claims by publicizing them on social media platforms, including YouTube and her personal websites.

129. Posts and videos featuring these false reports were used to further defame Plaintiff and to generate attention and income for Defendant at Plaintiff's expense.

## Intent and Resulting Harm

130. Defendant's false reports and fraudulent complaints were knowing, intentional, and malicious. Defendant repeatedly impersonated relatives, neighbors, and concerned third parties, and submitted false information to law enforcement agencies, regulatory boards, and governmental entities with the purpose of triggering official action against Plaintiff without factual basis.

131. Defendant intended, and reasonably knew, that these false reports would subject Plaintiff to unwarranted police intervention, regulatory scrutiny, reputational injury, emotional distress, and disruption of Plaintiff's personal and professional life, including jeopardizing Plaintiff's medical license and standing within her profession.

132. As a direct and proximate result of Defendant's conduct, Plaintiff suffered emotional distress, reputational harm, financial strain, and ongoing fear of further false reports and official interventions, while Defendant exploited these false allegations for public attention, harassment, and personal gain through online publication and monetization.

19

## COUNT 4 – CYBERBULLYING AND HARASSMENT

**Factual Allegations: Background**

133. From July 2022 to November 2024, Defendant Danielle Robertson, also known as Dani Montana, engaged in a deliberate and targeted campaign of cyberbullying and harassment against Plaintiff Sybrena Evans.

134. This campaign included filing nearly 200 fraudulent copyright claims, impersonating others, and inciting her followers to harass Plaintiff online.

135. Defendant's conduct caused significant harm to Plaintiff's reputation, emotional well-being, and livelihood.

**Factual Allegations: Fraudulent Copyright Claims**

136. On or around July 17, August 1, and August 8, 2022, Defendant filed thirty-five (35) fraudulent copyright claims against Plaintiff's YouTube channels UNWINEWITHTEDDY and RunTellThatToo.

137. In filing these claims, Defendant impersonated YouTuber NoseyHeauxLive and falsely claimed ownership of Plaintiff's content **(Exhibit Y).**

138. Between September 6 and December 27, 2023, Defendant submitted more than one hundred (100) additional fraudulent copyright claims.

139. In doing so, Defendant falsely impersonated French author Sybille Titeux de la Croix and others.

140. These claims targeted Plaintiff's channel avatar and videos featuring that image.

141. As a result of Defendant's fraudulent claims, both UNWINEWITHTEDDY and RunTellThatToo YouTube channels were terminated.

142. This disruption caused Plaintiff significant financial loss and emotional distress **(Exhibit Z).**

20

143. On March 2, 2024, Defendant filed a fraudulent copyright claim against Plaintiff Sybrena Evans with the Copyright Claims Board ("CCB") in an effort to create a false "paper trail" **(Exhibit A1).**

144. On October 18, 2024, YouTube reinstated thirteen (13) videos after determining Defendant's copyright claims were invalid. Following their reinstatement, YouTube warned Defendant to provide precise identification of the allegedly copyrighted work **(Exhibit B1).**

145. Upon information and belief, Defendants' failure to respond, resulted in YouTube terminating her account **(Exhibit C1).**

146. Following the termination of her account, Defendant retaliated by engaging in a "porn bombing" campaign against Plaintiff's YouTube channel, RunTellThatToo **(Exhibit D1).**

**Factual Allegations: Encouragement of Online Harassment**

147. On February 16, 2023, Defendant published a "Wanted" poster depicting Plaintiff in a blue bathrobe.

148. Defendant also published a YouTube video titled "Breaking News: Bundy's Divorce and Skate Rink Lawsuit" for the purpose of cyberbullying and harassing Plaintiff.

149. Defendant published Plaintiff's divorce documents on ICANTICANT.COM without authorization.

150. Defendant's conduct violated Plaintiff's privacy and incited her followers to post defamatory content, resulting in a surge of online harassment **(Exhibit E1).**

151. Defendant further published false allegations on social media portraying Plaintiff as harmful to others, thereby escalating harassment against Plaintiff **(Exhibit F1).**

**Factual Allegations: Explicit Threats to Reputation**

152. On February 11, 2023, during a publicly streamed YouTube broadcast, Defendant made statements expressing her intent to intimidate, harass, and damage Plaintiff's personal and

21

professional reputation through sustained online conduct, including cyberbullying and threats **(Exhibit G1).**

### Factual Allegations: Monetization of Harassment

153. From May 2022 through December 2024, Defendant profited from her cyberbullying activities by monetizing defamatory and harassing content through YouTube and other online platforms.

154. Defendant earned income from advertisements and viewer engagement derived from content specifically targeting Plaintiff.

### Intent and Resulting Harm

155. Defendant intended, and reasonably knew, that her actions would result in the termination of Plaintiff's online platforms, reputational injury, emotional distress, and interference with Plaintiff's livelihood.

156. Defendant's conduct escalated after platform enforcement actions and was retaliatory in nature, demonstrating a willful course of harassment rather than isolated or accidental acts.

## COUNT 5 – IMPERSONATION OF OTHERS TO COMMIT FRAUD

### Pre–Filing Factual Allegations: Background

157. Between July 2022 and December 2024, Defendant Danielle Robertson repeatedly impersonated other individuals and entities for the purpose of committing fraud, harassment, and interference with Plaintiff Sybrena Evans's legal rights, professional standing, and online platforms.

22

158. Between March 4, 2023, and November 4, 2023, Defendant Danielle Robertson executed a deliberate campaign of impersonation and deceit to suppress the plaintiff's content and manipulate public perception of her identity.

159. Upon Information and belief, Defendant's actions were designed to mislead platforms, obstruct the plaintiff's work, and inflict reputational harm. The following facts establish a clear pattern of fraudulent conduct.

160. Defendant knowingly misrepresented her identity while submitting complaints, reports, copyright claims, and administrative filings directed at Plaintiff.

161. Defendant impersonated third parties, including content creators, authors, relatives, neighbors, and members of the public, in order to lend false credibility to her claims, evade accountability, and trigger enforcement actions against Plaintiff.

## Factual Allegations: Impersonation in Platform Enforcement and Privacy Complaints

162. On or about March 9, 2023, YouTube notified Plaintiff Sybrena Evans of privacy complaints filed against her content alleging violations based on the use of publicly available photographs.

163. Upon information and belief, those privacy complaints were submitted by Defendant Danielle Robertson while impersonating third parties and falsely asserting personal privacy interests **(Exhibit H1 and Exhibit I1).**

164. On March 12, 2023, YouTube formally denied the privacy complaints, determining that Plaintiff's content did not violate YouTube's privacy policies and would remain on the platform **(Exhibit J1).**

165. On or about March 13, 2023, Defendant later admitted in submissions to YouTube that she had filed a false privacy complaint while impersonating Danielle Elizabeth Allen and knowingly falsified legal documents in connection with that complaint.

166. In that admission, Defendant acknowledged that her intent was to have Plaintiff's content removed and asserted that she was acting to "protect" Danielle Elizabeth Allen, despite having no authority to do so **(Exhibit K1)**.

167. Defendant's admission demonstrates that she deliberately fabricated her identity and misused YouTube's complaint process to manipulate enforcement mechanisms and suppress Plaintiff's content.

168. Defendant's fraudulent privacy complaints purporting to be submitted by Danielle Elizabeth Allen directly contradicted Defendant's own public statements made on March 4, 2023, in a video titled *"Hear Her TV, Mommy Biter Messeged Me! I Guess Jaguar Wright Content Dried Up. The Bird Brain,"* uploaded to her YouTube channel *"For The Basics,"* in which Defendant expressly denied being Danielle Elizabeth Allen **(Exhibit L1)**.

169. Despite the photographs at issue being publicly available and Plaintiff's content constituting fair use, Defendant knowingly exploited YouTube's privacy complaint system through impersonation to advance a fraudulent agenda and cause reputational and professional harm to Plaintiff.

170. Upon information and belief, Defendant's calculated actions demonstrate an intent to deceive, manipulate, and harm the plaintiff through false claims and impersonation.

## Factual Allegations: Impersonation in Copyright Enforcement

171. Defendant filed fraudulent copyright takedown notices while impersonating YouTuber NoseyHeauxLive and falsely claiming ownership of Plaintiff's content.

172. Defendant also impersonated French author Sybille Titeux de la Croix, claiming she was the creator and owner of Plaintiff's YouTube channel avatar. In tandem, Defendant caused hundreds of her followers to mass report false claims against Plaintiff's YouTube channels.

173. These impersonations were material and resulted in automated enforcement actions, including channel strikes, video removals, and the termination of Plaintiff's channels.

24

**Factual Allegations: Impersonation in Administrative and Law Enforcement Reports**

174. Defendant impersonated a  relative claiming to be a "niece" of Plaintiff when initiating fraudulent wellness checks with law enforcement agencies on multiple occasions.

175. Defendant also impersonated a neighbor when filing a false report with law enforcement alleging that Plaintiff "kept her dog locked up" and engaged in other acts of animal cruelty.

176. These impersonations resulted in unnecessary police interventions, invasions of Plaintiff's privacy, and reputational harm.

**Post–Filing Factual Allegations: Defendant's Admissions Regarding Interference With Copyright Registration and Impersonation in Administrative Proceedings**

177. Upon information and belief, Defendant's interference with Plaintiff's pending copyright registration began on November 26, 2025, when Defendant submitted written correspondence to the United States Copyright Office ("USCO") challenging Plaintiff's application during active motion practice in this action (See **Exhibit S3**, comprising: (a) Defendant's two-page email to the USCO; (b) the USCO's internal response; and (c) the USCO's subsequent formal notification to Plaintiff).

178. Defendant's November 26, 2025 correspondence constituted her first known direct intervention into the federal administrative process governing registration of the PPO-derived image..

179. Upon information and belief, on December 1, 2025, during the pendency of this litigation, Defendant contacted the USCO and misrepresented herself as Plaintiff or as acting on Plaintiff's behalf in connection with Plaintiff's pending copyright registration.

180. At approximately 10:19 a.m. on December 1, 2025, while Plaintiff's application remained pending, the USCO logged an inquiry concerning Plaintiff's application that Plaintiff did not initiate.

25

181. Just before noon that same day, Plaintiff contacted the USCO and was informed that an earlier inquiry had occurred from a caller identifying as Plaintiff, which Plaintiff did not authorize.

182. The USCO information specialist characterized the earlier inquiry as involving confusion regarding the identity of the remitter and the status of the application.

183. Later that same day, on December 1, 2025, Defendant filed ECF No.116 an opposition to Plaintiff's motion to stay in this Court asserting the absence of a completed copyright registration as grounds for dismissal, notwithstanding that the administrative review process remained unresolved.

184. Also on December 1, 2025, Defendant caused a certified mailing addressed to Plaintiff to be deposited with the United States Postal Service at an Arizona distribution facility while bearing a Michigan return address (See **Exhibit S4**, comprising the December 1, 2025 USPS Tracking Slip for a Certified Mailing addressed to Plaintiff from Defendant Danielle Robertson, identifying the origin as a "Phoenix, Arizona" USPS facility despite Defendant's use of a Michigan return address).

**Intent and Resulting Harm**

185. The temporal alignment of Defendant's administrative interference, court filings, and jurisdiction-related mailing plausibly supports an inference that Defendant acted to influence or hasten an administrative determination while simultaneously attempting to manipulate jurisdictional facts during the pendency of this litigation.

186. Defendant's acts were knowing and intentional and constitute fraudulent impersonation and abuse of administrative and platform enforcement systems.

26

**COUNT 6 –  CONSPIRACY TO COMMIT FRAUD AND CAUSE EMOTIONAL DISTRESS**

**Pre–Filing Factual Allegations: PPO Hearing Conspiracy Context**

187. Between November 5, 2023, and April 30, 2024, Defendant Danielle Robertson, acting under anonymity, conspired with an individual in a non-party PPO Petitioner, now identified as Keva Williams to file a false Personal Protection Order (PPO) against Plaintiff Sybrena Evans.

188. Defendant's conduct was intended to cause personal and professional harm to Plaintiff by generating a false documentary record to lend credibility to defamatory allegations and undermine Plaintiff before regulatory authorities.

189. The "prologue" to this conspiracy began when Defendant Robertson's online rage toward Plaintiff culminated in a campaign to sabotage Plaintiff's professional license and personal life.

190. On or about October 14, 2023, Defendant created and promoted an online Change.org petition targeting Plaintiff. The Defendant's petition falsely accused Plaintiff of unethical conduct and criminal associations, seeking to damage Plaintiff's professional reputation as a Physician Assistant **(Exhibit M1).**

191. Upon information and belief, Defendant encouraged her online followers to sign a Change.org petition in furtherance of the conduct alleged herein.

192. On November 4, 2023, Defendant published a video titled *"Who Is Danielle Elizabeth Allen! Sybrena's Petition! Teddy Bundy's Obsession! Black Tea Sector Drama,"* amplifying the same defamatory allegations and promoting the Change.org petition **(Exhibit N1).**

193. On February 10, 2023, the defendant posted my late brother's obituary photo on her YouTube channel "For The Basics" aka DaniMontana. In another video, "Step Into The Bad Side" the defendant Danielle Robertson posted my brother's obituary photo. The defendant blamed the plaintiff for the death of her brother, going so far as to suggest the plaintiff

27

murdered him. Defendant's conduct caused Plaintiff severe emotional distress. **(Exhibit O1).**

194. Upon information and belief, Defendant Danielle Robertson entered into an agreement, understanding, or coordinated course of conduct with Keva Williams ("Williams"), the non-party PPO petitioner in connection with the April 9, 2024 PPO proceeding.

195. From at least February 2022 through April 2024, Defendant and Williams, maintained an ongoing relationship across online platforms, including YouTube livestream participation, moderation roles, direct communications, and coordinated public messaging concerning Plaintiff.

196. The aim of the conspiracy was to harass, defame, intimidate, and professionally harm Plaintiff by weaponizing legal proceedings, restricted court material, administrative complaints—including complaints to the Michigan Department of Licensing and Regulatory Affairs ("LARA")—and coordinated online publication to create and amplify a false and damaging narrative, intended to trigger disciplinary action and jeopardize Plaintiff's medical license.

197. At the time of Williams's statements, no PPO hearing had yet occurred, and no court order existed authorizing dissemination of Plaintiff's image, testimony, or personal information.

198. During this same period, Defendant Robertson publicly broadcast allegations that Plaintiff's medical license was under review, using language and themes overlapping with those expressed by Williams.

**Factual Allegations: Pre-Hearing Coordination and Administrative Targeting**

199. On or about February 27, 2024, Keva Williams acted as the Defendant's proxy to file a petition for a Personal Protection Order (PPO) against Plaintiff in the Wayne County Michigan Third Judicial Circuit **(Exhibit P1).**

28

200. Prior to the PPO hearing, Williams served as a moderator on Defendant Robertson's YouTube channels, including *Dani Robertson*, *TruthTellerDani*, *Dani Montana TV*, and *WhewChileTheGhetto*, actively participating in livestreams by managing chats, promoting content, and amplifying narratives targeting Plaintiff.

201. Upon information and belief, the Defendant utilized her anonymity to orchestrate this arrangement, aiming to cause irreparable injury to Plaintiff's professional standing.

202. The ultimate objective of this conspiracy was to obtain a PPO through fraudulent means to submit to the medical board for the removal of Plaintiff's medical license—a goal the Defendant pursued after her own direct attempt had failed.

203. Upon information and belief, the non-party PPO Petitioner's language and accusations closely aligned with the Defendant's rhetoric, strongly indicating that Robertson either authored or heavily influenced its content.

**Factual Allegations: Immediate Week Before PPO Hearing, Escalation of Online Attacks and Targeting Of Plaintiff's Professional Licensing**

204. On or about February 2, 2024, Williams published a YouTube video titled *"Exposed: Licensed Michigan Physician Assistant Doxing! – Protect Yourself Now!!,"* in which she stated, "Make sure this video is … I'm speaking to the medical board," and further stated that she had been communicating with the Michigan Medical Board regarding Plaintiff and intended to clip and transmit Plaintiff's statements to licensing authorities.

205. On or about April 2, 2024, seven days before the hearing, Defendant published parallel content on ICANTICANT.COM referring to Plaintiff as 'Stalker Teddy Bundy Physician Assistant and foreshadowed specific allegations and events later raised during the closed hearing. **(Exhibit Q1).**

29

206. On April 2, 2024, in concert with Defendant, seven days before the hearing, Williams, the non-party PPO Petitioner published a video on her YouTube channel titled – 'Beware Unhinged Michigan Physician Assistant Who Tried to Dox Me and YouTubers.'

207. The following day, April 3, 2024, Defendant Robertson amplified this attack via a livestream on her YouTube channel, "Dani Montana," titled *"Black Tea Sector: The Three Stooges Upcoming Court Hearing April 9th.*

## Factual Allegations: The April 9, 2024 PPO Closed Hearing

208. The April 9, 2024 Personal Protection Order ("PPO") hearing was conducted as a closed, non-public Zoom proceeding with strictly limited access. Participation was restricted to the presiding judge, court staff, and the parties. Plaintiff Sybrena Evans and the non-party PPO petitioner Keva Williams were the only party-participants authorized to attend and receive non-public information from the hearing.

209. The PPO hearing occurred on April 9, 2024 and was conducted as a closed, non-public Zoom proceeding that expressly prohibited recording or dissemination. At the outset of the hearing, Plaintiff and the non-party PPO petitioner were sworn in and reminded of the court's rules prohibiting unauthorized recording, reproduction, or dissemination of the proceedings.

210. Defendant Robertson was not a party to the PPO proceeding and had no authorized access to the hearing or its contents.

## Factual Allegations: Pre–Filing Post–PPO Hearing Conduct and Coordination

211. Within hours of the April 9, 2024 ruling, Defendant Robertson released a detailed livestream broadcast on her Dani Montana YouTube channel describing the hearing's content, judicial statements, and Plaintiff's appearance. The broadcast was published as a livestream titled *"Black Tea Sector: Teddy Bundy! The Real Tea April 9th."*

30

212. On April 10, 2024, During the Live broadcast, Defendant Robertson disclosed non-public judicial statements, described Plaintiff's appearance and demeanor, and recounted factual details not reflected in any public docket.

213. During that same live broadcast, Defendant stated, among other things, "...this person told me that the judge apologized to them at the very end...," and "...once I heard the other person, what was stated, I said, there are certain things that you left out... they will refile... they will continue to gather evidence...." These statements reflect Defendant's receipt of non-public information from a participant in the closed PPO proceeding shortly after the hearing concluded.

214. During the broadcast, Defendant stated, in substance, that "the judge said to her, 'I don't want to hear about Dani Robertson,'" a statement not available from any public source and consistent with information conveyed by a participant in the closed PPO hearing.

215. Upon information and belief, only a participant in the April 9, 2024 PPO hearing could have conveyed such non-public judicial dialogue to Defendant Robertson. The level of detail disclosed reflects receipt of information from a participant in the closed proceeding or other unauthorized access shortly after the hearing concluded.

216. Defendant thereafter used PPO-related materials to generate online engagement, amplify defamatory claims, and further a coordinated campaign of harassment against Plaintiff.

217. Following the hearing, Upon information and belief, Defendant Robertson used the Original PPO Zoom image to create and distribute unauthorized derivative works, including deepfake pornographic content depicting Plaintiff, as part of a coordinated campaign of humiliation, harassment, and exploitation.

218. On April 22, 2024, Defendant Robertson publicly displayed and discussed correspondence authored by Williams concerning the Michigan Department of Licensing and Regulatory Affairs ("LARA"), which, upon information and belief, had been sent to Defendant by Williams.

31

219. On or around April 27, 2024, the defendant fabricated a second false PPO and published it on her website, **ICANTICANT.COM**, presenting it as legitimate to deceive her audience and perpetuate a false narrative. This fraudulent PPO was used to damage the plaintiff's reputation. **(Exhibit R1).**

**Post-Filing Factual Allegations: Defendant's Admissions Concerning Possession of the Original PPO Zoom Image and Coordination With a Non-Party PPO Petitioner**

220. The April 9, 2024 Personal Protection Order ("PPO") hearing was conducted as a closed, non-public Zoom proceeding with strictly limited access. Participation was restricted to the presiding judge, court staff, and the parties. Plaintiff Sybrena Evans and the non-party PPO petitioner Keva Williams were the only party-participants authorized to attend and receive non-public information from the hearing.

221. On November 17, 2025, Defendant Danielle Robertson admitted in court filings that she possessed the "Original PPO Zoom Image," which she expressly described as "Recorded by Non-Party," and affirmatively excluded Plaintiff as the source ECF No. 109 (PageID.2302–2303).

222. Defendant further admitted that the April 9, 2024 Personal Protection Order ("PPO") hearing was a closed, non-public judicial proceeding that could not lawfully be recorded.

223. Defendant admitted that Plaintiff did not record the PPO hearing and was not the source of the Original PPO Zoom Image.

224. By excluding Plaintiff as the source and acknowledging that the hearing could not lawfully be recorded, Defendant's admissions limited the universe of plausible sources to individuals with authorized access to the closed PPO proceeding.

225. Upon information and belief, Defendant's admissions identify the non-party PPO petitioner as the source of the PPO image, rendering Williams the only plausible source.

32

226. In her initial admission on November 17, 2024 (ECF Nos. 109, 114), Defendant filed Exhibit G1, which she explicitly labeled as the *"Original PPO Zoom Image (April 2024 – Recorded by Non-Party)."*

227. In her accompanying briefing (ECF 114), Defendant affirmatively stated that the image was "captured by a non-party" during the April 9, 2024, PPO hearing and expressly excluded Plaintiff as the source.

228. Within these same filings (ECF Nos. 109, 114), Defendant admitted that she received, possessed, cropped, and altered this PPO-derived image to create the derivative and composite works at issue.

229. After the Court ordered the disclosure of her identity ECF No. 118 on December 4, 2025, and Plaintiff identified the jurisdictional nexus between the "Original" recording and the Michigan forum, Defendant shifted her narrative.

230. On December 10, 2025, in ECF No. 120, Defendant suggested for the first time that the material may have been obtained through a "Discord" server or was a "still" found online.

231. Defendant's suggestion was made despite previous detailed admissions regarding her personal extraction and transformation of the *"Original PPO Zoom Image (April 2024 – Recorded by Non-Party)."*

**Factual Allegations: Meeting of the Minds and Coordinated Conduct**

232. Upon information and belief, Defendant Robertson had advance knowledge of the non-public April 9, 2024 PPO proceeding. This is evidenced by contemporaneous statements, publications, and coordinated activity in the days immediately preceding the hearing.

233. Based on the specificity of these disclosures, I state upon information and belief that Defendant maintained advanced "insider" access to the PPO petitioner's strategy and

33

evidence, and collaborated on the legal strategy used against me during the judicial proceeding.

234. This advance knowledge is further supported by Defendant's public references to the impending PPO proceeding and parallel content released by the non-party PPO petitioner on or about April 2, 2024, foreshadowing allegations and events later raised during and after the closed hearing.

235. Keva Williams, the non-party PPO petitioner, served as a moderator for Defendant Robertson's YouTube channels and maintained direct communication with Defendant for the purpose of synchronizing public messaging and administrative targeting.

236. Keva Williams, the non-party PPO petitioner, was a party-participant in the April 9, 2024 PPO proceeding and had authorized access to the Zoom hearing and its contents.

237. Defendant was not a party to the PPO proceeding and was not authorized to participate in or lawfully access the hearing; any access, if it occurred, would have been indirect, unauthorized, or obtained through third parties.

238. Immediately following the April 9, 2024 PPO hearing, upon information and belief, non-public information and restricted material from the closed proceedings were communicated to Defendant Robertson by the non-party PPO petitioner.

239. Defendant thereafter possessed PPO-derived material that was unlawfully recorded from the closed hearing, establishing that any access by Defendant was indirect, unauthorized, and obtained through coordination with a party-participant.

240. Defendant Robertson affirmatively excluded Plaintiff as the source of the PPO-derived material.

241. In her own court submissions, Defendant identified the non-party PPO petitioner as the source of the Original PPO image and related PPO-derived material.

242. Upon information and belief, Plaintiff provides the following factual evidence of a "meeting of the minds" between Defendant Robertson and non-party Keva Williams, which the Defendant admitted to in her filing dated January 7, 2026 (ECF 127).

243. In ECF No. 127, Defendant explicitly identifies Williams as the "principal actor whose conduct is the operational core of this litigation.

244. Defendant further admits that her legal standing and defense are inseparable from Williams' actions, stating that the case cannot be adjudicated without Williams. This constitutes a judicial admission of a "single plan" and a "shared conspiratorial objective" regarding the acquisition of the sealed PPO material.

245. Defendant's admission in ECF No. 114 that she possessed the **"Original"** recording—which she admits was **"captured by a non-party"** (Williams)—proves the hand-off of illicit material.

246. Defendant Robertson has affirmatively excluded Plaintiff as the source of this material and, in her own court submissions, identified the non-party PPO petitioner as the source.

247. By labeling non-party Petitioner (Williams) the "operational core" in (ECF No. 127, PageID.2646), and admitting to the coordinated acquisition of the source material, Defendant has moved from the realm of "plausibility" to "admitted fact." The identity of the co-conspirator and the nature of their coordination is now a matter of record provided by the Defendant herself.

**Factual Allegations: Overt Acts in Furtherance of the Conspiracy**

248. After acquiring PPO-derived material, Defendant knowingly altered, extracted, and repurposed Plaintiff's likeness from the image.Defendant disseminated the altered PPO-derived material through public and monetized platforms, including in content intended to ridicule, harass, and harm Plaintiff.

35

249. Defendant continued to use and disseminate PPO-derived material after learning that it was unlawfully obtained and originated from a restricted judicial proceeding.

250. These acts were undertaken in furtherance of a shared objective to exploit unlawfully obtained material for reputational harm, harassment, and financial gain.

**Intent and Resulting Harm**

251. Defendant Robertson acted with knowledge that her conduct would cause Plaintiff severe emotional distress, reputational damage, professional harm, and financial loss.

252. Defendant's conduct was extreme and outrageous, exceeded all bounds of decency tolerated in a civilized society, and was undertaken with the intent to intimidate, harass, and destabilize Plaintiff.

253. As a direct and proximate result of the conspiratorial conduct alleged herein, Plaintiff suffered emotional distress, embarrassment, reputational injury, professional harm, and financial loss.

254. Defendant Robertson committed independent tortious acts, including the unauthorized acquisition, alteration, publication, and monetization of Plaintiff's protected material, for which she is individually liable notwithstanding the participation of co-conspirators.

255. Taken together, and upon information and belief, these facts demonstrate coordinated action and a **"meeting of the minds"** between Defendant Danielle Robertson and the non-party PPO petitioner, Keva Williams, in furtherance of the conduct alleged herein.

256. As alleged herein, Defendant Robertson's advance knowledge of the non-public PPO proceeding, immediate post-hearing access to restricted material, admitted possession and alteration of that material, and subsequent publication and monetization constitute overt acts undertaken in furtherance of a shared unlawful objective, giving rise to conspiracy liability under this standard.

36

## PRAYER FOR RELIEF

257. WHEREFORE, Plaintiff respectfully requests that the Court enter judgment in her favor and grant the following relief:

## A. Injunctive and Equitable Relief

An order granting a permanent injunction prohibiting Defendant Danielle Robertson, and any persons acting in concert with her, from:

1.  Creating, reproducing, preparing derivative works from, publishing, distributing, displaying, or otherwise disseminating any copyrighted, manipulated, altered, synthetic, or deepfake images or audiovisual content depicting Plaintiff, on YouTube or any other social media platform, website, or digital medium, without Plaintiff's express written permission;

2.  Defaming Plaintiff, invading her privacy, or placing her in a false light, including by publishing or republishing false or misleading statements of fact, disclosing private, confidential, personal, medical, or professional information, or falsely implying criminal conduct, professional misconduct, or mental instability;

3.  Engaging in cyberbullying, harassment, or coordinated online abuse directed at Plaintiff, including repeated or sustained targeting, intimidation, threats, doxxing, impersonation, or encouraging, directing, or facilitating third parties, followers, or proxy accounts to harass, threaten, or attack Plaintiff;

4.  Filing fraudulent complaints, making false reports, or impersonating others in connection with any complaint, report, communication, or proceeding concerning Plaintiff, whether directed to courts, law enforcement, regulatory bodies, employers, online platforms, or third parties; and

5.  Participating in any further conspiratorial, coordinated, or harmful conduct, whether directly or indirectly, alone or in concert with others, directed at Plaintiff.

37

## B. Monetary Relief

Plaintiff seeks monetary damages in the following amounts, subject to proof at trial:

### Count 1 – Copyright Infringement

1. Actual Damages:

   $50,000 for lost income resulting from fraudulent copyright claims that disrupted Plaintiff's YouTube channels, including loss of monetization and viewership.

2. Statutory and/or Alternative Relief:

   Statutory damages or, in the alternative, actual damages and Defendant's profits pursuant to 17 U.S.C. § 504.

3. Punitive Damages:

   $75,000 to deter Defendant and others from engaging in willful and malicious copyright abuse.

### Counts 2 – Defamation and Privacy Violations

1. Actual Damages:

   $100,000 for harm to Plaintiff's personal and professional reputation, emotional distress, and loss of business opportunities.

2. complaints, and related emotional distress.

3. Punitive Damages:

   $150,000 based on Defendant's intentional, malicious, and reckless disregard for Plaintiff's rights and the truth.

38

## Counts 3 – False Reports and Fraudulent Claims

1.  Actual Damages:

    $150,000 for harm to Plaintiff's personal and professional reputation, emotional distress, and loss of business opportunities.

2.  complaints, and related emotional distress.

3.  Punitive Damages:

    $250,000 based on Defendant's intentional, malicious, and reckless disregard for Plaintiff's rights and the truth. Additional Actual Damages (False Reports and Fraudulent Claims): $30,000 for costs incurred defending against fraudulent police reports, regulatory

## Count 4 – Cyberbullying and Harassment

1.  Actual Damages:

    $75,000 for loss of business revenue, emotional distress, and costs incurred to repair Plaintiff's professional reputation.

2.  Punitive Damages:

    $100,000 due to Defendant's prolonged, monetized harassment campaign and malicious intent.

## Count 5 – Impersonation of Others to Commit Fraud

1.  Actual Damages:

    $50,000 for financial losses and reputational harm resulting from Defendant's impersonation and fraudulent conduct.

2.  Punitive Damages:

    $100,000 to punish Defendant's intentional deception and deter future impersonation and fraud.

39

**Count 6 – Conspiracy to Commit Fraud and Cause Emotional Distress**

1. Actual Damages:

   $100,000 for financial losses, reputational injury, and emotional distress caused by Defendant's coordinated misconduct.

2. Punitive Damages:

   $250,000 to hold Defendant accountable for orchestrating and participating in a malicious conspiracy.

**C. Attorney's Fees and Costs**

An award of reasonable attorney's fees, litigation expenses, and costs incurred in connection with this action, including fees recoverable under 17 U.S.C. § 505 and other applicable law.

**D. Additional Relief**

Such other and further legal, equitable, or injunctive relief as the Court deems just and proper.

**Certification and Closing**

Under Federal Rule of Civil Procedure 11, by signing below, I certify to the best of my knowledge, information, and belief that this complaint: (1) is not being presented for an improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation: (2) is supported by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law: (3) the factual contentions have evidentiary support or, if further investigation or discovery; and (4) the complaint otherwise complies with the requirements of Rule 11.

**For Parties Without an Attorney**

agree to provide the Clerk's Office with any changes to my address where case-related papers may be served. I understand that my failure to keep a current address on file with the Clerk's Office may result in the dismissal of my case.

Date of signing: January 14, 2026

Signature of Plaintiff _____

Printed Name of Plaintiff : Sybrena Evans

**DECLARATION OF SYBRENA EVANS**

**IN SUPPORT OF PLAINTIFF'S PROPOSED SUPPLEMENTAL PLEADING**

I, **Sybrena Evans**, being first duly sworn, depose and state as follows:

1.  I am the Plaintiff in the above-captioned action and have personal knowledge of the facts set forth in this affidavit.

2.  On April 9, 2024, I participated in a **non-public Personal Protection Order ("PPO") hearing** conducted via Zoom before the Wayne County, Michigan Third Judicial Circuit Court.

3.  The April 9, 2024 PPO hearing was not open to the public, and the Court expressly prohibited unauthorized recording, reproduction, or dissemination of the proceeding pursuant to **Michigan Court Rule 8.115(F)(2)**.

4.  On April 10, 2024, Defendant Danielle Robertson published a livestream on her YouTube channel, then operating under the name **"Dani Montana,"** titled *"Black Tea Sector: Teddy Bundy The Real Tea April 9th."*

5.  After the livestream was published, I personally viewed and preserved the video content disseminated by Defendant.

6.  In that broadcast, Defendant discussed details of the April 9, 2024 PPO hearing that were not publicly available and were consistent with information disclosed only during the non-public judicial proceedings.

7.  On November 17, 2025, and November 21, 2025, Defendant filed submissions in this action (ECF Nos. 109 and 114) attaching exhibits labeled **"Original PPO Zoom Image (April 2024 – Recorded by Non-Party)"** and **"Cropped Face Extracted From Original (Used in Meme)."**

42

8. In those filings, Defendant expressly stated that the image originated from a non-party and acknowledged that the April 9, 2024 PPO hearing could not lawfully be recorded.

9. I was personally present for the April 9, 2024 PPO hearing and am aware that, apart from the presiding judge, court staff, and my counsel, the only non-judicial participant with access to the proceeding was the PPO petitioner, Keva Williams.

10. Immediately after viewing Defendant's April 10, 2024 livestream discussing the PPO hearing, I notified my attorney, Robert Figa, that Defendant had publicly disclosed information from a non-public judicial proceeding.

11. On or about November 26, 2025, Defendant filed a written correspondence to the United States Copyright Office ("USCO") challenging my pending copyright application relating to PPO-derived material.

12. I did not submit that correspondence.

13. On December 1, 2025, I contacted the USCO to inquire about the status of my pending copyright application.

14. During that contact, I was informed that an earlier inquiry regarding my application had already occurred that day from a caller identifying as me or acting on my behalf.

15. Later on December 1, 2025, Defendant filed ECF No. 116 in this action asserting my lack of a completed copyright registration as grounds for dismissal while the administrative examination process remained pending.

16. On or about December 1, 2025, Defendant caused a certified letter addressed to me to be mailed using a Michigan return address.

17. Official United States Postal Service tracking data reflects that the mailing referenced in paragraph 17 was physically accepted at a regional distribution facility in Phoenix, Arizona.

18. The certified mailing referenced above was undeliverable and returned to the sender.

43

19. I am preserving documentation related to the events described in paragraphs 11 through 19 for potential discovery and evidentiary use.

20. I seek relief in this action based on Defendant Robertson's independent acts, including her alleged extraction of my likeness from PPO-derived material, preparation of altered or derivative images, and dissemination and monetization of that content.

21. I do not require the presence of any non-party to obtain complete relief for Defendant Robertson's alleged conduct.

22. If called as a witness, I could and would testify competently to the facts stated in this affidavit.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on **January 14, 2026**, in Northville, Michigan

**Sybrena Evans**

Plaintiff, Pro Se

17710 Lakeview Cr.

Northville, MI 48168

44

JS 44 (Rev. [illegible])

## CIVIL COVER SHEET

County in which action arose: _____

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

### I. (a) PLAINTIFFS
Sybeena Evans

### DEFENDANTS
Jane Doe, also known as Danielle Robertson, Dani Robertson, Dani Montana Truth Teller Dani, Dani Does, and Danielle Robertson, LLC 2, Jane Does 1-10

**(b)** County of Residence of First Listed Plaintiff   Wayne
*(EXCEPT IN U.S. PLAINTIFF CASES)*

County of Residence of First Listed Defendant _____
*(IN U.S. PLAINTIFF CASES ONLY)*

NOTE:  IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*

Attorneys *(If Known)*

### II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

| | | |
|---|---|---|
| ☐ 1 U.S. Government Plaintiff | ☐ 3 Federal Question *(U.S. Government Not a Party)* | |
| ☐ 2 U.S. Government Defendant | ■ 4 Diversity *(Indicate Citizenship of Parties in Item III)* | |

### III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff and One Box for Defendant)* *(For Diversity Cases Only)*

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ■ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ■ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

### IV. NATURE OF SUIT *(Place an "X" in One Box Only)*
Click here for: Nature of Suit Code Descriptions.

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 422 Appeal 28 USC 158 | ☐ 375 False Claims Act |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 365 Personal Injury - Product Liability | ☐ 690 Other | ☐ 423 Withdrawal 28 USC 157 | ☐ 376 Qui Tam (31 USC 3729(a)) |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 367 Health Care / Pharmaceutical Personal Injury Product Liability | | **PROPERTY RIGHTS** | ☐ 400 State Reapportionment |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | | | ☐ 820 Copyrights | ☐ 410 Antitrust |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability | ☐ 368 Asbestos Personal Injury Product Liability | | ☐ 830 Patent | ☐ 430 Banks and Banking |
| ☐ 151 Medicare Act | ☐ 340 Marine | | | ☐ 835 Patent - Abbreviated New Drug Application | ☐ 450 Commerce |
| ☐ 152 Recovery of Defaulted Student Loans (Excludes Veterans) | ☐ 345 Marine Product Liability | **PERSONAL PROPERTY** | **LABOR** | ☐ 840 Trademark | ☐ 460 Deportation |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 370 Other Fraud | ☐ 710 Fair Labor Standards Act | ☐ 880 Defend Trade Secrets Act of 2016 | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle Product Liability | ☐ 371 Truth in Lending | ☐ 720 Labor/Management Relations | | ☐ 480 Consumer Credit (15 USC 1681 or 1692) |
| ☐ 190 Other Contract | ☐ 360 Other Personal Injury | ☐ 380 Other Personal Property Damage | ☐ 740 Railway Labor Act | **SOCIAL SECURITY** | ☐ 485 Telephone Consumer Protection Act |
| ☐ 195 Contract Product Liability | ☐ 362 Personal Injury - Medical Malpractice | ☐ 385 Property Damage Product Liability | ☐ 751 Family and Medical Leave Act | ☐ 861 HIA (1395ff) | ☐ 490 Cable/Sat TV |
| ☐ 196 Franchise | | | ☐ 790 Other Labor Litigation | ☐ 862 Black Lung (923) | ☐ 850 Securities/Commodities/Exchange |
| | | | ☐ 791 Employee Retirement Income Security Act | ☐ 863 DIWC/DIWW (405(g)) | ☐ 890 Other Statutory Actions |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | | ☐ 864 SSID Title XVI | ☐ 891 Agricultural Acts |
| ☐ 210 Land Condemnation | ☐ 440 Other Civil Rights | **Habeas Corpus:** | | ☐ 865 RSI (405(g)) | ☐ 893 Environmental Matters |
| ☐ 220 Foreclosure | ☐ 441 Voting | ☐ 463 Alien Detainee | | | ☐ 895 Freedom of Information Act |
| ☐ 230 Rent Lease & Ejectment | ☐ 442 Employment | ☐ 510 Motions to Vacate Sentence | | **FEDERAL TAX SUITS** | ☐ 896 Arbitration |
| ☐ 240 Torts to Land | ☐ 443 Housing/ Accommodations | ☐ 530 General | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 899 Administrative Procedure Act/Review or Appeal of Agency Decision |
| ☐ 245 Tort Product Liability | ☐ 445 Amer. w/Disabilities - Employment | ☐ 535 Death Penalty | **IMMIGRATION** | ☐ 871 IRS—Third Party 26 USC 7609 | |
| ☐ 290 All Other Real Property | ☐ 446 Amer. w/Disabilities - Other | **Other:** | ☐ 462 Naturalization Application | | ☐ 950 Constitutionality of State Statutes |
| | ☐ 448 Education | ☐ 540 Mandamus & Other | ☐ 465 Other Immigration Actions | | |
| | | ☐ 550 Civil Rights | | | |
| | | ☐ 555 Prison Condition | | | |
| | | ☐ 560 Civil Detainee - Conditions of Confinement | | | |

### V. ORIGIN *(Place an "X" in One Box Only)*

| | | | | | | |
|---|---|---|---|---|---|---|
| ☐ 1 Original Proceeding | ☐ 2 Removed from State Court | ☐ 3 Remanded from Appellate Court | ☐ 4 Reinstated or Reopened | ☐ 5 Transferred from Another District *(specify)* | ☐ 6 Multidistrict Litigation - Transfer | ☐ 8 Multidistrict Litigation - Direct File |

### VI. CAUSE OF ACTION
Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
17 U.S.C. A 102 17 U.S.C. A 501 & 504, and 17 U.S.C. 505

Brief description of cause:
Under the 17b Act, section 102 say that copyright protection extends to original works that are fixed in a tangible medium of expression

### VII. REQUESTED IN COMPLAINT:
☐ CHECK IF THIS IS A CLASS ACTION UNDER RULE 23 F.R.Cv.P.

DEMAND $

CHECK YES only if demanded in complaint:
JURY DEMAND   ☐ Yes   ■ No

### VIII. RELATED CASE(S) IF ANY
*(See instructions):*   JUDGE _____   DOCKET NUMBER _____

DATE
January 14, 2026

SIGNATURE OF ATTORNEY OF RECORD
[signature]

FOR OFFICE USE ONLY

45

## PURSUANT TO LOCAL RULE 83.11

1.          Is this a case that has been previously dismissed?          ☐ Yes
                                                                        ☑ No

If yes, give the following information:

Court: _____

Case No . _____

Judge: _____


2          Other than stated above, are there any pending or previously
           discontinued or dismissed companion cases in this or any other     ☐ Yes
           court, including state court? (Companion cases are matters in which ☑ No
           it appears substantially similar evidence will be offered or the same
           or related parties are present and the cases arise out of the same
           transaction or occurrence.)

If yes, give the following information:

Court: _____

Case No : _____

Judge: _____


Notes :
_____

46

# EXHIBITS

**EXHIBIT LIST**

This Exhibit List identifies the evidence supporting the factual allegations and claims set forth in this Proposed Supplemental Pleading. These exhibits include those originally attached to the Plaintiff's Complaint filed on December 23, 2024, as well as newly supplemental exhibits designated as Exhibits S1–S5.

Count 1 – Copyright Infringement

Exhibits A–G, S1, S2, S3, S4, S5

Count 2 – Defamation and Privacy Violations

Exhibits H–M

Count 3 – False Reports and Fraudulent Claims

Exhibits N–X

Count 4 – Cyberbullying and Harassment

Exhibits Y–Z, A1, B1, C1, D1, E1, F1, G1

Count 5 – Impersonation of Others to Commit Fraud

Exhibits H1, I1, J1, K1, L1,S3, S4

Count 6 – Conspiracy to Commit Fraud and Cause Emotional Distress

Exhibits M1, N1, O1, P1, Q1, R1

48

**Exhibit A: Copyright Infringement**

*"These materials are protected as personal works under the Copyright Act of 1976, 17 U.S.C.*

*§§ 101 et seq."*

## Copyright Infringement Notification Confirmation

Thank you for your submission. It is under review to ensure it is valid and includes all required elements. We will reply to this email when we've taken action on your request. You can also check on the status of your takedown request in the Removal requests tab which is found in the Copyright section of your channel.

Here is the information you filled in.

- Copyright Owner Name (Company Name if applicable) Sybrena Kenan and Associates Inc dba UNWINEWITHTEDDY
- Your Full Legal Name (Aliases usernames or initials not accepted) Sybrena Kenan (Evans)
- Your Title or Job Position (What is your authority to make this complaint?) President
- Address
    - 17710 Lakeview Cr
    - Northville MI 48168
    - US
- Username UNWINEWITHTEDDY
- Email Address unwinewithteddy@gmail.com
- Phone (248) 362 1300

- URL of allegedly infringing video to be removed https://www.youtube.com/watch?v=7Jgbg5Ju
- Describe the work allegedly infringed Other
    - Title of copyrighted work Hearing on Petition for Personal Protection Order
    - Type of copyrighted work Video Image
    - Additional information I submit a DMCA takedown request for an infringing YouTube video featuring copyrighted material from my closed PPO hearing (Case No 24-████████ violating law and court orders Timestamps upon req
    - Where does the content appear? Entire video

49

- Country where copyright applies US
- I state UNDER PENALTY OF PERJURY that
    - I am the owner or an agent authorized to act on behalf of the owner of an exclusive right that is allegedly infringed
    - I have a good faith belief that the use of the material in the manner complained of is not authorized by the copyright owner its agent or the law and
    - This notification is accurate
    - I acknowledge that under Section 512(f) of the DMCA any person who knowingly materially misrepresents that material or activity is infringing may be subject to liability for damages
    - I understand that abuse of this tool will result in termination of my YouTube channel
- Authorized Signature Sybrena Kenan (Evans)

- The YouTube Team

Help Center • Email Options

You received this email to provide information and updates around your YouTube channel or account

 YouTube

© 2021 Google LLC d b a YouTube 901 Cherry Ave San Bruno CA 94066

*Plaintiff's takedown request response*



Teddy Bear

Hi YouTube Copyright

The infringed content is a **photo** titled "Miss Evans" created and authored on April 5, 2024. This photograph features a Black woman wearing wire-framed glasses with a distinctive appearance. The infringing channel has copied and published this photograph on their YouTube channel without my authorization. The copyrighted **visual artwork** appears at the following **timestamps** ...

The infringing channel has **violated copyright law** by using my photograph for commercial purposes, likely profiting from this unauthorized use. This misuse does not meet the criteria for fair use under copyright law, as the photograph is not being used for non-profit or educational purposes. Instead, its unauthorized use misleads viewers by falsely associating the content with me, causing confusion and **harm to my brand**. This infringement disrupts the legitimate use of my photo and damages my reputation. I respectfully request the immediate removal of the infringing content.

Sincerely,

Sybrena Kenan (Evans)

50



Hi ,

Thank you for your response. We've reviewed it and provided updates below.

## Request resolved

The video(s) listed below have already been removed. Because the content is unavailable, we are unable to take action on them.

**Videos in question:**

https://www.youtube.com/watch?v=UX7Qgbq0Gu8

We use a combination of automated systems and human reviews to process removal requests.

51

### Defendant's Counter Notification Response

- http www youtube com watch?v=UX7Qgbq0Gu8

Display name of uploader  DANI MONTANA

The alleged infringing content is fully protected under Fair Use as defined by U S  copyright law (17 U S C  § 107) I  Dani Montana  am the creator and owner of the content in question  Any clips used  if applicable  were not taken in their entirety and required significant creative input to produce  These clips were utilized for educational purposes  commentary  and criticism  all of which fall under the Fair Use exception  Fair Use Defense Transformative Use. The content is not a replication of the original but has been extensively transformed with commentary  critique and original elements that provide new meaning and purpose  This transformative nature is fundamental to Fair Use protections  Limited Use  Only short segments of the original material were used  if any  and these were significantly edited  ensuring that the "heart" of the work was not taken or exploited  Purpose and Nature  The material was used to educate  critique  and discuss  which are core purposes protected by Fair Use  Market Effect  The content does not substitute or harm the market for the original material  Instead  it provides additional commentary  enhancing understanding and discussion  Copyright Ownership If a photograph is at issue  copyright ownership belongs to the photographer  not the subject  unless explicitly transferred  This is a well-established principle in copyright law  Prepared to Defend The video is a creative work  full of original content  extensive commentary  and transformative purpose  I am prepared to present evidence of its originality and transformative nature in court  I can provide documentation of my editing process  the limited use of any third-party material  and the educational and critical intent behind the work  This case falls squarely within Fair Use protections  and I am confident in defending this position

I swear  under penalty of perjury  that I have a good faith belief the material was removed due to a mistake or misidentification of the material to be removed or disabled

I consent to the jurisdiction of the Federal District Court for the district in which my address is located  or if my address is outside of the United States  the judicial district in which YouTube is located  and will accept service of process from the claimant

Danielle Robertson

Danielle Robertson
8 The Green STE A
Dover  Delaware 19907
United States

Danimontana2022@gmail com

(860) 864-0028



## Copyright Infringement Notification Confirmation

Thanks for contacting the YouTube Copyright compliance team

If you believe that your copyrighted content is being used without authorization you may submit a copyright takedown notice through our webform You can find the requirements for copyright takedown requests and info about our copyright policy in our Copyright Center Please make sure that you ve given us all of the required info so we can process your request If you opt to prevent reuploads of removed videos your email address copyright owner name and description of your allegedly infringed work may be shared with the uploader if their videos are prevented from uploading

If you have concerns about harassment your privacy safety or other abuse issues learn more about how to stay safe on YouTube Or you may submit a complaint regarding other legal issues including trademark and defamation

We detected videos from your email and have started processing your request If we missed any videos from your email please file a new request If your email has many video URLs you may receive follow up responses

Here is the list of videos we detected from your email

- https www youtube com watch?v=thjqgNJ_zf8

- The YouTube Team

Help Center • Email Options

You received this email to provide information and updates around your YouTube channel or account



© 2021 Google LLC d b a YouTube 901 Cherry Ave San Bruno CA 94066

53

*Plaintiff's takedown request response*



 YouTube

Hi ,

Thank you for your response. We've reviewed it and provided updates below.

# Request resolved

The content listed below has been removed.

Videos in question:

https://www.youtube.com/watch?v=thjqgNJ_zf8

We use a combination of automated systems and human reviews to process removal requests.

•••

54

### *Defendant's Counter Notification Response*

- http www youtube com watch?v=thjqgNJ_zf8

Display name of uploader DANI MONTANA

The alleged infringing content is fully protected under Fair Use as defined by U.S copyright law (17 U.S.C § 107) I. Dani Montana am the creator and owner of the content in question Any clips used. if applicable. were not taken in their entirety and required significant creative input to produce These clips were utilized for educational purposes. commentary and criticism. all of which fall under the Fair Use exception Fair Use Defense Transformative Use: The content is not a replication of the original but has been extensively transformed with commentary. critique and original elements that provide new meaning and purpose This transformative nature is fundamental to Fair Use protections Limited Use: Only short segments of the original material were used. if any and these were significantly edited ensuring that the "heart" of the work was not taken or exploited Purpose and Nature The material was used to educate. critique and discuss which are core purposes protected by Fair Use Market Effect: The content does not substitute or harm the market for the original material Instead. it provides additional commentary. enhancing understanding and discussion Copyright Ownership If a photograph is at issue. copyright ownership belongs to the photographer not the subject. unless explicitly transferred This is a well-established principle in copyright law Prepared to Defend The video is a creative work. full of original content. extensive commentary. and transformative purpose I am prepared to present evidence of its originality and transformative nature in court I can provide documentation of my editing process the limited use of any third-party material and the educational and critical intent behind the work This case falls squarely within Fair Use protections and I am confident in defending this position.

I swear under penalty of perjury. that I have a good faith belief the material was removed due to a mistake or misidentification of the material to be removed or disabled.

I consent to the jurisdiction of the Federal District Court for the district in which my address is located. or if my address is outside of the United States. the judicial district in which YouTube is located and will accept service of process from the claimant

Danielle Robertson

Danielle Robertson
8 The Green STE A
Dover. Delaware 19901
United States

Danimontana2022@gmail.com

(860) 864-0027

55



## Copyright Infringement Notification Confirmation

Thanks for contacting the YouTube Copyright compliance team

If you believe that your copyrighted content is being used without authorization  you may submit a copyright takedown notice through our webform  You can find the requirements for copyright takedown requests  and info about our copyright policy  in our Copyright Center  Please make sure that you ve given us all of the required info so we can process your request  If you opt to prevent reuploads of removed videos  your email address  copyright owner name  and description of your allegedly infringed work may be shared with the uploader if their videos are prevented from uploading

If you have concerns about harassment  your privacy  safety  or other abuse issues  learn more about how to stay safe on YouTube  Or  you may submit a complaint regarding other legal issues  including trademark and defamation.

We detected videos from your email and have started processing your request  If we missed any videos from your email  please file a new request  If your email has many video URLs  you may receive follow up responses.

Here is the list of videos we detected from your email

- https   www youtube com watch?v=uicvxu6Uyzg

- The YouTube Team

Help Center • Email Options

You received this email to provide information and updates around your YouTube channel or account



© 2021 Google LLC d b a YouTube  901 Cherry Ave  San Bruno  CA 94066

*Plaintiff's takedown request response*





Hi ,

Thank you for your response. We've reviewed it and provided updates below.

## Request resolved

The content listed below has been removed.

**Videos in question:**

https://www.youtube.com/watch?v=uicvxu6Uyzg

We use a combination of automated systems and human reviews to process removal requests.

•••

Help Center · Email Options

You received this email to provide information and updates around your YouTube channel or account



•••

57

### Defendant's Counter Notification Response

- http  www youtube com watch?v=uicvxu6Uyzg

Display name of uploader  DANI MONTANA

The alleged infringing content is fully protected under Fair Use as defined by U S  copyright law (17 U S C  § 107)  I  Dani Montana  am the creator and owner of the content in question  Any clips used. if applicable. were not taken in their entirety and required significant creative input to produce  These clips were utilized for educational purposes  commentary  and criticism. all of which fall under the Fair Use exception  Fair Use Defense Transformative Use. The content is not a replication of the original but has been extensively transformed with commentary  critique and original elements that provide new meaning and purpose  This transformative nature is fundamental to Fair Use protections. Limited Use  Only short segments of the original material were used  if any  and these were significantly edited  ensuring that the "heart" of the work was not taken or exploited  Purpose and Nature  The material was used to educate  critique  and discuss  which are core purposes protected by Fair Use. Market Effect  The content does not substitute or harm the market for the original material  Instead. it provides additional commentary. enhancing understanding and discussion  Copyright Ownership. If a photograph is at issue  copyright ownership belongs to the photographer  not the subject  unless explicitly transferred  This is a well-established principle in copyright law  Prepared to Defend The video is a creative work. full of original content  extensive commentary. and transformative purpose  I am prepared to present evidence of its originality and transformative nature in court  I can provide documentation of my editing process  the limited use of any third-party material  and the educational and critical intent behind the work  This case falls squarely within Fair Use protections  and I am confident in defending this position

I swear  under penalty of perjury  that I have a good faith belief the material was removed due to a mistake or misidentification of the material to be removed or disabled.

I consent to the jurisdiction of the Federal District Court for the district in which my address is located. or if my address is outside of the United States  the judicial district in which YouTube is located. and will accept service of process from the claimant.

Danielle Robertson

Danielle Robertson
8 The Green STE A
Dover  Delaware 19901
United States

DaniMontana2022@gmail com

58



## Copyright Infringement Notification Confirmation

Thanks for contacting the YouTube Copyright compliance team

If you believe that your copyrighted content is being used without authorization, you may submit a copyright takedown notice through our webform. You can find the requirements for copyright takedown requests, and info about our copyright policy, in our Copyright Center. Please make sure that you've given us all of the required info so we can process your request. If you opt to prevent reuploads of removed videos, your email address, copyright owner name, and description of your allegedly infringed work may be shared with the uploader if their videos are prevented from uploading.

If you have concerns about harassment, your privacy, safety, or other abuse issues, learn more about how to stay safe on YouTube. Or, you may submit a complaint regarding other legal issues, including trademark and defamation.

We detected videos from your email and have started processing your request. If we missed any videos from your email, please file a new request. If your email has many video URLs, you may receive follow up responses

Here is the list of videos we detected from your email

- https://www.youtube.com/watch?v=AjCZaPkECDY

- The YouTube Team

Help Center • Email Options

You received this email to provide information and updates around your YouTube channel or account



59

*Plaintiff's takedown request response*





Hi ,

Thank you for your response. We've reviewed it and provided updates below.

## Request resolved

The content listed below has been removed.

**Videos in question:**

https://www.youtube.com/watch?v=AjCZaPkEODY

We use a combination of <u>automated systems and human reviews</u> to process removal requests.

...

60

### *Defendant's Counter Notification Response*

- http www youtube com watch?v=AjCZaPkEODY

Display name of uploader DANI MONTANA

The alleged infringing content is fully protected under Fair Use as defined by U S copyright law (17 U S C § 107) I Dani Montana am the creator and owner of the content in question Any clips used if applicable were not taken in their entirety and required significant creative input to produce These clips were utilized for educational purposes commentary and criticism all of which fall under the Fair Use exception Fair Use Defense Transformative Use The content is not a replication of the original but has been extensively transformed with commentary critique and original elements that provide new meaning and purpose This transformative nature is fundamental to Fair Use protections Limited Use Only short segments of the original material were used if any and these were significantly edited ensuring that the "heart" of the work was not taken or exploited Purpose and Nature The material was used to educate critique and discuss which are core purposes protected by Fair Use Market Effect The content does not substitute or harm the market for the original material Instead it provides additional commentary enhancing understanding and discussion Copyright Ownership If a photograph is at issue copyright ownership belongs to the photographer not the subject unless explicitly transferred This is a well-established principle in copyright law Prepared to Defend The video is a creative work full of original content extensive commentary and transformative purpose I am prepared to present evidence of its originality and transformative nature in court I can provide documentation of my editing process the limited use of any third-party material and the educational and critical intent behind the work This case falls squarely within Fair Use protections and I am confident in defending this position

I swear under penalty of perjury that I have a good faith belief the material was removed due to a mistake or misidentification of the material to be removed or disabled

I consent to the jurisdiction of the Federal District Court for the district in which my address is located or if my address is outside of the United States the judicial district in which YouTube is located and will accept service of process from the claimant

Danielle Robertson

Danielle Robertson
8 The Green STE A
Bend Oregon 19901
United States

danimontana2022@gmail com

(860) 864-0028

61

**Exhibit B: Notice of Hearing on Petition for Personal Protection Order – Electronic**

**Hearing Information** *"It is unlawful to record any Court Proceeding."*



62

## ELECTRONIC HEARING INFORMATION

Dear Litigant/Counsel of Record,

The **Family Division Court** is conducting all court proceedings remotely by Zoom video except as otherwise ordered by the Judge or Referee. You are receiving this communication due to your upcoming hearing as stated on the previous page.

| | |
|---|---|
| **Case NO:** | 24- |
| **Judge:** | **Docket Judge PPO** |
| **Hearing Type:** | **PPO PETITION** |
| **Date:** | **4/9/2024** |
| **Time:** | **10:30 AM** |

**ZOOM HEARING PROCEDURE:**

1. <u>Join the Zoom Hearing.</u> All parties should do the following to join your hearing at the time of the call.

    Go to www.3rdcc.org/zoom or you can find the link under "Essential Links"
    Click on "Family Division Domestic"
    Click "Join Meeting" next to **YOUR** corresponding Judge's Name

### DOWNLOAD THE ZOOM APP FROM GOOGLE PLAY OR THE APP STORE.

    IF YOU ARE UNABLE TO CONNECT TO THE MEETING OR REQUIRE AN INTERPRETER, PLEASE CONTACT YOUR JUDGES COURTROOM DIRECTLY AT                    THE COURT'S GENERAL EMAIL ADDRESS IS   PPO@3rdcc.org

2. Enter your name and case number for "Your Name" For example "John Doe 20-123456 DO"

3. <u>Waiting Room.</u> You will be immediately placed into a waiting room into your Assigned Judge's "Personal Meeting Room". *Do not hang up or leave the meeting.*

4. You will be brought "into" the virtual hearing at or around the designated time.

5. As this is a Court proceeding, professional decorum is expected on ALL Zoom hearings including, but not limited to, appropriate dress, background view, and NO driving, smoking, eating, drinking, or chewing gum during the proceeding. Please limit all background noise, distractions, and third party interactions. No minor children are to hear or oversee your Zoom hearing at any time. There is to be no recording of these hearings, it is unlawful to record any Court proceeding.

6. Once you are done with the virtual hearing, click "**Leave Meeting**"

**For information on all domestic filings and Personal Protection Order filings, you can visit the Court's website at** http://www.3rdcc.org/divisions/family-domestic#/list **for detailed instructions under the following links: "Family Domestic/FOC Filing Instructions" and "Personal Protection Order Filing Instructions**



**Exhibit C: April 11, 2024 – Defendant's Live Broadcast Sharing Confidential PPO Hearing Details**

*Dani Montana YouTube "Black Tea Sector: Teddy Bundy! The Real Tea April 9."*



**Exhibit D: Copyright Infringement – Unauthorized Use and Distribution** *"The Defendant Danielle Robertson aka Dani Montana misappropriated the Plaintiff Sybrena Evans image, unlawfully obtained from a PPO hearing, removed the background without altering the likeness, and published the untransformed work in a monetized YouTube video—undermining claims of fair use."*



65

**Exhibit E: Copyright Infringement – Unauthorized Use and Distribution**          *On June 23, 2024 The Defendant Danielle Robertson published Deepfake pornography she created using plaintiff's image to her website, (ICANTICANT.COM).*



**Exhibit F: Copyright Infringement – Unauthorized Use and Distribution**

*On June 23, 2024 The Defendant Danielle Robertson published Deepfake pornography she created using the plaintiff's image to her YouTube channel "Unhinged With Bundy."*



66

**Defamation and Privacy Violations**

*On May 28, 2024, YouTube removed the defendant's video, which contained unlawfully obtained copyrighted photos from the April 9, 2024, PPO hearing, citing violations of its Terms of Service.*



*Evidence showing the defendant's video was removed for violating YouTube's Terms Of Service.*

**Exhibit G: Copyright Infringement – Unauthorized Use and Distribution**

*The defendant used the copyrighted material to humiliate the plaintiff and damage her reputation.*



*The defendant used the copyrighted material to humiliate the plaintiff and damage her reputation.*



*The defendant used the copyrighted material to humiliate the plaintiff and*

*damage her reputation after posting this photo to her website (ICANTICANT.COM).*



**Exhibit H: Defamation and Privacy Violations**

"Single Black Female" Series *Beginning May 5, 2022, the defendant falsely portrayed the Plaintiff as a psychopathic serial killer, using the defamatory nickname "Teddy Bundy." This narrative continues to this day.*

 



70

**Exhibit I: Defamation and Privacy Violations**                                        "Unsolved

Michigan Cold Cases" *On April 10, 2023, the defendant falsely accused the plaintiff of stalking*

*neighbors, involvement in a homicide, and referred to her as "A Black Karen" linked to other*

*Michigan crimes.*





71

**Exhibit J: Defamation and Privacy Violations**

*Defendant falsely accused plaintiff, a licensed physician assistant, of unethical behavior and cyberbullying, claiming she was under investigation by the Medical Board. The defendant promoted a petition intended to harm the plaintiff's professional reputation and ensure it appeared in search results.*





72

ntps   www.youtube.com/watch?v=chowhwah ZA

Here is a screen of her community wall, with instructions to report you. Step by step.



**Exhibit K: Defamation and Privacy Violations**          *On August*

*21, 2022, defendant created the defamatory Twitter account "Public Awareness To Medical*

*Malpractice" and falsely claimed that public figure Dr. Sybrena Kenan was found guilty of*

*medical malpractice, damaging plaintiff's professional reputation.*



73

**Exhibit L: Defamation and Privacy Violations**                    *On*

*April 8, 2023, defendant created and distributed explicit deepfake pornography impersonating*

*plaintiff through a fabricated "OnlyFans" account with links to a Docdroid.net file. The image was*

*made using police body camera footage obtained during a fraudulent "Wellness Check" on*

*October 3, 2022.*





*The defendant created "OnlyFans" Impersonation page of plaintiff*



74

**Exhibit M: Defamation and Privacy Violations**

*Defendant falsely claimed that plaintiff "gets drunk during her live streams," engages in*

*inappropriate behavior, and urged others to file complaints with the Michigan Medical Board*

*alleging substance abuse, alcohol consumption, and mental illness.*



**Exhibit N: False Reports and Fraudulent Claims**                                            *On*

*October 3, 2022 (#22-28031), the defendant impersonated a relative of the plaintiff and initiated*

*a fraudulent wellness check, falsely alleging mental health concerns.*



**Exhibit O: False Reports and Fraudulent Claims**

*Responding officers recorded police body camera footage of the plaintiff at her residence, capturing her in a bathrobe, following a fraudulent wellness check initiated by the defendant on October 3, 2022 (#22-28031).*



**Exhibit P: False Reports and Fraudulent Claims**

*The defendant impersonates another relative of the plaintiff and initiates a second fraudulent wellness check, falsely alleging mental health concerns. June 13, 2023 (#23 -15558)*



76

**Exhibit Q: False Reports and Fraudulent Claims** *On June 15, 2023 (#23-15718), the defendant falsely impersonated a neighbor to file a fraudulent report alleging animal cruelty and abuse against the plaintiff, leading to an unwarranted wellness check by police. These false claims caused emotional distress and unfairly labeled the plaintiff as abusive.*





77

**Exhibit R: False Reports and Fraudulent Claims**

*Despite repeated removals by YouTube for privacy violations, the defendant persistently re-uploaded the video footage and photos of the plaintiff in her bathrobe.*





**Exhibit S: False Reports and Fraudulent Claims**                          *On or*

*about September 12, 2023, the defendant submitted a complaint to the Michigan Medical Board,*

*falsely alleging professional misconduct by the plaintiff without evidence.*





Hello

I am an investigator with the State of Michigan-LARA-Bureau of Professional Licensing and have been assigned the above referenced investigation. From the submitted allegations there are references to private information being disclosed by Ms███ can you provide specific videos, episodes podcasts, etc. to support the allegations. What type of information is Ms.████ disclosing? Any assistance with this matter would be greatly appreciated

Thank you.

Senior Regulation Agent

Investigations and Inspection Division

79

**Exhibit T: False Reports and Fraudulent Claims**

*The Defendant Danielle Robertson posted video instructions on her website, encouraging mass reporting of the plaintiff's medical license.*

80

**Exhibit U: False Reports and Fraudulent Claims**

*On April 16, 2024, the Bureau of Professional Licensing informed the plaintiff that no violation of the Public Health Code could be substantiated, and the matter was closed.*



81