UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

SYBRENA EVANS,

Plaintiff,

v.

DANIELLE ROBERTSON, *et al.*,

Defendants.

Case No. 24-cv-13435
Honorable Judith E. Levy
Magistrate Judge Elizabeth A. Stafford

---

**REPORT AND RECOMMENDATION ON
DEFENDANT'S MOTIONS TO DISMISS
(ECF NOS. 77, 127)**

---

## I.    Introduction

Plaintiff Sybrena Evans, proceeding pro se, sues Defendant Danielle Robertson[1] and Jane Does 1-10 for copyright infringement, defamation, fraud, and harassment.  ECF No. 1.  The Honorable Judith E. Levy referred the case to the undersigned for all pretrial matters under 28 U.S.C. § 636(b)(1).  ECF No. 7.  Robertson moves to dismiss the action for lack of subject-matter jurisdiction and failure to state a claim.  ECF No. 77.  She

---

[1] Robertson made a special appearance as a Jane Doe stating that "Danielle Robertson" is not her legal name.  ECF No. 28, PageID.183.  For the sake of clarity, the Court will nevertheless refer to this individual as Robertson.

also moves to dismiss for failure to join necessary parties.  ECF No. 127.
The Court **RECOMMENDS** that Robertson's motion to dismiss for lack of
jurisdiction and failure to state a claim be **GRANTED IN PART AND
DENIED IN PART** and that her motion to dismiss for failure to join parties
be **DENIED**.

## II.   Background

Evans, a Michigan resident, alleges that Robertson engaged in a
pervasive campaign of harassment and cyberbullying on her social media
platforms and websites from 2022 to 2024.  ECF No. 1, PageID.7-9.  The
specifics of those allegations are discussed in the Court's September 2025
report and recommendation (R&R).  ECF No. 75.  Evans sued for copyright
infringement, defamation, false reports and fraudulent claims, cyberbullying
and harassment, impersonation, and conspiracy.  ECF No. 1.

Adopting the R&R, Judge Levy dismissed several of Evans's claims
for lack of personal jurisdiction, leaving the remaining claims: (1) copyright
infringement stemming from the use of Evans's likeness captured during a
personal protective order (PPO) hearing held via Zoom; (2) defamation
stemming from Robertson's alleged posts about Evans's professional
misconduct and posts about wellness checks on Evans prompted by
Robertson's allegedly false reports to police; and (3) cyberbullying and

2

harassment stemming from Robertson's posts about Evans's divorce.  ECF No. 75, PageID.825; ECF No. 112, PageID.2326.

## III.    Analysis

### A.

Robertson moves for dismissal for lack of subject-matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1).  ECF No. 77, PageID.981. A plaintiff must show that the court has "original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States," or that jurisdiction is proper because of the diversity of citizenship of the parties.  28 U.S.C. §§ 1331, 1332.  "A Rule 12(b)(1) motion for lack of subject matter jurisdiction can challenge the sufficiency of the pleading itself (facial attack) or the factual existence of subject matter jurisdiction (factual attack)."  *Cartwright v. Garner*, 751 F.3d 752, 759 (6th Cir. 2014). Robertson makes a facial attack here, challenging whether Evans has adequately pleaded a plausible federal claim or that diversity jurisdiction exists.  Thus, the Court takes the allegations of the complaint as true.  *Id.* Evans bears the burden of establishing that subject-matter jurisdiction exists.  *Id.*

To invoke subject-matter jurisdiction under § 1331, Evans would need to plead "a colorable claim 'arising under' the Constitution or laws of the

United States." *Arbaugh v. Y&H Corp.*, 546 U.S. 500, 513 (2006). "[F]ederal courts lack subject-matter jurisdiction when an asserted federal claim is so insubstantial, implausible, foreclosed by prior decisions of this Court, or otherwise completely devoid of merit as not to involve a federal controversy." *Arthur Andersen LLP v. Carlisle*, 556 U.S. 624, 629 (2009) (cleaned up).  Although courts give a more liberal reading to pleadings filed by pro se litigants than to those drafted by lawyers, a pro se complaint still must plead facts showing that the Court has jurisdiction.  *Christenberry v. White*, No. 3:20-CV-176-TAV-DCP, 2020 WL 6371174, at *3 (E.D. Tenn. Oct. 29, 2020).

Robertson contends that Evans's sole federal claim must be dismissed under Rule 12(b)(6).  A motion to dismiss under Rule 12(b)(6) tests a complaint's legal sufficiency.  "To survive a motion to dismiss a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  The *Iqbal* Court explained, "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*  The complaint's allegations "must do more than create

4

speculation or suspicion of a legally cognizable cause of action; they must show *entitlement* to relief."  *League of United Latin Am. Citizens v. Bredesen*, 500 F.3d 523, 527 (6th Cir. 2007).

In deciding whether a plaintiff has set forth a plausible claim, the Court must construe the complaint in the light most favorable to the plaintiff and accept as true all well-pleaded factual allegations.  *Iqbal*, 556 U.S. at 678.  But "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice," *id.*, and the Court has no duty to create a claim not spelled out in the pleadings, *Freightliner of Knoxville, Inc. v. DaimlerChrysler Vans, LLC*, 484 F.3d 865, 871 n.4 (6th Cir. 2007).

The Court evaluates whether it has federal question or diversity jurisdiction over the action.

## 1.

Evans advances one federal claim: infringement under the Copyright Act of 1976, 17 U.S.C. § 101, *et seq.*  ECF No. 1, PageID.7-8.  Copyright protection applies to "original works of authorship," such as literary, music, pictorial, or audiovisual works.  17 U.S.C. § 102(a).  "An author gains 'exclusive rights' in her work immediately upon the work's creation, including rights of reproduction, distribution, and display."  *Fourth Est. Pub.*

5

*Benefit Corp. v. Wall-Street.com, LLC*, 586 U.S. 296, 300-01 (2019) (citing 17 U.S.C. § 106).  And a copyright owner may bring a lawsuit for alleged infringement of the copyright, "subject to the requirements of section 411." 17 U.S.C. § 501(b).

Section 411 requires copyright owners to register their copyright before initiating an infringement action:

> No civil action for infringement of the copyright…shall be instituted until preregistration or registration of the copyright claim has been made in accordance with this title. … [W]here the deposit, application, and fee required for registration have been delivered to the Copyright Office in proper form and registration has been refused, the applicant is entitled to institute a civil action for infringement if notice thereof, with a copy of the complaint, is served on the Register of Copyrights.

17 U.S.C. § 411(a).  The registration requirement "is akin to an administrative exhaustion requirement that the owner must satisfy before suing to enforce ownership rights."  *Fourth Est.*, 586 U.S. at 301. Registration is made "only when the Copyright Office grants registration," and not when the application is submitted.  *Id.* at 302.  Thus, only after the Copyright Office grants or refuses registration may the copyright owner bring an infringement lawsuit.  *Id.* at 308.

Three days before filing this action in December 2024, Evans submitted a copyright application for a still image of her likeness captured during a PPO hearing held via Zoom in Wayne County Circuit Court

6

(WCCC).  ECF No. 104, PageID.1974; ECF No. 129, PageID.2813; ECF No. 131, PageID.2987, 2991-2992.  On December 1, 2025, the Copyright Office refused registration.  ECF No. 129-1, PageID.2953; ECF No. 131, PageID.2987.  Evans recognizes that she did not exhaust her copyright infringement claim when she filed this action but moves for leave to supplement her complaint to add allegations curing that deficiency now that her application has been refused.  ECF No. 129, PageID.2813.

A plaintiff cannot cure a failure to exhaust after the fact by amending the complaint once copyright registration or refusal is obtained.  *Stringer v. Richard*, No. 4:21-cv-00632, 2022 WL 3223800, at *2 (N.D. Ohio Aug. 10, 2022) (collecting cases); *Rawls v. Paradise Artists, Inc.*, No. 3:18-0417, 2020 WL 1493610, at *5-6 (M.D. Tenn. Mar. 27, 2020) (same).  Holding otherwise would render the registration requirement a "meaningless formality," as "a plaintiff could file suit at any time, notwithstanding Section 411(a)'s precondition, and simply update the complaint when registration finally occurred."  *Rawls*, 2020 WL 1493610, at *5 (quoting *Malibu Media, LLC v. Doe*, No. 18-CV-10956 (JMF), 2019 WL 1454317, at *2 (S.D.N.Y. Apr. 2, 2019)).  Dismissal without prejudice is thus warranted.[2]  *Id.*, at *6.

---

[2] Evans correctly argues that the registration requirement under § 411(a) is not jurisdictional.  ECF No. 104, PageID.1971-1973; *Reed Elsevier, Inc. v.*

Dismissal with prejudice is also warranted on the merits of Evans's copyright claim. "A plaintiff alleging direct copyright infringement must show (1) a valid copyright in the at-issue work; and (2) the defendant copied protected elements of that work." *Tomelleri v. SunFrog, LLC*, 721 F. Supp. 3d 566, 572 (E.D. Mich. 2024). Evans claims that she owns a copyright "to her personal image, likeness, and video testimony" recorded during the PPO hearing, on which Robertson allegedly infringed. ECF No. 1, PageID.7. Evans concedes that "[t]he image at issue originates from a private Michigan PPO hearing video lawfully *recorded by the court* and depicting Plaintiff's live appearance." ECF No. 104, PageID.1974. These allegations do not show that Evans has a valid copyright.

As stated above, copyright protection applies to "original works of authorship fixed in any tangible medium of expression." 17 U.S.C. § 102(a). "Fixing" a work in a stable or permanent form must be achieved "under the authority of the author." *Id.* § 101. An author "is the party who actually creates the work, that is, the person who translates an idea into a fixed, tangible expression entitled to copyright protection." *Cmty. for*

---

*Muchnick*, 559 U.S. 154, 166 (2010). But she misapprehends Robertson's argument. Because the sole federal claim for copyright infringement should be dismissed, federal question jurisdiction is lacking under 28 U.S.C. § 1331. Thus, the Court evaluates below whether diversity jurisdiction exists under § 1332.

8

*Creative Non-Violence v. Reid*, 490 U.S. 730, 737 (1989). And "[a]n application for copyright registration may be submitted by any author or other copyright claimant of a work, the owner of any exclusive right in a work, or the duly authorized agent of any such author, other claimant, or owner." 37 C.F.R. § 202.3(c)(1).

Evans has not plausibly alleged that she may register a copyright for the PPO hearing video. She did not author the video recording of the PPO hearing. Rather, the WCCC "fixed" the hearing into a digital recording. Evans contends that she owns a copyright for her likeness captured during the hearing. ECF No. 104, PageID.1974. But a person's name, persona, or likeness is not a "work of authorship" under the Copyright Act and is not entitled to copyright protection. *Downing v. Abercrombie & Fitch*, 265 F.3d 994, 1003-04 (9th Cir. 2001); *Trapp v. Holder*, No. 2:14-CV-12235, 2014 WL 2780079, at *1 (E.D. Mich. June 19, 2014). The authority Evans cites supports this conclusion. *See Garcia v. Google, Inc.*, 786 F.3d 733, 741-44 (9th Cir. 2015) (holding that an actor's likeness or performance in a film is not independently protectible).

The Copyright Office relied on the same reasons for refusing Evans's application. ECF No. 131, PageID.2987. This opinion is persuasive, given the sound rationale and the Office's expertise in identifying protectable

9

works and applying the Copyright Act.  *See Varsity Brands, Inc. v. Star Athletica, LLC*, 799 F.3d 468, 480 (6th Cir. 2015) ("How much to defer to the determination to issue a copyright registration depends on the thoroughness evident in the agency's consideration, the validity of its reasoning, … and all those factors which give it power to persuade, if lacking the power to control." (cleaned up)).  Beyond Evans's failure to comply with the registration requirement under § 411(a), she has failed to state a plausible copyright infringement claim.

### 2.

Robertson contends that Evans has not adequately pleaded facts supporting diversity jurisdiction.  ECF No. 77, PageID.982-983.  To show diversity under §1332, a plaintiff must allege "complete diversity of the parties and an amount in controversy exceeding $75,000."  *Naji v. Lincoln*, 665 F. App'x 397, 400 (6th Cir. 2016).  Complete diversity means that "no plaintiff is a citizen of the same state as any defendant."  *V & M Star, LP v. Centimark Corp.*, 596 F.3d 354, 355 (6th Cir. 2010).  The citizenship of an individual is his or her state of domicile.  *Napletana v. Hillsdale College*, 385 F.2d 871, 872 (6th Cir. 1967).

Evans alleges that she is a Michigan citizen.  ECF No. 1, PageID.5.  Although the complaint alleges that Robertson is a Delaware citizen, the

10

parties' filings have since revealed that she is an anonymous internet user who employs a series of fictitious names.  ECF No. 75, PageID.787, 817 (discussing Robertson's aliases).  That is, Robertson's identity and citizenship are unknown.

Robertson strenuously opposes revealing her identity and has defied Judge Levy's orders to disclose her legal name and postal address, arguing that the First Amendment protects anonymous online critics from being "unmasked."  *See* ECF No. 77, PageID.994; ECF No. 118, PageID.2393; ECF No. 124, PageID.2636.  "An author's decision to remain anonymous is an aspect of the freedom of speech protected by the First Amendment."  *Signature Mgmt. Team, LLC v. Doe*, 876 F.3d 831, 835 (6th Cir. 2017) (cleaned up).  In litigation involving anonymous internet users, courts have weighed the validity of the claims and the plaintiff's need to uncover the users' identities against the First Amendment's protection of anonymous speech.  *See, e.g.*, *id.* at 834; *Sony Music Ent. Inc. v. Does 1-40*, 326 F. Supp. 2d 556, 564-65 (S.D.N.Y. 2004); *Columbia Ins. Co. v. Seescandy.com*, 185 F.R.D. 573, 578-79 (N.D. Cal. 1999).

Some courts have declined to dismiss such actions on jurisdictional grounds when the internet users wish to remain anonymous, noting that jurisdictional discovery may be ordered if necessary.  *See Sony Music*, 326

11

F. Supp. 2d at 567 ("[T]his Court has the discretion to allow discovery to determine the basis for personal jurisdiction."); *Columbia Ins.*, 185 F.R.D. at 578 ("[A] district court does have jurisdiction to determine the facts relevant to whether or not it has in personam jurisdiction in a given case."); *see also C.H. ex rel. Shields v. United States*, 818 F. App'x 481, 484 (6th Cir. 2020) (when defendants challenge subject-matter jurisdiction, plaintiffs should be permitted to conduct jurisdictional discovery if they explain what relevant evidence they seek); *but see Sandoval v. Doe. No. 1*, 591 F. Supp. 3d 7, 10-11 (E.D.N.C. 2022) (dismissing case for lack of subject-matter jurisdiction when no federal claims were at issue and the citizenships of anonymous defendants were unknown); *Sinclair v. TubeSockTedD*, 596 F. Supp. 2d 128, 132-33 (D.D.C. 2009) (same).  Courts also acknowledge that "traditional reluctance for permitting filings against John Doe defendants" and strict compliance with service requirements and other rules "should be tempered by the need to provide injured parties with an [sic] forum in which they may seek redress for grievances."  *Columbia Ins.*, 185 F.R.D. at 578.

Robertson has repeatedly stated that she is not domiciled in Michigan and maintains no other ties to the state.  ECF No. 28, PageID.182, 195; ECF No. 39, PageID.351-352; ECF No. 77, PageID.991-992.  Some courts have held that "rather than affirmatively alleging the citizenship of a

defendant, a plaintiff may allege that the defendant is *not* a citizen of the plaintiff's state of citizenship." *Lincoln Benefit Life Co. v. AEI Life, LLC*, 800 F.3d 99, 107 (3d Cir. 2015). The Court is satisfied, at this stage, that Robertson is not a Michigan citizen and that complete diversity exists. Discovery into Robertson's identity may become necessary at some stage of the litigation. *See Signature Mgmt. Team, LLC v. Doe*, No. 13-cv-14005, 2015 WL 13036681, at *8-9 (E.D. Mich. Nov. 4, 2015). If discovery reveals that she is nondiverse, the Court will recommend dismissing the action for lack of subject-matter jurisdiction. *See Taylor v. Doe*, No. 1:20-cv-03398, 2021 WL 2940919, at *1 n.1 (S.D.N.Y. July 12, 2021) (adopting a "wait and see" approach when evaluating diversity jurisdiction in a case against an anonymous defendant).

**B.**

Robertson next contends that Evans's remaining claims are barred under the statute of limitations. ECF No. 77, PageID.986. State-law defamation claims are governed by a one-year statute of limitations. Mich. Comp. Laws § 600.5805(11); *see also Redmond v. Heller*, 957 N.W.2d 357, 368 (Mich. Ct. App. 2020). A defamation claim accrues "'at the time the wrong upon which the claim is based was done regardless of the time when damage results.'" *Redmond*, 957 N.W. 2d at 368 (quoting Mich.

13

Comp. Laws § 600.5827).  Each publication of a defamatory statement is independently actionable, and each statement is subject to a separate period of limitations.  *Id.*  So "a plaintiff's proofs and recovery would be limited to those libels or slanders that occurred within one year of the suit." *Id.*

Evans asserts a defamation claim against Robertson for allegedly reporting her for professional misconduct to Michigan's Department of Licensing and Regulatory Affairs (LARA) and for posting about the alleged misconduct and LARA investigations on social media.  ECF No. 1, PageID.8-11.  Evans alleges that Robertson posted in August 2022 that Evans was found guilty of medical malpractice.  *Id.*, PageID.9.  In September 2023, Robertson allegedly submitted a LARA complaint falsely accusing Evans of misconduct and posted about it in on social media.  *Id.*, PageID.10, 55; ECF No. 66, PageID.632-633.  In October 2023, Robertson allegedly created a Change.org petition accusing Evans of unethical behavior and encouraged her social media followers to sign it.  ECF No. 1, PageID.15, 48; ECF No. 67, PageID.647; ECF No. 68, PageID.674.  These actions allegedly took place more than a year before Evans filed her complaint on December 23, 2024.  Thus, the statute of limitations

14

precludes Evans from pursuing defamation claims based on these allegations.

But Evans makes other allegations of defamation within the limitations period.  In coordination with the PPO petitioner (identified by both parties as Keva Williams),[3] Robertson allegedly made more LARA complaints in 2024.  ECF No. 1, PageID.11, 58-61; ECF No. 66, PageID.637, 639.  Robertson later posted about the complaints and published a letter from LARA.  ECF No. 1, PageID.11, 61; ECF No. 66, PageID.640.  Because these activities allegedly took place less than a year before Evans filed the complaint, she may proceed with her defamation claims on these grounds.

It is unclear when Robertson allegedly made social media posts urging her followers to submit LARA complaints against Evans.  *See* ECF No. 1, PageID.9-10, 49, 51, 56; ECF No. 68, PageID.670.  The Court cannot determine whether the defamation claims premised on these statements were made within the limitations period and thus declines to dismiss them as untimely.

---

[3] *See, e.g.*, ECF No. 129, PageID.2816-2817, 2859; ECF No. 127, PageID.2648.

Evans also alleges that Robertson made fraudulent calls to local police posing as Evans's family member and neighbor.  ECF No. 1, PageID.10.  Officers performed wellness checks on Evans and recorded her on bodycam.  *Id.*, PageID.10, 52.  Robertson allegedly obtained the bodycam footage through a FOIA request and published content from it to social media.  *Id.*, PageID.10, 54; ECF No. 65, PageID.606; ECF No. 67, PageID.658.

As explained in the September 2025 R&R, the Court construes Evans's claim, titled "false reports and fraudulent claims," as a defamation claim.  ECF No. 75, PageID.802.  "When determining the applicable period of limitation for a claim, the court must ascertain the true nature of the claim."  *Ledezma v. McLaren Bay Region*, No. 374495, 2025 WL 3673682, at *3 (Mich. Ct. App. Dec. 17, 2025).  A valid claim of fraud would require Evans to allege that she detrimentally relied on a misrepresentation by Robertson.  *See Hord v. Envt'l Rsch. Inst. of Mich.*, 579 N.W.2d 133, 135 (Mich. Ct. App. 1998).  That is not the nature of Evans's claim.  Instead, the alleged harm includes harassment and reputation harm, so the Court construes the claim as one for defamation.  *See* ECF No. 1, PageID.10-11.

The alleged wellness checks and social media posts occurred in October 2022 and June 2023, more than a year before Evans filed the

16

claims.  *Id.*, PageID.10, 52-54; ECF No. 65, PageID.605-606; ECF No. 67, PageID.658.  These claims are thus barred under the statute of limitations.

Last, Evans advances a claim of "cyberbullying and harassment" stemming from Robertson's posts about Evans's divorce.  ECF No. 1, PageID.12.  Because Michigan does not recognize a civil cause of action for cyberbullying or online harassment, Evans's claim is again properly construed as one for defamation.  Robertson's alleged posts about Evans's divorce were dated February 2023.  *Id.*, PageID.12, 74-75; ECF No. 67, PageID.667.  These posts were made more than a year before Evans filed suit, so the defamation claim stemming from these allegations is barred under the statute of limitations.

Evans argues that the statute of limitations does not foreclose her defamation claims because Robertson engaged in continuing defamation.  ECF No. 104, PageID.1986.  But Evans cites caselaw evaluating how the statute of limitations applies to defamation claims under *Tennessee* law.  *Id.* (citing *Clark v. Viacom Int'l Inc.*, 617 F. App'x 495, 500-01 (6th Cir. 2015).  The Court addressed above how Michigan courts apply the statute of limitations to multiple defamatory statements.  Evans also argues the timeliness of her copyright infringement claim, which the Court has

determined should be dismissed on other grounds.  ECF No. 104,

PageID.1975.

## C.

Robertson next argues that Evans fails to state a plausible claim.

ECF No. 77, PageID.983-985, 987-990.  To state a defamation claim, a

plaintiff must allege four elements:

> (1) a false and defamatory statement concerning the plaintiff,
> (2) an unprivileged communication to a third party, (3) fault
> amounting at least to negligence on the part of the publisher,
> and (4) either actionability of the statement irrespective of
> special harm (defamation per se) or the existence of special
> harm caused by publication.

*Ghanam v. Does*, 845 N.W.2d 128, 142 (Mich. Ct. App. 2014) (cleaned up).

And "a plaintiff claiming defamation must plead a defamation claim with

specificity by identifying the exact language that the plaintiff alleges to be

defamatory."  *Id.* (cleaned up).

Robertson first argues that Evans has identified no statements that

are false and instead challenges statements couched as allegations,

opinion, or hyperbole.  ECF No. 77, PageID.985, 987-988.  "[N]ot all

defamatory statements are actionable," and a statement is protected by the

First Amendment if it "cannot be reasonably interpreted as stating actual

facts about the plaintiff."  *Ireland v. Edwards*, 584 N.W.2d 632, 636 (Mich.

Ct. App. 1998) (citing *Milkovich v. Lorain J. Co.*, 497 U.S. 1, 20 (1990)).  A

18

statement of opinion is actionable if it is "provable as false," meaning an "objectively verifiable event" is actionable while "a subjective assertion" is not.  *Id.* at 637.  For example, the statement, "In my opinion Mayor Jones is a liar," is actionable, while the statement, "In my opinion Mayor Jones shows his abysmal ignorance by accepting the teachings of Marx and Lenin," is not.  *Id.*

And "certain statements, although factual on their face, and provable as false, could not be interpreted by a reasonable listener or reader as stating actual facts about the plaintiff."  *Id.* at 638.  Thus, parodies, political cartoons, and satires are not actionable.  Nor are statements involving "rhetorical hyperbole" or "vigorous epithet," such as exaggerations labelling someone a "blackmailer," "traitor," or "crook."  *Kevorkian v. Am. Med. Ass'n*, 602 N.W.2d 233, 237 (Mich. Ct. App. 1999)   Rather, "statements must be viewed in context to determine whether they can reasonably be understood as stating actual facts about the plaintiff."  *Ireland*, 584 N.W.2d at 638.  A court may decide as a matter of law whether an alleged statement is capable of a defamatory meaning.  *Id.*

The Court evaluates Robertson's alleged statements that were timely under the statute of limitations.  As described above, Robertson made

posts in 2024 about the LARA investigations.  Robertson posted a copy of

a letter from LARA to her YouTube channel with the caption:

> This was sent to me.  So, I'm sharing it.  Again, I didn't file this,
> someone else did.  However, I will say that Sybrena is a
> narcissist who likes to gaslight and hide her hand.  She also
> likes to twist things into something that it isn't, which makes her
> a liar.  But ultimately the Judge saw right through her narc
> games, which is why he said it was mutual contact between her
> and the other party….Her unhealthy obsession with others
> along with her inability to get views without clout chasing
> causes her to act unhinged.  As a reminder, don't believe a
> word she says, all receipts will be posted…for you to review
> yourself.  That way, you'll see with your own eyes what has
> been submitted or not submitted regarding her.

ECF No. 1, PageID.59; ECF No. 66, PageID.637.  She again posted a copy

of a June 2024 LARA letter on her website with the title, "Medical Board

Investigation!  Submitted to Michigan Courts as well."  ECF No. 1,

PageID.60.  Robertson also posted a copy of a September 2024 LARA

letter to another YouTube channel, with the caption:

> Money grabbing clout chasers continue to get drunk and make
> "fake" countdowns, not knowing what things mean or how to
> comprehend documents.  Meanwhile, they're under
> investigation again by the Michigan Medical board.  I'm sure
> their internal files are loaded with complaints because of their
> unethical conduct.  Similar to bad cops who have a ton of
> internal complaints filed against them.  A pattern of behavior
> has been established.  IMO, alcoholism is a contributing factor
> in her behavior.

*Id.*, PageID.61; ECF No. 66, PageID.640.

Robertson allegedly made social media posts urging her followers to submit LARA complaints against Evans, although it is unclear when Robertson made those alleged posts.  One alleged post supplies Evans's license number and a link to LARA's website, with a directive to "[f]ile a medical complaint against the license for doxing and possible access to confidential records as a Physician Assistant."  ECF No. 1, PageID.49. Another alleged post states:

> Michigan complaint form: You can file anon.  There's an option to report possible drug/substance abuse, such as her alleged but apparent alcohol consumption, and a box to fill in complaints such as mental illness, etc.  [Link to LARA website]. Here's the information needed to complete the complaint: [two more links].

*Id.*, PageID.51; ECF No. 68, PageID.670.

Michigan courts have cautioned that whether a statement could reasonably be interpreted as fact or subjective opinion depends on the forum where it is published.

> The context and forum in which statements appear also affect whether a reasonable reader would interpret the statements as asserting provable facts.  Courts that have considered the matter have concluded that Internet message boards and similar communication platforms are generally regarded as containing statements of pure opinion rather than statements or implications of actual, provable fact.  "[A]ny reader familiar with the culture of…most electronic bulletin boards…would know that board culture encourages discussion participants to play fast and loose with facts…. Indeed, the very fact that most of

21

the posters remain anonymous, or pseudonymous, is a cue to discount their statements accordingly."

*Ghanam*, 845 N.W.2d at 144 (cleaned up).  Thus, "'[b]logs and chat rooms tend to be vehicles for the expression of opinions; by their very nature, *they are not a source of facts or data upon which a reasonable person would rely*.'"  *Id.* (quoting *Doe v. Cahill*, 884 A.2d 451, 465 (Del. 2005)) (emphasis added in *Ghanam*).

Robertson is not a journalist or recognizable media personality who might be afforded some credibility.  Her alleged posts, which were made anonymously via various usernames on YouTube, her personal website, and social media, cannot reasonably be interpreted as factual.  Robertson's descriptions of Evans as a "narcissist who likes to gaslight," a "liar," someone who "acts unhinged," a "clout chaser," and "unethical," are statements of opinion.  Robertson's claim that she was sure that LARA's internal files are "loaded" with complaints was obvious speculation.  The same is true of her claims that Evans suffers from substance abuse and mental illness, as she prefaces those allegations with "apparent," "alleged," and "IMO," an acronym for "in my opinion."  And given the longstanding, bitter feud between the parties, no reasonable person would rely on Robertson's statements about Evans as factual.  Thus, Evans's defamation claims based on these posts should be dismissed.

22

Robertson and Williams also allegedly filed LARA complaints against Evans to get her physician assistant license revoked.[4]  ECF No. 1, PageID.11.  The exact substance of the LARA complaints is unknown, as Evans lacks access to the communications.  But Evans alleges that Robertson made an earlier LARA complaint alleging malpractice and that the later complaints were part of the same "campaign" of making "baseless" accusations "aimed at revoking [her] medical license."  *Id.*, PageID.9-11.  And LARA's response letter stated that the department would investigate whether Evans violated the Public Health Code.  *Id.*, PageID.58.  Thus, the allegations support an inference that Robertson and Williams accused Evans of malpractice.  "[D]efamation claims may be premised on false accusations of medical malpractice."  *LL NJ, Inc. v. NBC-Subsidiary (WCAU-TV), L.P.*, No. 06-14312, 2008 WL 1923261, at *24 (E.D. Mich. Apr. 28, 2008); *see also Swenson-Davis v. Martel*, 354 N.W.2d 288, 290 (Mich. Ct. App. 1984) (defamation per se exists when the statements "are

---

[4] Robertson may be liable for Williams's statements if the two conspired to defame Evans, as alleged.  "All persons who cause or participate in the publication of a libelous or slanderous matter are responsible for such publication."  *Stanton v. Anchor Bay Sch. Dist.*, No. 358408, 2023 WL 2144544, at *6 (Mich. Ct. App. Feb. 21, 2023) (quoting *Bowerman v Detroit Free Press*, 283 N.W. 642 (Mich. 1939)) (cleaned up).

false and malicious and are injurious to a person in his or her profession or employment").

Robertson contends that the LARA complaints cannot sustain a defamation claim because they are privileged.  ECF No. 77, PageID.985.  "Michigan law recognizes a qualified privilege as applying to communications on matters of 'shared interest' between parties."  *Rosenboom v. Vanek*, 451 N.W.2d 520, 522 (Mich. Ct. App. 1989).   The privilege "extends to all bona fide communications concerning any subject matter in which a party has an interest or a duty owed to a person sharing a corresponding interest or duty," including moral and social obligations.  *Id.*  The privilege applies to a report of medical malpractice to a state regulatory agency.  *Nuyen v. Slater*, 127 N.W.2d 369, 373 (Mich. 1964) (involving a nurse's claim that she was defamed in a letter accusing her of misconduct sent to the state health department).

"A party claiming defamation 'may overcome a qualified privilege only by showing that the statement was made with actual malice.'"  *Knutson v. Gassert*, No. 361675, 2023 WL 5988457, at *4 (Mich. Ct. App. Sept. 14, 2023) (quoting *Prysak v. RL Polk Co.*, 483 N.W.2d 629 (Mich. Ct. App. 1992)).  "Actual malice" means "knowledge that the published statement was false or as reckless disregard as to whether the statement was false or

24

not." *Id.*  Evans alleges that Robertson submitted baseless LARA complaints in a malicious attempt to get Evans's professional license revoked.  ECF No. 1, PageID.11.  Taking this allegation as true, as the Court must under Rule 12(b)(6), Evans has plausibly alleged facts showing that the privilege does not apply.

Robertson also argues that Evans is a limited-purpose public figure and so must plausibly allege that the defamatory statements were made with actual malice.  ECF No. 77, PageID.989.  Statements about public figures are entitled to "qualified immunity that can be overcome only by a showing of actual malice." *New Franklin Enters. v. Sabo*, 480 N.W.2d 326, 328 (Mich. Ct. App. 1991).  "A private person can become a limited-purpose public figure when he voluntarily injects himself or is drawn into a particular controversy and assumes a special prominence in the resolution of that public controversy." *Id.*  The pleadings do not show that the LARA complaints became a matter of public controversy; there is no sign that the complaints garnered public interest or press coverage.  *See id.*  Besides, Evans has sufficiently alleged facts supporting actual malice as discussed above.[5]

---

[5] Robertson asserts two other cursory arguments that the Court declines to address.  First, she argues that the defamation claims must be dismissed

Thus, Evans has stated a plausible defamation claim based on Robertson's and Williams's 2024 LARA complaints.

**D.**

Robertson challenges personal jurisdiction, raising the same arguments previously addressed.  ECF No. 77, PageID.991-994.  The Court evaluated all claims and recommended dismissing some for lack of personal jurisdiction.  ECF No. 75, PageID.794-812.  Judge Levy adopted that R&R.  ECF No. 112.  The determination that the Court has personal jurisdiction over other claims is the law of the case and should not be revisited, as Robertson offers no extraordinary circumstances for doing so. *Hayden v. Rhode Island*, 13 F. App'x 301, 302 (6th Cir. 2001) ("Under the law of the case doctrine, findings made at one point in the litigation become the law of the case for subsequent stages of that same litigation.").

And Robertson again challenges venue, making the same cursory arguments already considered: that she does not reside in, have

---

because Evans self-published certain statements.  ECF No. 77, PageID.990.  But she does not identify the statements or connect them to the allegations in the complaint.  Second, she argues that the Strategic Lawsuit Against Public Participation statute, commonly known as the anti-SLAPP Act, shields her from suit.  *Id.*, PageID.990-991.  But she cites no state's anti-SLAPP statute and offers no analysis about the application of the statute in federal court.  "Issues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived."  *McPherson v. Kelsey*, 125 F.3d 989, 995-96 (6th Cir. 1997).

26

substantial ties to, or conduct business in Michigan.  ECF No. 77,

PageID.995.  Venue for a civil action is proper in "a judicial district in which

a substantial part of the events or omissions giving rise to the claim

occurred."  28 U.S.C. § 1391(b)(2).  As concluded in the September 2025

R&R, the claims over which the Court has personal jurisdiction are tied to

Robertson's alleged acts targeting Michigan.  And because Robertson does

not offer substantive analysis showing that venue is improper, she has

waived this issue.  *See McPherson*, 125 F.3d at 995-96.

### E.

Last, the Court addresses Robertson's motion to dismiss for failure to

join a necessary party under Rule 19.  ECF No. 127.  Robertson maintains

that Williams and the WCCC are necessary parties.  *Id.*, PageID.2646,

2648.  And because Williams would be a nondiverse defendant and the

WCCC is entitled to absolute immunity, Robertson argues that dismissal is

warranted under Rule 19.  *Id.*, PageID.2649.

Rule 19 governs the required joinder of parties and "compel[s]

plaintiffs to sue all persons who are necessary and indispensable to the

adjudication of the case."  *Alter Domus, LLC v. Winget*, No. 23-10458, 2023

WL 4030025, at *3 (E.D. Mich. June 15, 2023).  "Assessing whether joinder

is proper under Rule 19 is a three-step process."  *Glancy v. Taubman Ctrs.,*

*Inc.*, 373 F.3d 656, 666 (6th Cir. 2004).  Courts must consider: (1) whether the person or entity is a necessary party under Rule 19(a); (2) if so, whether joinder of that person or entity will deprive the court of subject matter jurisdiction; and (3) if joinder is not feasible, whether the factors outlined in Rule 19(b) show that the court should dismiss the case "in equity and good conscience" because the absentee is indispensable.  *Id.* (cleaned up).  "If the threshold requirements of Rule 19(a) are not satisfied, the Court need not engage in the Rule 19(b) inquiry."  *State Farm Mut. Ins. Co. v. Elite Health Ctrs., Inc.*, No. 16-13040, 2017 WL 2351744, at *6 (E.D. Mich. May 31, 2017).

Robertson falters at the first step of this analysis, as Williams and the WCCC are not necessary under Rule 19(a).  Rule 19(a)(1) states that a person must be joined as a party if:

> (A) in that person's absence, the court cannot accord complete relief among existing parties; or
>
> (B) that person claims an interest relating to the subject of the action and is so situated that disposing of the action in the person's absence may:
>
>> (i) as a practical matter impair or impede the person's ability to protect the interest; or
>>
>> (ii) leave an existing party subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of the interest.

28

"No precise formula" dictates whether a party is necessary under Rule 19(a), as those determinations "are heavily influenced by the facts and circumstances of individual cases."  7 Wright & Miller's Federal Practice and Procedure § 1604 (3d ed.).

Robertson contends that Williams is central to many of Evans's claims as the alleged coconspirator, PPO petitioner, source of the PPO hearing image, and filer of some LARA complaints.  ECF No. 127, PageID.2649-2658.  The Court recommends dismissal of all claims except for Evans's defamation claim stemming from Robertson's and Williams's 2024 LARA complaints.  The Court thus evaluates only whether Williams is a necessary party to that claim.  She is not.

The Sixth Circuit has held that "a person's status as a joint tortfeasor does not make that person a necessary party, much less an indispensable party."  *PaineWebber, Inc. v. Cohen*, 276 F.3d 197, 204 (6th Cir. 2001) (citing *Temple v. Synthes Corp.*, 498 U.S. 5, 7-8 (1990)); *see also Wilson v. Gordon*, 822 F.3d 934, 957 (6th Cir. 2016); Fed. R. Civ. P. 19(a) Advisory Committee's Note to 1966 Amendment ("[A] tortfeasor with the usual 'joint-and-several' liability is merely a permissive party to an action against another with like liability.").  The same principle applies to alleged co-conspirators.  *PaineWebber*, 276 F.3d at 204 (quoting *MS Dealer Serv.*

29

*Corp. v. Franklin*, 177 F.3d 942, 946 (11th Cir. 1999)) ("[A] state court complaint identifying the defendants as joint tortfeasors and coconspirators does not make the absent party indispensable."); *Harshaw v. Bethany Christian Servs.*, No. 1:08-cv-104, 2009 WL 2232740, at *5 (W.D. Mich. July 22, 2009) (quoting *Casas Off. Machs., Inc. v. Mita Copystar Am., Inc.*, 42 F.3d 668, 675-76 (1st Cir. 1994)) ("'[I]t is well-established that joint tortfeasors and co-conspirators are generally not indispensable parties' because of joint and several liability.").

Robertson insists that the joint tortfeasor exception to joinder does not apply but offers no authority or understandable reasoning in support of her argument.  ECF No. 127, PageID.2661.  She contends that complete relief cannot be awarded without Williams.  *Id.*, PageID.2658-2661.  But as discussed, Robertson and Williams are jointly and severally liable, meaning that Evans can "satisfy [her] whole judgment by execution against any one of the multiple defendants who are liable to [her]."  *Intercept Sec. Corp. v. Code-Alarm, Inc.*, 164 F.R.D. 215, 220 (E.D. Mich. 1995) (cleaned up).  Robertson also suggests that she may be unable to obtain discovery about Williams's involvement.  ECF No. 127, PageID.2660.  Yet if such discovery is relevant and proportional to the needs of the case, it may be obtained from non-parties under Rule 45.

30

Robertson contends that WCCC is indispensable because it "is the custodial control/provenance interests of its own proceedings," so "any adjudication regarding the 'unlawful' dissemination of its records—or the enforcement of an injunction against their use—requires the Court's participation." *Id.*, PageID.2652.  But the copyright claim should be dismissed, rendering the purported basis for joining the WCCC moot.

Robertson's motion to dismiss under Rule 19 should thus be denied.

## IV. Conclusion

The Court thus **RECOMMENDS** that Robertson's motion to dismiss for lack of jurisdiction and failure to state a claim be **GRANTED IN PART AND DENIED IN PART** (ECF No. 77) and that Robertson's motion to dismiss for failure to join parties be **DENIED** (ECF No. 127).  The sole remaining claim would be Evans's defamation claim based on Robertson's and Williams's alleged LARA complaints.

s/Elizabeth A. Stafford
ELIZABETH A. STAFFORD
United States Magistrate Judge

Dated: February 9, 2026

## NOTICE TO THE PARTIES ABOUT OBJECTIONS

Within 14 days of being served with this report and recommendation,

any party may serve and file specific written objections to this Court's findings and recommendations.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(2).  If a party fails to timely file specific objections, any further appeal is waived.  *Howard v. Secretary of HHS*, 932 F.2d 505 (6th Cir. 1991).  And only the specific objections to this report and recommendation are preserved for appeal; all other objections are waived.  *Willis v. Secretary of HHS*, 931 F.2d 390, 401 (6th Cir. 1991).

Each **objection must be labeled** as "Objection #1," "Objection #2," etc., and **must specify** precisely the provision of this report and recommendation to which it pertains.  Within 14 days after service of objections, **any non-objecting party must file a response** to the objections, specifically addressing each issue raised in the objections in the same order and labeled as "Response to Objection #1," "Response to Objection #2," etc.  The response must be **concise and proportionate in length and complexity to the objections**, but there is otherwise no page limitation.  If the Court determines that any objections lack merit, it may rule without awaiting the response.

## <u>CERTIFICATE OF SERVICE</u>

The undersigned certifies that this document was served on counsel of record and any unrepresented parties via the Court's ECF System to their email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on February 9, 2026.

s/Davon Allen
DAVON ALLEN
Case Manager