



UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

SYBRENA EVANS ET AL.,

          Plaintiffs,

vs.

DANIELLE ROBERTSON ET AL.,

          Defendants,

Case No.24-cv-13435

Honorable Judith E. Levy

Magistrate Judge Elizabeth A. Stafford

**DEFENDANT DANIELLE
ROBERTSON'S RESPONSE IN
OPPOSITION TO PLAINTIFF'S
RENEWED MOTION FOR LEAVE TO
FILE PROPOSED FIRST AMENDED
AND SUPPLEMENTAL COMPLAINT**

---

**DEFENDANT DANIELLE ROBERTSON'S RESPONSE IN OPPOSITION TO
PLAINTIFF'S RENEWED MOTION FOR LEAVE TO FILE PROPOSED FIRST
AMENDED AND SUPPLEMENTAL COMPLAINT**
*Submitted Under Special Appearance Without Waiving Jurisdictional Objections)*

Defendant Danielle Robertson, appearing pro se and without waiving any defenses or objections

previously raised, respectfully submits this Response in Opposition to Plaintiff Sybrena Evans'

Renewed Motion for Leave to File Proposed First Amended and Supplemental Complaint, ECF

No. 160. The motion should be denied because the proposed pleading is futile, prejudicial, and

not a simple amendment. Plaintiff seeks to revive a deficient conspiracy theory, attribute non-

party conduct to Defendant, and rely on disputed interpretations of Defendant's later

commentary.

**I. INTRODUCTION**

POOR QUALITY ORIGINAL

1

Plaintiff's renewed motion is not a simple amendment. It is an attempt to substantially expand and restructure this case after prior deficiencies were identified by the Court. Plaintiff seeks to add reorganized allegations, post-filing events, allegations involving non-party Keva Williams, and Plaintiff's interpretation of Defendant's public commentary. (ECF No. 160, PageID.3501–3502).

Plaintiff's own motion confirms that the Court previously found no evidence supporting the theory that Defendant and non-party Keva Williams conspired to fraudulently obtain the PPO. Plaintiff quotes the prior ruling as finding that, at most, the evidence showed sharing or publishing screenshots, but "no evidence supports the basis of the claim—that Robertson and Williams conspired to fraudulently obtain the PPO." (ECF No. 160, PageID.3501).

Plaintiff now attempts to cure that defect by reorganizing old allegations, adding new accusations, and treating later commentary as admissions. A new chronology does not create a plausible conspiracy. Plaintiff cannot continue expanding the case by attributing non-party conduct to Defendant.

Plaintiff's renewed motion specifically relies on Defendant's alleged May 23, 2026 livestream statements referencing medical-board allegations, a possible "curveball," and litigation "strategy" or "next move." (ECF No. 160, PageID.3502). However, the actual livestream transcript and audio reflect that Defendant was responding to Plaintiff's accusation that Defendant and another commentator had filed false medical-board reports and expressly stated that such an accusation was "not true." The statement was a denial, not an admission.

It is also an attempt to revive and repackage conspiracy allegations that are no longer operative after prior rulings narrowed the case. Plaintiff cannot revive or repackage the PPO-based conspiracy theory that is no longer an operative claim after prior rulings narrowed the case.

2

Plaintiff also attempts to litigate the case within the case by converting Defendant's litigation defenses and arguments about Plaintiff's copyright claim into new alleged misconduct, even though the Court has already recommended dismissal of that copyright theory.

## II. LEGAL STANDARD

Federal Rule of Civil Procedure 15(a) allows amendment with leave of court, but leave is not automatic. Courts may deny leave for undue delay, bad faith or dilatory motive, repeated failure to cure deficiencies, undue prejudice, or futility. *Foman v. Davis*, 371 U.S. 178, 182 (1962). Federal Rule of Civil Procedure 15(d) permits a supplemental pleading only for events that occurred after the date of the pleading to be supplemented. Although Rule 15(d) permits supplementation for later events on just terms, it does not require the Court to allow a party to expand a case through disputed interpretations of later commentary or collateral events, particularly where the proposed supplementation would be prejudicial or futile.

## III. PLAINTIFF'S PROPOSED PLEADING IS A MAJOR EXPANSION, NOT A SIMPLE AMENDMENT

Plaintiff's motion demonstrates that the proposed pleading is not a minor correction. Plaintiff states that she has "amended and reorganized" allegations concerning 2023–2024 republications, Change.org materials, divorce materials, wellness-check imagery, LARA-related publications, and professional-misconduct accusations. Plaintiff also states that she is consolidating allegations previously "dispersed throughout the record" and reorganizing them into new counts. (ECF No. 160, PageID.3501–3502).

The proposed amended and supplemental complaint asserts six counts: misappropriation of likeness/right of publicity, defamation and false light, false reports and fraudulent complaints, cyberbullying and harassment, impersonation and fraudulent misrepresentation, and conspiracy

3

to commit fraud and cause emotional distress. (ECF No. 160-1, PageID.3557). It also adds allegations involving alleged post-filing conduct, Copyright Office communications, PPO-related materials, LARA/medical-board issues, alleged deepfake content, and non-party Keva Williams. That is not a straightforward amendment. It is a broad attempt to reshape the case late in the litigation.

Plaintiff is not merely correcting a pleading defect; she is attempting to add new post-filing events, reorganize prior allegations, revive a previously deficient conspiracy theory, and inject disputed interpretations of later livestream commentary into the case.

## IV. PLAINTIFF MISCHARACTERIZES DEFENDANT'S MAY 23, 2026 STATEMENT AS AN ADMISSION

Plaintiff's renewed motion materially mischaracterizes Defendant's May 23, 2026 livestream commentary. Plaintiff claims Defendant referenced statements suggesting coordination regarding medical-board allegations and attempts to use those remarks as evidence of conspiracy. The transcript and audio do not support that interpretation. (ECF No. 160, PageID.3502).

The livestream remains publicly available at:

https://www.youtube.com/live/mGlJbqiwJGk

39:17 The judge has recommended for dismissal almost  a whole case besides one case which she made up

39:23 [ __ ] about by the way involving me and come  get this commentary saying we filed we filed

39:29 uh false reports against her on the medical board  which is not true. Now if that claim is kept and

39:37 it continues on there's going to be a curveball  that she doesn't expect and no

4

The transcript reflects Defendant discussing Plaintiff's allegation that Defendant and another commentator had filed false reports with a medical board and then expressly stating that the allegation was "not true." The surrounding context likewise shows Defendant discussing the status of ongoing litigation and Plaintiff's accusations, not admitting participation in any unlawful conduct.

This statement is not an admission. It is a denial. Defendant was explaining Plaintiff's allegation and rejecting it. Plaintiff's characterization changes both the wording and the meaning of the statement.

Plaintiff also mischaracterizes Defendant's reference to a possible "curveball." The surrounding discussion concerned the status of the litigation, the possibility of a remaining claim, and potential litigation strategy if that claim survived. A litigant is not required to disclose future defenses, filings, or litigation strategy in an active case. Defendant's reference to a possible "curveball" was not an admission of conspiracy or misconduct.

Defendant respectfully submits that Plaintiff's reliance on isolated and disputed interpretations of livestream commentary should not support amendment or supplementation. The transcript, audio, and context do not establish any admission of conspiracy, coordination, or wrongdoing. Plaintiff's use of disputed livestream commentary to support new allegations illustrates why the proposed amendment would unfairly prejudice Defendant.

This filing reflects the same concern Defendant has repeatedly raised: Plaintiff relies on isolated words and incomplete context to characterize Defendant's statements as admissions. Here, Plaintiff materially mischaracterizes Defendant's statement. The transcript and audio show that Defendant was describing Plaintiff's allegation and expressly denying it. Plaintiff should not be

permitted to use a partial or disputed interpretation of Defendant's commentary as a basis to expand the pleadings.

## V. PLAINTIFF IS ATTEMPTING TO REVIVE A DEFICIENT CONSPIRACY THEORY

Plaintiff admits that her renewed motion is aimed at curing a prior deficiency concerning an alleged "meeting of the minds" between Defendant and Keva Williams. Yet Plaintiff still does not plead facts showing an actual agreement between Defendant and Williams to fraudulently obtain the PPO.

Instead, Plaintiff relies on timing, public commentary, alleged awareness of events, and Plaintiff's interpretation of Defendant's statements. Plaintiff's motion asserts a "clear chronological sequence" involving Williams' February 2024 livestream, Williams' PPO petition, Defendant's alleged March and April 2024 commentary, and later statements. But chronology is not conspiracy. To the extent the separate Michigan PPO proceeding involved a mutual-contact finding, that does not support Plaintiff's conspiracy theory; it supports the opposite inference, that Plaintiff and Williams had their own separate dispute. Public commentary, general resource-sharing, or awareness of public disputes does not establish an unlawful agreement.

Plaintiff asks the Court to infer conspiracy from parallel commentary and Plaintiff's subjective interpretation of statements. That remains insufficient to cure the deficiency previously identified by the Court.

This is especially improper because Plaintiff is attempting to revive or repackage a conspiracy theory that is no longer an operative claim in this case. The original complaint included a conspiracy claim, but after the Court's prior rulings, conspiracy was not listed among the remaining claims. The remaining claims were narrowed to limited theories involving copyright, defamation, and cyberbullying/harassment allegations, and the later Report and

Recommendation further narrowed the case to a limited defamation theory involving alleged 2024 LARA complaints. Plaintiff should not be permitted to use Rule 15 to resurrect an already-dismissed or previously deficient conspiracy theory by repackaging it as new chronology, new interpretation, or supplemental allegations.

## VI. PLAINTIFF IMPROPERLY ATTRIBUTES NON-PARTY KEVA WILLIAMS' CONDUCT TO DEFENDANT

Plaintiff's theory depends heavily on non-party Keva Williams. Plaintiff's proposed complaint identifies Williams as a Michigan resident, the non-party petitioner in the PPO proceeding, and a person who is not named as a defendant. Plaintiff nevertheless states that allegations concerning Williams are included to establish Defendant's alleged conduct, knowledge, intent, and liability. (ECF No. 160-1, PageID.3556–3557).

That is insufficient to plead liability against Defendant. Williams is a separate individual with her own alleged grievances, her own PPO petition, and her own conduct. Plaintiff's exhibits identify Williams as the person Plaintiff alleges filed the PPO petition in Wayne County Circuit Court. (ECF No. 160-3, PageID.3759). Defendant was not the petitioner in that proceeding and should not be held responsible for Williams' independent actions.

Plaintiff's theory is also inconsistent with the nature of the underlying Michigan PPO proceeding. The state-court PPO order states that the "Parties have engaged in mutual contact" and that the allegations failed to meet the burden of proof necessary to invoke the remedies provided by the non-domestic stalking statutes. See Defendant's Exhibit B. That record reflects a separate two-party dispute between Plaintiff and Williams and is inconsistent with Plaintiff's attempt to portray Williams' PPO petition as merely a fraudulent act caused or controlled by Defendant.

Plaintiff's own public post further undermines her conspiracy theory. In that post, Plaintiff acknowledged that the PPO was denied and stated that the judge wrote "MUTUAL CONTACT." Plaintiff also describes the PPO as a "FAILED ATTEMPT," while separately referencing Defendant Danielle Robertson. See Defendant's Exhibit C. That public acknowledgment supports Defendant's argument that the PPO proceeding concerned a separate dispute involving Plaintiff and Williams, not a fraudulent PPO conspiracy caused or controlled by Defendant. Plaintiff cannot use this federal amendment request to relitigate Williams' motives, intent, grievances, or the factual basis for Williams' PPO petition through allegations against Defendant. If Plaintiff's proposed theory requires inquiry into why Williams filed the PPO, what evidence Williams relied on, what Plaintiff allegedly did to Williams, and whether Williams had her own independent reasons for acting, then Williams' own conduct and defenses are directly implicated. Plaintiff's attempt to place those issues at the center of the case while leaving Williams outside the case creates a joinder problem and further demonstrates prejudice.

Defendant is appearing pro se and cannot represent, defend, or speak for non-party Williams. Plaintiff's proposed amendment places Williams' motives, intent, PPO petition, communications, and alleged conduct at issue, but Williams is not a party to this case. That creates prejudice because Defendant is being forced to respond to allegations about a non-party's independent actions, while Defendant cannot legally represent Williams or litigate Williams' separate defenses, grievances, or intent. If Plaintiff's theory depends on Williams' motives or alleged conduct, those are Williams' issues—not Defendant's—and Plaintiff cannot use Williams' non-party conduct as a substitute for pleading Defendant's own actionable conduct.

Plaintiff's own exhibits and public statements show a back-and-forth between Plaintiff and Williams. That is consistent with the Wayne County PPO order's mutual-contact finding and

inconsistent with Plaintiff's attempt to reframe Williams' separate dispute as Defendant's conspiracy. Defendant is not responsible for separate disputes between Plaintiff and Williams, or for separate grievances held by other community members.

Defendant is not responsible for every independent action taken by a Michigan resident who had her own dispute with Plaintiff. Plaintiff's theory improperly collapses a broader community controversy and Williams' separate PPO dispute into an alleged conspiracy by Defendant. The Court previously found no evidence supporting the theory that Defendant and Williams conspired to fraudulently obtain the PPO. Plaintiff's renewed motion does not cure that defect by rearguing Williams' conduct or motives.

Plaintiff cannot impose liability on Defendant based on Williams' alleged conduct without pleading facts showing agency, control, agreement, or joint action. Plaintiff has not pleaded facts showing Defendant controlled Williams, acted as Williams' agent, directed Williams, or entered into an unlawful agreement with Williams.

The same principle applies to other third parties: Plaintiff cannot convert independent grievances by other community members into Defendant's conduct without facts showing Defendant directed, controlled, or agreed to the specific alleged conduct.

## VII. GENERAL COMMENTARY OR RESOURCE-SHARING DOES NOT CREATE LIABILITY FOR THIRD-PARTY REPORTS

To the extent Plaintiff relies on Defendant's alleged public discussion of petitions, complaints, or resources, that still does not establish liability. General commentary, criticism, petition activity, or optional resource-sharing does not mean Defendant filed a false report, instructed anyone to file a false report, or conspired with anyone to do so.

Plaintiff's motion attempts to incorporate Change.org petition materials and related republication allegations into the amended pleading as part of her defamation and reputation theory. But petition activity and general discussion of public reporting options do not automatically make Defendant responsible for another adult's independent decision to file a report, grievance, or complaint.

Plaintiff must plead facts showing Defendant's own actionable conduct.

Plaintiff also improperly attributes unrelated third-party commentary and community's criticism to Defendant. Plaintiff is a public online commentator who has had disputes with multiple people, including non-party Williams and other community members. Defendant is not responsible for every criticism, post, report, petition, comment, or grievance made by another adult who had separate issues with Plaintiff. The existence of a broader community controversy does not establish agency, control, agreement, conspiracy, or liability by Defendant. Plaintiff must plead facts showing Defendant's own actionable conduct, not simply attribute all criticism of Plaintiff to Defendant.

## VIII. PLAINTIFF CANNOT USE AMENDMENT TO LITIGATE THE CASE WITHIN THE CASE

Plaintiff's proposed amendment improperly attempts to litigate the merits of this case inside a new pleading. Plaintiff relies on Defendant's litigation filings, Copyright Office communications, and statements challenging Plaintiff's copyright theory as if those defense positions are new misconduct. They are not.

Defendant had the right to challenge Plaintiff's copyright claim, including by arguing that the claim was legally deficient, unsupported, or frivolous. That position was not baseless. The February 9, 2026 Report and Recommendation recommended dismissal of Plaintiff's copyright

10

claim with prejudice for failure to satisfy the Copyright Act's pre-suit registration/refusal requirement and also recommended dismissal with prejudice on the merits because Plaintiff failed to plausibly allege a valid copyright in her likeness from the PPO hearing video (ECF No. 138, PageID.3058–3060).

Plaintiff's attempt to turn Defendant's copyright defenses into new claims is therefore backwards. Plaintiff is asking to punish Defendant for advancing a litigation position that the Court has already substantially credited. Rule 15 does not permit a party to use amendment to reargue the merits of dismissed or recommended-for-dismissal claims by recasting the opposing party's defenses as new tortious conduct.

Plaintiff's proposed pleading also relies on statements and positions made in the course of this litigation. Michigan recognizes an absolute privilege for relevant, material, or pertinent statements made in judicial proceedings. *Oesterle v. Wallace*, 272 Mich. App. 260, 264 (2006). Defendant's statements challenging Plaintiff's copyright theory were directly relevant to this lawsuit. Plaintiff should not be allowed to transform Defendant's court filings, legal arguments, and defense positions into new alleged misconduct merely because Plaintiff disagrees with them. Allowing amendment on that basis would unfairly prejudice Defendant and create a moving target. Every defense filing, objection, court argument, or public clarification about the case could be recharacterized as a new claim. That is not fair amendment practice, and it is not a proper use of Rule 15.

Plaintiff's disagreement with Defendant's litigation position is not a basis for a new claim.

## IX.  THE PROPOSED AMENDMENT WOULD PREJUDICE DEFENDANT

Allowing the proposed amendment would unfairly prejudice Defendant. Plaintiff is not merely correcting names, dates, or technical defects. Plaintiff seeks to greatly expand the case with new allegations, new exhibits, new legal theories, and post-filing commentary.

Plaintiff's renewed motion confirms that she is attempting to consolidate allegations previously scattered throughout the record and add supplemental allegations based on later events. (ECF No. 160, PageID.3501–3504). That forces Defendant to defend against a moving target.

Plaintiff's motion illustrates the problem: later commentary is being used to create new allegations and expand the case after prior deficiencies were identified.

That is not fair amendment practice. It is prejudicial and should be denied.

The prejudice is heightened because Plaintiff seeks to use Defendant's own litigation activity and defenses as a basis to expand the lawsuit. Plaintiff is effectively trying to litigate the merits of dismissed or recommended-for-dismissal claims inside a new amended complaint.

## X. THE PROPOSED PLEADING SUBSTANTIALLY EXPANDS THE CASE THEORY

Based on Plaintiff's own description of the proposed pleading, Plaintiff seeks to expand the case in several significant ways.

First, Plaintiff now emphasizes a broad "sustained campaign" theory dating back to at least April 2022, including YouTube channels, alleged copyright claims, impersonation, false complaints, divorce materials, PPO materials, LARA/medical-board issues, and online personas.

Second, Plaintiff adds or reorganizes allegations concerning Keva Williams, even though Williams is not a defendant.

Third, Plaintiff adds a proposed conspiracy theory centered on a chronological timeline involving Williams' PPO petition and Plaintiff's interpretation of Defendant's public statements.

Fourth, Plaintiff adds post-filing conduct, including alleged November and December 2025 statements and alleged May 23, 2026 livestream commentary.

Fifth, Plaintiff seeks to consolidate allegations from prior filings and objections into a newly organized pleading. (ECF No. 160, PageID.3501–3504; ECF No. 160-1, PageID.3553–3557). This is not a simple amendment to clarify existing claims. It is a substantial restructuring and expansion of the case.

Allowing the renewed amendment would prejudice Defendant by requiring her to defend against an expanded pleading built on reorganized allegations, non-party conduct, post-filing events, and disputed interpretations of public commentary.

## XI. CONCLUSION

Plaintiff's Renewed Motion should be denied. Plaintiff has not cured the deficiencies previously identified by the Court. Plaintiff still does not plead facts showing an actual agreement between Defendant and Keva Williams to fraudulently obtain the PPO. Instead, Plaintiff relies on speculation, non-party conduct, reorganized allegations, post-filing events, and a disputed interpretation of Defendant's May 23, 2026 statement.

The livestream transcript, audio, and context show Defendant denying Plaintiff's accusation that Defendant and another commentator filed false medical-board reports. Plaintiff should not be permitted to convert that denial into an alleged admission of conspiracy.

For these reasons, Defendant respectfully requests that the Court deny Plaintiff's Renewed Motion for Leave to File Proposed First Amended and Supplemental Complaint.

## DEFENDANT'S EXHIBIT A

YouTube Transcript Screenshot and Livestream URL, May 23, 2026

13

Relevant livestream URL:

https://www.youtube.com/live/mGlJbqiwJGk

Transcript excerpt reflecting Defendant's discussion of Plaintiff's allegation that false medical-board reports were filed and Defendant's statement that the allegation was "not true."

Screenshot attached on following page.

39:17  The judge has recommended for dismissal almost  a whole case besides one case which she made up

39:23  [ __ ] about by the way involving me and come  get this commentary saying we filed we filed

39:29  uh false reports against her on the medical board  which is not true. Now if that claim is kept and

39:37  it continues on there's going to be a curveball  that she doesn't expect and no

**DEFENDANT'S EXHIBIT A Full transcript with video metadata**



**The Dani Robertson After Show Cafe! The Secret OPP recording! CPS! Terminations! Audience Choice!**

THE AFTER SHOW CAFE
2.34K subscribers

Join     Analytics     Edit video     👍 230     👎     ➦ Share     ...

1,679 views  Streamed live on May 23, 2026   #truthtellerdani #aftershowcafe #danirobertson

Search transcript

39:17   The judge has recommended for dismissal almost a whole case besides one case which she made up

39:23   [ __ ] about by the way involving me and come get this commentary saying we filed we filed

39:29   uh false reports against her on the medical board which is not true. Now if that claim is kept and

39:37   it continues on there's going to be a curveball that she doesn't expect and no

Top chat replay ⌄          👑 Top fans   ⋮   ✕

@SKELOO
@suetackleman6291  @karamel
@Crissi T

15

**DEFENDANT'S EXHIBIT B**

**PPO Denial/Order from Separate Wayne County Proceeding Between Non-Party Keva Williams and Plaintiff Sybrena Evans**

with this Order.

☐     Another PPO exists, and a hearing with both parties present is necessary.

☐     This problem appears to relate to a custody and/or parenting time issue/s and both parties need to be present to determine if a PPO should issue and/or if the custody and/or parenting time order should be modified.

☐     The petitioner is a prisoner, as defined under MCL 600.2950a(29)(c)

☐     A PPO is not a substitute for an Order for Exclusive Use of the Marital Home.

☐     A PPO is not a substitute for an eviction proceeding.

☒     Other:  Parties have engaged in mutual contact.
Allegations failed to meet the burden of proof necessary to invoke the remedies provided by the non-domestic stalking statutes.

**DEFENDANT'S EXHIBIT C**

**Plaintiff's YouTube Community Post Acknowledging Separate PPO Attempt by Non-Party Keva Williams and Mutual-Contact Finding**

This exhibit contains a screenshot of Plaintiff Sybrena Evans' YouTube community post discussing the outcome of the separate PPO proceeding involving non-party Keva Williams.

In the post, Plaintiff states that the judge "DENIED" the PPO and that the judge did not write "mutual combat," but instead wrote **"MUTUAL CONTACT."** Plaintiff also describes the PPO as a "FAILED ATTEMPT," while separately referencing Defendant Danielle Robertson.

Defendant submits this exhibit to show that Plaintiff herself publicly acknowledged the separate PPO outcome and the mutual-contact basis reflected in the state-court record. Plaintiff's own

post supports Defendant's position that the PPO proceeding involved a separate dispute

involving Williams and Plaintiff, not an admission or proof that Defendant caused, controlled, or

conspired to obtain the PPO.

This exhibit further supports Defendant's argument that Plaintiff cannot use Williams'

independent PPO petition, motives, or alleged conduct as a basis to impose liability on

Defendant without pleading facts showing agency, control, agreement, or joint action.

 **UNWINEWITHTEDDY** 1 year ago (edited)

Hey MOB! @dfordanielle made yet another post regarding the Petition. Danielle simply can't get it through her head. The Judge said DENIED! He didn't put "other" as "MUTUAL COMBAT." There was NO PHYSICAL ALTERCATION. It Read "MUTUAL CONTACT." Stop Trying To Spin It. Like I Said... @danirobertson is W A Y TO I N V E S T E D in someone else's FAILED ATTEMPT. Now @RunTellThatToo. #DForDenied
Show less



foxtel showcase

**REQUEST'S BEEN DENIED**

 60

**Exhibit D: Declaration of Keva Williams Regarding Separate PPO Proceeding and Independent Grievances**



**Declaration of Keva Williams Regarding PPO Petition, Source of Exhibit, and Independent Grievances**

I, Keva Williams, declare as follows:

1. My name is Keva Williams. I am over 18 years old and competent to make this declaration.

2. I am a resident of the State of Michigan.

3. I am not a party to this federal lawsuit.

4. I am a separate person from Defendant Danielle Robertson.

5. I filed a Personal Protection Order petition involving Sybrena Evans in Michigan state court.

6. My PPO petition was based on my own personal experiences, concerns, and grievances involving Sybrena Evans.

7. Those concerns included my belief that Sybrena Evans had engaged in online harassment, bullying, cyberstalking, attempted doxing, false doxing, misidentification, and online conduct involving me.

8. One of my concerns involved Evans discussing or displaying bankruptcy information belonging to a different person and presenting or implying that it was connected to me.

9. That bankruptcy information was not mine. It involved a different woman, different children, and different identifying information.

10. I responded publicly to clarify that Evans had misidentified me and was discussing the wrong person's information.

11. I also had concerns that Evans was threatening to expose or obtain personal information about me online.

12. My decision to file the PPO petition was prompted by my own concerns and my own experiences involving Evans' online conduct toward me.

13. During the PPO proceeding, I understood the issue to involve a back-and-forth between me and Evans, including my responses to Evans when I believed I was defending myself.

14. My understanding of the PPO outcome is that the petition was denied and that the court record reflected mutual contact between the parties.

15. I understand the mutual-contact finding to mean that the court viewed the matter as involving reciprocal or back-and-forth conduct between me and Evans.

16. Danielle Robertson did not file the PPO petition for me.

17. Danielle Robertson did not direct me, control me, force me, or instruct me to file the PPO petition.

18. Danielle Robertson did not control my reasons, motives, evidence, statements, or decisions in connection with the PPO petition.

19. I did not file the PPO petition as Danielle Robertson's agent, employee, representative, or proxy.

20. I did not enter into any agreement with Danielle Robertson to fraudulently obtain a PPO against Sybrena Evans.

21. I provided a copy of my PPO petition and related materials to Danielle Robertson voluntarily so that she could respond to allegations in this federal lawsuit that concern me, my PPO petition, and my alleged conduct.

22. I understand that Sybrena Evans has referenced me and my PPO petition in the federal case involving Danielle Robertson.

23. I am providing this declaration to clarify that my actions were my own independent actions and were not directed or controlled by Danielle Robertson.

24. To the extent I took any action concerning Sybrena Evans, I acted independently and based on my own reasons, experiences, and concerns.

25. All actions I took concerning Sybrena Evans were my own actions, based on my own grievances, complaints, concerns, experiences, and reasons involving Evans.

26. Nothing in this declaration waives my right to seek appropriate legal remedies in the future if I believe I am subjected to harassment, threats, doxing, or attempted doxing.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

*Keva Williams June 1, 2026*

Keva Williams

Respectfully submitted,

/s/ Danielle Robertson
Danielle Robertson
Defendant, Pro Se
4539 N 22nd St
Phoenix, AZ 85016-4639
DaniRobertson@proton.me

Dated: June 1, 2026

DECLARATION REGARDING CITATIONS I declare under penalty of perjury that to the best of my knowledge, the citations and authorities referenced herein are accurate and correspond to the materials cited.

**CERTIFICATE OF SERVICE**

I hereby certify that on this date, June 1, 2026, I served the foregoing document upon the

Plaintiff, Sybrena Evans, via first-class United States mail, postage prepaid, to the following

address: Sybrena Evans 17710 Lakeview Cr. Northville, MI 48168