UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

FILED
AUG 31 2026
CLERK'S OFFICE
DETROIT

SYBRENA EVANS,

Plaintiff

V.

Case No. 5:24-cv-13435
Hon. Judith E. Levy
Magistrate Judge Elizabeth A. Stafford

DANIELLE ROBERTSON, et al.,

Defendants.

---

**PLAINTIFF/COUNTER-DEFENDANT SYBRENA EVANS'S CONSOLIDATED PRE-ANSWER RULE 12 MOTION TO DISMISS DEFENDANT/COUNTER-PLAINTIFF'S COUNTERCLAIMS (ECF NO. 184) AND FOR ALTERNATIVE RELIEF**

---

## STATEMENT OF ISSUES PRESENTED

**Timeliness.** Whether Defendant/Counter-Plaintiff filed ECF Nos. 179 and 184 after the deadline prescribed by Federal Rule of Civil Procedure 12(a)(4)(A) without obtaining an extension under Rule 6(b)(1)(B).

**Service.** Whether ECF No. 184 was served under Federal Rule of Civil Procedure 5.

**Identification of the Counterclaimant.** Whether ECF No. 184 adequately identifies the person asserting the counterclaims as required by Federal Rules of Civil Procedure 10(a) and 17(a), or alternatively requires clarification under Rule 12(e).

**Failure to State a Claim.** Whether Counts I through VI state claims upon which relief can be granted under Federal Rule of Civil Procedure 12(b)(6).

**Statute of Limitations.** Whether Count I is barred by Michigan's one-year statute of limitations to the extent it seeks affirmative recovery based upon publications made before August 10, 2025.

**More Definite Statement.** If any counterclaim survives dismissal, whether ECF No. 184 is sufficiently vague or ambiguous that Defendant/Counter-Plaintiff should be required to provide a more definite statement under Federal Rule of Civil Procedure 12(e).

**Rule 12(f)(1).** Whether the Court should consider exercising its authority under Federal Rule of Civil Procedure 12(f)(1) to strike redundant, immaterial, impertinent, or scandalous matter having no possible bearing upon any surviving counterclaim.

## STATEMENT OF CONTROLLING OR MOST APPROPRIATE AUTHORITY

**Federal Rules and Statute**: Fed. R. Civ. P. 5, 6(b)(1)(B), 10(a), 12(a)(4), 12(b)(6), 12(e), 12(f)(1), and 17(a); 17 U.S.C. § 512(f).

**Federal Pleading Standard:** *Ashcroft v. Iqbal*, 556 U.S. 662, 678–79 (2009); *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555, 570 (2007).

**Michigan Statutes:** Mich. Comp. Laws §§ 600.2954, 600.5805(2), 600.5805(11), and 750.411h.

**Michigan Claims:** *Battaglieri v. Mackinac Ctr. for Pub. Policy,* 261 Mich. App. 296; 680 N.W.2d 915 (2004); *Doe v. Mills*, 212 Mich. App. 73; 536 N.W.2d 824 (1995); *Foundation for Behavioral Resources v. W.E. Upjohn Unemployment Trustee Corp.*, 332 Mich. App. 406; 957 N.W.2d 352 (2020); *Ghanam v. Does*, 303 Mich. App. 522; 845 N.W.2d 128 (2014); *Locricchio v. Evening News Ass'n,* 438 Mich. 84; 476 N.W.2d 112 (1991); *Lucas v. Awaad*, 299 Mich. App. 345; 830 N.W.2d 141 (2013); *Mitan v. Campbell,* 474 Mich. 21; 706 N.W.2d 420 (2005); *Puetz v. Spectrum Health Hospitals*, 324 Mich. App. 51; 919 N.W.2d 439 (2018); *Roberts v. Auto-Owners Ins. Co.*, 422 Mich. 594; 374 N.W.2d 905 (1985).

**Federal Claims:** *Rossi v. Motion Picture Ass'n of Am., Inc.*, 391 F.3d 1000 (9th Cir. 2004).

## I. INTRODUCTION

Plaintiff/Counter-Defendant Sybrena Evans, proceeding pro se, respectfully submits this Consolidated Pre-Answer Rule 12 Motion to Dismiss Defendant/Counter-Plaintiff's Counterclaims (ECF No. 184) and for Alternative Relief. Without conceding that ECF No. 184 was properly served or that any response period commenced on August 17, 2026, Plaintiff/Counter-Defendant timely files this Motion on August 31, 2026, the earliest potentially applicable response deadline.

Plaintiff moves principally under Federal Rule of Civil Procedure 12(b)(6) to dismiss Defendant/Counter-Plaintiff's counterclaims for failure to state claims upon which relief can be granted. Plaintiff alternatively seeks a more definite statement under Rule 12(e), the consideration of whether redundant, immaterial, impertinent, or scandalous matter should be stricken under Rule 12(f)(1), and other appropriate relief necessary to prevent the amended counterclaims from displacing or delaying adjudication of Plaintiff's remaining claim and the pending recommendation concerning default.

This Motion is filed in lieu of an answer and does not constitute an answer to ECF No. 184. Solely for purposes of the Rule 12(b)(6) analysis, Plaintiff accepts properly pleaded factual allegations as true but does not admit them. Plaintiff disputes numerous allegations, reserves her obligation to admit or deny them until a responsive pleading is required, and reserves the right to answer any portion that survives. Plaintiff's obligation to answer is suspended until the Court rules. Fed. R. Civ. P. 12(a)(4).

## II. RELEVANT PROCEDURAL BACKGROUND

On May 7, 2025, Defendant initially responded to the Complaint ECF No. 1 through a

consolidated Rule 12 motion filed at ECF No. 28. On October 9, 2025, Defendant filed a Motion to Dismiss under Rules 12(b)(1), 12(b)(2), and 12(b)(6). ECF No. 77, PageID.980.

On May 23, 2026, before the Court resolved ECF No. 77, Defendant publicly discussed the possibility that Plaintiff's remaining claim would proceed and referred to a potential litigation "curveball." ECF No. 160, PageID.3508–3509; Exhibit A, *The Dani Robertson After Show Cafe! The Secret OPP Recording! CPS! Terminations! Audience Choice!*, at 39:05–39:51, 49:36–51:18 (streamed live May 23, 2026). Defendant's complete statements and their documented context are addressed in Section XI.

On July 21, 2026, the Court adopted the Report and Recommendation at ECF No. 138, granted ECF No. 77 in part and denied it in part, and preserved Plaintiff's remaining claim. ECF No. 173, PageID.3934. The Court's Certificate of Service states that the order was served upon unrepresented parties through their respective email or first-class U.S. mail addresses on July 21, 2026. *Id.*

On August 6, 2026, Magistrate Judge Elizabeth A. Stafford issued a Report and Recommendation recommending default judgment against Defendant. ECF No. 175, PageID.3958. Defendant filed her original answer and counterclaims on August 10, 2026. ECF No. 179. On August 12, 2026, Magistrate Judge Stafford issued an Amended Report and Recommendation clarifying that Plaintiff's sole remaining claim was the defamation claim based on the 2024 LARA complaints, again recommending default judgment against Defendant, and requiring Plaintiff to specify the injunctive relief sought. ECF No. 181, PageID.4131–4132. Defendant then filed her First Amended Answer and Counterclaims on August 17, 2026. ECF No. 184.

On August 19, 2026, two days after filing ECF No. 184, Defendant publicly discussed accumulating additional evidence and repeatedly pursuing restraining-order relief if an initial

request were unsuccessful and the conduct she characterized as stalking continued. Exhibit B, *The Dani Robertson Aftershow Cafe: Trevor vs Jaguar Wright*, at 20:16–21:13 (streamed live Aug. 19, 2026). Defendant's complete statements and their asserted contextual relationship to Count II are addressed in Section XI.

## III. DEFENDANT FILED ECF NOS. 179 AND 184 AFTER THE DEADLINE PRESCRIBED BY RULE 12(a)(4)(A) WITHOUT OBTAINING RELIEF UNDER RULE 6(b)(1)(B)

Under Federal Rule of Civil Procedure 12(a)(4)(A), Defendant was required to serve a responsive pleading within fourteen days after notice of the Court's action unless the Court established a different time. ECF No. 173 established no different deadline. Fourteen days after July 21 was August 4, 2026. Even assuming Defendant was served by first-class mail and that the three additional days provided by Rule 6(d) applied, the resulting deadline was August 7, 2026.

Defendant did not file her original answer and counterclaims until August 10, 2026, after both potentially applicable deadlines and four days after the Magistrate Judge recommended default judgment. Before filing ECF No. 179, Defendant filed motions at ECF Nos. 177 and 178, but neither requested an extension of the responsive-pleading deadline or relief under Rule 6(b)(1)(B). Defendant did not establish excusable neglect.

Defendant filed ECF No. 184 as her First Amended Answer and Counterclaims seven days later. Although Rule 15(a)(1)(A) permits one amendment as a matter of course within twenty-one days after service of a pleading, it does not retroactively cure the untimeliness of the August 10 responsive pleading or eliminate the requirements of Rule 6(b)(1)(B).

## IV. APPLICABLE STANDARDS

### A. Rules 12(a)(4) and 6(b)(1)(B)

Unless the Court sets a different time, Rule 12(a)(4)(A) requires service of a responsive pleading within fourteen days after notice that a Rule 12 motion has been denied or its disposition postponed until trial. After that period expires, Rule 6(b)(1)(B) permits an extension only "on motion made" and upon a showing of excusable neglect. Fed. R. Civ. P. 6(b)(1)(B), 12(a)(4)(A).

**B. Rules 8(a)(2) and 12(b)(6)**

Rule 8(a)(2) requires a pleading asserting a claim for relief to contain "a short and plain statement of the claim showing that the pleader is entitled to relief ." Under Rule 12(b)(6), a claim must be dismissed when the pleading fails to state a claim upon which relief can be granted.

In evaluating a Rule 12(b)(6) motion, the Court accepts well-pleaded factual allegations as true and determines whether they plausibly establish entitlement to relief. Legal conclusions, labels, and formulaic recitations of the elements of a cause of action are not entitled to an assumption of truth. A pleading must contain sufficient factual matter to state a claim that is plausible on its face, rather than merely possible or speculative. *Ashcroft v. Iqbal*, 556 U.S. 662, 678–79 (2009); *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555, 570 (2007).

**C. Rule 12(e)**

Rule 12(e) permits a party to move for a more definite statement when a pleading is "so vague or ambiguous that the party cannot reasonably prepare a response." The motion must be made before filing a responsive pleading and must identify the defects complained of and the details required. Fed. R. Civ. P. 12(e).

**D. Rule 12(f)**

Rule 12(f) permits the Court to strike from a pleading "an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." A party's motion to strike must be filed before responding to the pleading or, when no response is permitted, within twenty-one days after service. Fed. R. Civ. P. 12(f).

**E. Materials Considered**

Plaintiff's Rule 12(b)(6) arguments are directed to the allegations in ECF No. 184 and the documents incorporated into or relied upon in that pleading. Plaintiff cites other docket entries, including ECF No. 160, and Exhibits A and B only in addressing procedural history, timing, prejudice, and alternative relief—not to contradict the counterclaim allegations or obtain dismissal under Rule 12(b)(6) through outside evidence. See Fed. R. Civ. P. 12(d).

## V. THE RECORD DOES NOT ESTABLISH THAT ECF NO. 184 WAS SERVED UPON PLAINTIFF/COUNTER-DEFENDANT AS REQUIRED BY RULE 5

Rule 5(a)(1)(B) requires service of a pleading filed after the original complaint unless the Federal Rules provide otherwise. Rule 5(b)(2) identifies the permissible methods of service.

ECF No. 184 contains a certificate stating that Defendant/Counter-Plaintiff served a true and correct copy of the amended pleading on August 17, 2026, "in the manner permitted by the Federal Rules of Civil Procedure, the Local Rules of this Court, and applicable orders." The certificate does not identify the specific method of service. ECF No. 184-1, PageID.4342.

During the August 31, 2026 concurrence exchange, Defendant asserted that ECF No. 184 was served by U.S. mail. Plaintiff did not receive that mailing, and the certificate itself identifies neither mailing as the method of service nor the address used.

Plaintiff/Counter-Defendant became aware through her independent review of the public docket that ECF No. 184 had been filed, but she did not receive the pleading or its accompanying attachments by mail or email. Because Plaintiff is not a registered user of the Court's CM/ECF system, filing ECF No. 184 on the docket did not effect service upon her under Rule 5(b)(2)(E), and she received no CM/ECF notice of the filing. The first email Plaintiff received referencing ECF No. 184 was Defendant/Counter-Plaintiff's August 24, 2026 email, which described ECF No. 184 as before the Court but neither attached the pleading nor purported to serve it.

Plaintiff files this Motion by the earliest potentially applicable response deadline to avoid the risk of default, without conceding that service was properly accomplished or waiving her objection to the sufficiency of service. Plaintiff requests that the Court determine whether ECF No. 184 was served in compliance with Rule 5 and, if not, direct proper service and establish the resulting response deadline.

## VI. ECF NO. 184 FAILS TO IDENTIFY THE COUNTERCLAIMANT AND REQUIRES CLARIFICATION UNDER RULE 12(e), RULE 10(a), AND RULE 17(a)

Under the heading "Parties and Jurisdiction," ECF No. 184 identifies Counter-Plaintiff as "the Defendant sued under the disputed designation 'Danielle Robertson'" and expressly alleges that "'Danielle Robertson' is not Counter-Plaintiff's legal name." ECF No. 184, PageID.4171, ¶¶113–114. The same section invokes federal-question and supplemental jurisdiction, preserves an "anonymity" objection, and seeks prospective injunctive relief and damages. *Id.*, ¶¶117–120.

ECF No. 184 nevertheless asserts six counterclaims and is signed "Danielle Robertson." ECF No. 184-1, PageID.4341–4342. On August 17, 2026, Defendant separately represented that her legal name is "Josephine Kennedy" and described herself as "the individual sued in this action under the designation 'Danielle Robertson.'" ECF No. 187, PageID.4415. ECF No. 184 does not

identify "Josephine Kennedy" in its caption, party allegations, or signature as the person asserting the counterclaims.

Rule 10(a) requires the title of a pleading to name all parties, and Rule 17(a) requires an action to be prosecuted by the real party in interest. The same real-party-in-interest issue applies to the allegations concerning Williams. Defendant cannot recover for Williams's injuries or attribute Williams's conduct to Plaintiff without facts establishing a legally sufficient relationship. This argument neither concedes that Williams acted independently of Defendant nor limits Defendant's potential liability for her own participation in conduct involving Williams.

Plaintiff seeks sufficient disclosure and verification of Defendant/Counter-Plaintiff's legal name and postal address to prepare a response and to ensure that any resulting judgment identifies the person entitled to or subject to relief. A designated mailing address may facilitate service, but it does not resolve the admitted difference between the name of the Counter-Plaintiff in ECF No. 184 and the legal name asserted in ECF No. 187.

Accordingly, Plaintiff requests that Defendant/Counter-Plaintiff be required to identify the real party asserting the counterclaims, provide sufficient verification of her legal name and postal address, and amend the caption, party allegations, and signature accordingly. Alternatively, Defendant/Counter-Plaintiff should be required under Rule 12(e) to explain the relationship between "Danielle Robertson" and "Josephine Kennedy," identify the person who owns each asserted claim, and provide a postal address for service.

## VII. THE COUNTERCLAIMS FAIL TO STATE CLAIMS UPON WHICH RELIEF CAN BE GRANTED UNDER RULE 12(b)(6)

### A. Independent nonparties and Keva Williams

The counterclaims mix Plaintiff's alleged acts with independent speech and disputes involving HearHerTV, Donat Ricketts, Jennifer Luv Spewitt, Marquisio Watson, Kimberly Smith, and others. Defendant does not plausibly allege that Plaintiff employed, controlled, directed, authorized, adopted, or ratified those speakers' statements. Independent third-party speech is not Plaintiff's publication merely because it occurred within the same online controversy.

The same problem attends the Williams material. Rule 17(a) requires an action to be prosecuted in the name of the real party in interest, and Defendant may recover only for a legally cognizable injury of her own. To the extent any counterclaim seeks recovery for an injury allegedly suffered by Williams or attributes Williams's statements or conduct to Plaintiff without facts establishing authorization, direction, agency, adoption, ratification, or another legally sufficient relationship, it fails. Nothing in this argument concedes that Williams acted independently of Defendant or limits Plaintiff's contention that Defendant may be held liable for her own participation in conduct involving Williams.

**B. Count I — Defamation, Defamation Per Se, and Defamation by Implication**

Michigan requires a false and defamatory statement concerning the claimant, an unprivileged publication to a third party, fault amounting to at least negligence, and either actionability without special harm or special harm caused by the publication. *Mitan v. Campbell*, 474 Mich. 21, 24; 706 N.W.2d 420 (2005).

A plaintiff alleging defamation by implication must still prove material falsity. *Locricchio v. Evening News Ass'n,* 438 Mich. 84, 130-31; 476 N.W.2d 112 (1991). Protected opinion, rhetorical hyperbole, speculation, and questions that do not assert facts provable as false are not actionable merely because they are harsh or critical. *Ghanam v. Does*, 303 Mich. App. 522, 545; 845 N.W.2d 128 (2014).

Count I spans approximately eighteen pages and incorporates hundreds of preceding allegations. ECF No. 184-1, PageID.4291–4309, ¶¶596–686. It combines distinct theories—including Allen identification, "Dirty 40" coordination, commercial-sex implications, impersonation, financial dishonesty, computer misconduct, and surveillance—within a single count. *Id.* ¶¶597–640. Paragraphs 637–639 and 675 allege falsity collectively without consistently identifying, for each timely publication, the challenged words, the alleged false fact or implication, why the language constitutes fact rather than inquiry or opinion, the facts supporting fault, and the injury attributable to that publication.

ECF No. 184-1 itself acknowledges that Plaintiff repeatedly expressed uncertainty concerning the Allen identification. *Id.*, PageID.4273, ¶536 (alleging that Plaintiff stated, "I didn't say she was, but I didn't rule it out either"); *id.*, PageID.4334, ¶851 (alleging that Plaintiff did not know the identification "100%," described it as "not scientific as a fact," and stated that Defendant "may not be Danielle Elizabeth Allen").

Those pleaded qualifications undermine Count I's collective characterization of every Allen-related discussion as an unequivocal factual representation that Defendant was Allen. Count I does not plausibly explain how each challenged publication, considered in its complete context and including the pleaded qualifications, nevertheless conveyed the materially false factual identification alleged.

Defendant also relies upon statements by nonparties as evidence of the meaning allegedly conveyed while acknowledging that those statements were not Plaintiff's speech. *Id.* ¶¶601–605, 615. ECF No. 184 further alleges that Plaintiff used questions and qualifying terms including "maybe," "could," and "rule it in, rule it out." *Id.* ¶¶658–659. Audience reactions cannot substitute for an actionable statement by Plaintiff, and the pleaded questions and qualifications must be evaluated as part of each publication's complete context.

**1. Plaintiff Affirmatively Asserts the Statute of Limitations as to Count I**

Plaintiff/Counter-Defendant affirmatively asserts the statute of limitations under Federal Rule of Civil Procedure 8(c)(1). Michigan's one-year limitations period governs claims for libel and slander. Mich. Comp. Laws § 600.5805(11). Defendant/Counter-Plaintiff first asserted her counterclaims on August 10, 2026. Accordingly, absent a specifically pleaded and legally sufficient basis for tolling, relation back, recoupment, or another applicable exception, Count I is barred to the extent it seeks affirmative recovery based upon any publication made before August 10, 2025.

This defense applies to the Allen-related publications alleged to have occurred before August 10, 2025, including the extensive publications alleged during 2023 and 2024. For example, paragraphs 364–365 concern a June 6, 2024 publication allegedly associating Defendant/Counter-Plaintiff with Allen-related criminal material. ECF No. 184, PageID.4234–4235, ¶¶364–365. Although Defendant/Counter-Plaintiff characterizes that publication as historical context concerning notice, fault, and related matters, its incorporation into ECF No. 184 does not revive an expired affirmative claim for defamation damages or restart the limitations period.

Defendant/Counter-Plaintiff acknowledges more generally that substantial portions of the 2022–2024 material are offered as context, notice, fault, setoff, or recoupment rather than as independently timely publications supporting affirmative recovery. ECF No. 184-1, ¶¶622, 626–630, 665–671. Historical allegations may be considered only for a legally permissible purpose and cannot be aggregated with timely publications to obtain affirmative recovery that the limitations statute otherwise bars. Each publication dated August 10, 2025 or later must be evaluated separately and must independently satisfy every required element of the asserted

claim. Incorporating historical allegations into Counts I through VI does not restart an expired limitations period or revive an affirmative claim that would be untimely if pleaded directly.

Count I should therefore be dismissed to the extent it seeks affirmative recovery based upon publications made before August 10, 2025. Count I should otherwise be dismissed to the extent it rests upon independent third-party speech, protected opinion or inquiry, or allegations that fail to identify a materially false statement or implication attributable to Plaintiff. Alternatively, the publication-by-publication and Allen-related particulars requested under Rule 12(e) are set forth in Section VIII.

Count I should be dismissed.

**C. Count II — Civil Stalking**

Michigan's civil action, Mich. Comp. Laws § 600.2954, depends on conduct prohibited by § 750.411h: a willful course of repeated or continuing harassment, meaning two or more separate unconsented contacts that would cause a reasonable person emotional distress and that did so. Electronic contact can qualify. Protected activity and conduct serving a legitimate purpose do not.

Defendant already carves out criticism, hashtags, public-record review, lawful litigation and discovery, a single visit to a public Stationhead room, a tag that may not have generated a notification, and independent acts of nonparties. ECF No. 184-1, ¶¶694–696, 701–703, 710, 717. After those carve-outs, Count II still does not identify the two or more remaining acts that were unprotected, unconsented contacts directed by Plaintiff to Defendant. Collectively grouping mentions, public commentary, identity research, nonparty conduct, and unspecified future evidence does not plausibly establish the required statutory course.

To the extent Count II seeks damages for an injury that accrued before August 10, 2023, the claim falls outside Michigan's three-year limitations period for injury to a person. Mich. Comp. Laws § 600.5805(2). Incorporating older contacts as background does not eliminate Defendant/Counter-Plaintiff's obligation to identify two or more qualifying acts supporting a claim that accrued within the applicable period.

Williams, Watson, Smith, and similar nonparties are not Plaintiff's contacts without facts of agency or direction. The two-act inventory requested under Rule 12(e) is set forth in Section VIII.

Count II should be dismissed.

**D. Count III — Intentional Infliction of Emotional Distress**

The claim requires extreme and outrageous conduct, intent or recklessness, causation, and severe emotional distress. *Roberts v. Auto-Owners Ins. Co.*, 422 Mich. 594, 602–03; 374 N.W.2d 905 (1985). The conduct must exceed all reasonable bounds of decency; liability does not extend to mere insults, indignities, threats, annoyances, or petty oppressions. *Lucas v. Awaad*, 299 Mich. App. 345, 359; 830 N.W.2d 141 (2013).

Count III stacks the same online criticism, tags, public-record discussion, alleged access after blocking, Stationhead presence, identity research, and nonparty communications already used in Counts I and II. ECF No. 184-1, ¶¶725–750. Defendant admits that protected speech and ordinary criticism cannot independently support the claim. *Id.*, ¶¶730–732, 750. The facts alleged concerning the remaining acts do not plausibly show conduct exceeding all reasonable bounds of decency, and the distress allegations are collective.

Defendant/Counter-Plaintiff also may not avoid the one-year limitations period governing libel and slander by relabeling the same allegedly defamatory publications and resulting reputational

injury as intentional infliction of emotional distress. To the extent Count III rests upon the same publications underlying the time-barred portion of Count I, that portion of Count III is likewise untimely. Mich. Comp. Laws § 600.5805(11). Any independently actionable nonspeech conduct remains subject to the limitations period otherwise governing that conduct.

Count III should be dismissed.

**E. Count IV — 17 U.S.C. § 512(f)**

Section 512(f) imposes liability only for a knowing misrepresentation of infringement — an incorrect copyright claim is not enough. The statute requires a demonstration of actual knowledge of misrepresentation on the part of the copyright owner. *Rossi v. Motion Picture Ass'n of Am., Inc.*, 391 F.3d 1000, 1004–05 (9th Cir. 2004).

Count IV concerns four December 2024 YouTube notices about a composite image. ECF No. 184-1, ¶¶752–789. Alleging that Plaintiff did not record the court footage, did not create Defendant's later composite, and later had a registration refused does not plead that Plaintiff knew in December 2024 that the representation in each notice was false. Count IV also does not isolate the work claimed, the exact representation, YouTube's reliance on that notice, and damages from that reliance as opposed to this lawsuit.

Count IV should be dismissed.

**F. Count V — False Light**

False light requires publicity placing the claimant in a false light highly offensive to a reasonable person, with knowledge or reckless disregard of the falsity and of the false light. It is not a second label for every defamation theory. *Puetz v. Spectrum Health Hospitals*, 324 Mich. App.

51, 69; 919 N.W.2d 439 (2018); *Foundation for Behavioral Resources v. W.E. Upjohn Unemployment Trustee Corp.*, 332 Mich. App. 406, 413; 957 N.W.2d 352 (2020).

Count V incorporates Count I's publications and alleges a cumulative "false persona." ECF No. 184-1, ¶¶818–858. Defendant acknowledges that public commentary and matters not implicating privacy or private life do not independently establish the tort. *Id.*, ¶¶822–823. Paragraph 858 then incorporates groups of publications only to the extent they implicate privacy interests or otherwise satisfy Michigan's false-light requirements. That conditional incorporation does not identify which particular publicity independently satisfies the elements of false light.

To the extent Count V merely repackages the same allegedly defamatory publications and reputational injury underlying Count I, publications made before August 10, 2025, cannot support affirmative recovery merely because they are relabeled as false light. Mich. Comp. Laws § 600.5805(11). Independently actionable privacy conduct, if any, must be evaluated under the limitations period applicable to that conduct.

Count V should be dismissed.

**G. Count VI — Appropriation of Name or Identity**

Appropriation requires unauthorized use of another's name or likeness for the user's advantage. Commentary, even when monetized, does not alone establish appropriation. *Doe v. Mills*, 212 Mich. App. 73, 80; 536 N.W.2d 824 (1995); *Battaglieri v. Mackinac Ctr. for Pub. Policy,* 261 Mich. App. 296, 300–02; 680 N.W.2d 915 (2004).

Count VI alleges that Defendant/Counter-Plaintiff registered MessyDani.com in September 2021, that "MessyDani" previously identified her online identity, and that Plaintiff later used $MessyDani and messydani in connection with payment and social-media activity. ECF No. 184-1, PageID.4336–4339, ¶¶861–878. Although the pleading characterizes "MessyDani" as

Defendant/Counter-Plaintiff's preexisting identity and alleges that Plaintiff obtained financial or promotional benefit, those characterizations are conclusions. Registration of a domain name, without supporting facts concerning public use, recognition, or identity value, does not plausibly establish that "MessyDani" functioned as Defendant/Counter-Plaintiff's name or identity when Plaintiff allegedly used it.

Count VI also does not identify when each challenged use occurred, what particular payment or promotional transaction resulted, or facts showing that an audience member or payer understood Plaintiff's use of "MessyDani" as an appropriation of Defendant/Counter-Plaintiff's identity rather than as a designation used in commentary concerning her. Without those facts, the pleading does not plausibly connect any alleged benefit to the identity value of Defendant/Counter-Plaintiff's name.

Alternatively, Defendant/Counter-Plaintiff should be required under Rule 12(e) to identify each challenged use, its date and platform, the facts showing that "MessyDani" publicly identified her before that use, and the particular benefit or injury allegedly resulting from the appropriation.

Count VI should be dismissed.

## VIII. ALTERNATIVELY, ECF NO. 184 REQUIRES A MORE DEFINITE STATEMENT UNDER RULE 12(e)

Plaintiff cannot reasonably determine which third-party allegations Defendant attributes to Plaintiff, which are offered only as alleged audience reactions or background, and which Defendant contends satisfy an element of a particular counterclaim. ECF No. 184 repeatedly incorporates extensive preceding allegations without consistently connecting each alleged act, publication, speaker, or nonparty to a particular count.

With respect to allegations involving independent nonparties, Defendant/Counter-Plaintiff should be required to identify: (1) each particular statement or act by a nonparty that she seeks to attribute to Plaintiff; (2) the identity of the nonparty; (3) the factual and legal basis for attributing that statement or conduct to Plaintiff, including any alleged authorization, direction, agency, adoption, ratification, or other legally sufficient relationship; (4) the particular counterclaim and element allegedly supported; and (5) the injury allegedly suffered by Defendant/Counter-Plaintiff as a result. Mere participation in the same online controversy, discussion of the same subject, or interaction in a publicly accessible forum does not, without additional supporting facts, make an independent nonparty's speech or conduct attributable to Plaintiff.

If any counterclaim is not dismissed, Defendant/Counter-Plaintiff should be required under Rule 12(e) to provide a more definite statement identifying, with respect to each surviving counterclaim: (1) the particular statement or conduct upon which the claim is based; (2) the person who allegedly made the statement or committed the act; (3) when and where it allegedly occurred; (4) the particular count and element the allegation allegedly supports; and (5) the injury allegedly caused by that statement or conduct.

With respect to Count I, Defendant/Counter-Plaintiff should be required to identify each publication for which she seeks affirmative recovery; the publication date; the precise words or materially false implication challenged; the complete context allegedly conveying that implication; whether the language is alleged to constitute fact rather than opinion, inquiry, speculation, or rhetorical characterization; the facts allegedly establishing fault; the injury attributable to that publication; and any legal basis upon which she contends that a publication made before August 10, 2025, remains actionable for affirmative recovery.

ECF No. 184 expressly places Defendant/Counter-Plaintiff's copyright complaints, privacy complaints, takedown requests, and other efforts to remove Allen-related content at issue while

denying that those actions establish any relationship to Danielle Elizabeth Allen or the Allen family. ECF No. 184, PageID.4252–4253, ¶¶453–454. To the extent Defendant/Counter-Plaintiff relies upon those allegations in support of Count I or Count V, she should be required to clarify which complaints or requests are implicated; whether she submitted them personally or through another person; the capacity or identity under which they were submitted; the allegedly false inference Plaintiff drew from them; and how Plaintiff's discussion of those complaints allegedly caused a legally cognizable injury.

With respect to Count II, Defendant/Counter-Plaintiff should be required to identify the specific two or more separate, noncontinuous acts upon which the alleged statutory course of conduct depends; the date, platform, sender, and recipient of each alleged contact; whether each electronic communication was actually directed or delivered to Defendant/Counter-Plaintiff; the notice allegedly applicable to each act; why each act allegedly lacked a legitimate purpose or constitutional protection; and the injury allegedly caused by the identified conduct.

With respect to the Williams-related allegations specifically, if Defendant/Counter-Plaintiff contends that those allegations establish an injury personal to Defendant/Counter-Plaintiff, she should be required to identify the particular conduct, explain how that conduct injured Defendant/Counter-Plaintiff rather than Williams, and identify the counterclaim and element allegedly supported.

This clarification is necessary for Plaintiff to prepare a reasonable responsive pleading without being required to speculate about which of the numerous incorporated allegations Defendant relies upon for each claim.

**IX. THE COURT SHOULD CONSIDER STRIKING REDUNDANT, IMMATERIAL, IMPERTINENT, OR SCANDALOUS MATTER UNDER RULE 12(f)(1)**

ECF No. 184 repeatedly incorporates overlapping narratives concerning Plaintiff, independent nonparties, and collateral online disputes into multiple counterclaims. Plaintiff does not seek to strike matter merely because it is lengthy, offensive, or involves a nonparty. But the Court previously observed that "Defendant's brief is not well organized, repetitive, does not cite much, if any, caselaw, and is generally difficult to understand." ECF No. 118, PageID.2375. The Court also found that "Defendant's exhibits are repetitive and too long" and that her submissions were "inappropriately lengthy because they are needlessly repetitive." *Id.*, PageID.2387. Although those findings concerned earlier submissions, ECF No. 184 presents a similar organizational problem.

After determining which counterclaims remain, the Court should consider exercising its authority under Rule 12(f)(1) to strike repeated matter that has no possible bearing upon a viable counterclaim and is redundant, immaterial, impertinent, or scandalous. Alternatively, Plaintiff requests the more definite statement described in Section VIII.

**X. THIS MOTION CONSOLIDATES PLAINTIFF'S PRESENTLY AVAILABLE RULE 12 DEFENSES AND OBJECTIONS UNDER RULES 12(g) AND 12(h)**

Consistent with Rules 12(g) and 12(h), Plaintiff consolidates all presently available Rule 12 defenses and objections, including those under Rules 12(b)(6) and 12(e), and requests consideration under Rule 12(f)(1). Rule 12(h)(2) preserves the failure-to-state-a-claim defense.

Plaintiff separately objects to service under Rule 5 but does not invoke Rule 12(b)(5), because ECF No. 184 is a pleading filed in an existing action rather than original process governed by Rule 4.

Plaintiff also asserts the statute of limitations as to Count I. If an answer is required, she may assert additional affirmative defenses supported by the record and information then reasonably

available. Nothing in this Motion admits any allegation or waives any defense properly raised in a subsequent responsive pleading.

## XI. THE TIMING AND SCOPE OF THE COUNTERCLAIMS SUPPORT ALTERNATIVE RELIEF AND DEMONSTRATE SUBSTANTIAL PREJUDICE

On May 23, 2026, before the Court resolved Defendant's renewed motion to dismiss at ECF No. 77, Defendant publicly discussed Plaintiff's single remaining claim and expressly described it as involving herself and "Come Get This Commentary." Defendant stated: "Now, if that claim is kept and it continues on, there's gonna be a 'curveball' that she doesn't expect and no one will expect. It's gonna be shocking." Later in the same broadcast, Defendant again stated that, if the Court kept "that one thing open," "there is gonna be a curveball," that "people will be shocked," and that she would disclose information only when another person could not "know my next move or my next strategy." Exhibit A, *The Dani Robertson After Show Cafe! The Secret OPP Recording! CPS! Terminations! Audience Choice!*, at 39:05–39:51, 49:36–51:18 (streamed live May 23, 2026); see also ECF No. 160, PageID.3508–3509.

After the Court confirmed on July 21, 2026, that Plaintiff's remaining claim would proceed, Magistrate Judge Stafford recommended default judgment against Defendant on August 6, 2026. ECF Nos. 173, 175. Defendant filed her original counterclaims on August 10, 2026. The Amended Report and Recommendation again recommended default judgment on August 12, 2026, and Defendant filed her amended counterclaims on August 17, 2026. ECF Nos. 181, 184.

Those counterclaims rest substantially on events, publications, and materials long known to Defendant. On this record, the timing, the extraordinary scope, and Defendant's preceding "curveball" and "next strategy" statements support a reasonable inference that the counterclaims were a contemplated litigation response after the Court allowed Plaintiff's remaining claim to proceed.

Count II and Defendant's request for prospective injunctive relief also arise against a documented history of restraining-order-related statements concerning Plaintiff. Defendant publicly identified Plaintiff by name while characterizing her as a stalker and referring to the upcoming PPO proceeding initiated by nonparty Keva Williams. ECF No. 160-2, PageID.3715 (Ex. U-7). Defendant subsequently stated that Plaintiff's name would appear as the respondent in a cyberstalking restraining order and expressed hope that the proceeding would be the "first of many" producing "real life consequences." ECF No. 160-1, PageID.3596; ECF No. 160-3, PageID.3771 (Ex. PP). Defendant also displayed Williams's LARA complaint and encouraged additional complaints, lawsuits, and restraining orders against Plaintiff. ECF No. 160-2, PageID.3730 (Ex. W); ECF No. 160-3, PageID.3779 (Ex. SS). Plaintiff's original Complaint further alleged that, on April 27, 2024, Defendant published a document purporting to be a second PPO against Plaintiff, bearing Plaintiff's name with the statement: "Unethical PA in Northville, Michigan—A PPO WAS FILED! PAPER TRAIL." ECF No. 1, PageID.81 (Ex. O1). Plaintiff has not independently confirmed whether that document or related material was transmitted to LARA.

Two days after filing ECF No. 184, Defendant publicly reaffirmed her intention to pursue restraining-order relief. During an August 19, 2026 livestream, Defendant stated: "I have a mountain of evidence I'm going to be submitting, and I am going to try to get a restraining order against that person." "If it doesn't go through the first time, I will build up more receipts and evidence, and then I will keep on taking them back to restraining-order hearings until I finally get one if that person continues to be a stalker." Defendant then described that individual as "the first person I plan on getting a restraining order against on the YouTube." Exhibit B, *The Dani Robertson Aftershow Cafe: Trevor vs Jaguar Wright*, at 20:16–21:13 (streamed live Aug. 19, 2026).

Viewed with Defendant's earlier statements identifying Plaintiff, the August 19 reference to "that person" reasonably refers to Plaintiff. The video is offered only as context bearing on timing, prejudice, and alternative relief—not as an independent basis for dismissal under Rule 12(b)(6) or adjudication of any future restraining-order request.

Permitting the counterclaims to proceed as pleaded would prejudice Plaintiff, burden the Court, and delay her remaining claim, which is subject to a pending default recommendation. At minimum, Count II requires a more definite statement identifying the qualifying acts allegedly directed at Defendant, rather than Williams-related matters, and distinguishing them from protected or legitimate activity and nonparty conduct.

**XII. RULE 12(a)(4) GOVERNS THE DEADLINE FOR ANY RESPONSIVE PLEADING FOLLOWING DISPOSITION OF THIS MOTION**

Under Rule 12(a)(4), service of this Motion alters the time for serving a responsive pleading unless the Court orders otherwise. If any counterclaim remains after disposition of this Motion, Plaintiff's deadline to answer that counterclaim should be governed by Rule 12(a)(4) or another deadline established by the Court.

**XIII. CONCURRENCE**

Pursuant to E.D. Mich. LR 7.1(a), Plaintiff/Counter-Defendant sought Defendant/Counter-Plaintiff's concurrence by email on August 29, 2026. On August 31, 2026, Defendant requested clarification of the grounds and alternative relief. Plaintiff provided that clarification, after which Defendant confirmed that she did not concur in dismissal of Counts I–VI or in any requested alternative relief. Plaintiff was therefore unable to obtain concurrence.

**XIV. RELIEF REQUESTED**

WHEREFORE, Plaintiff/Counter-Defendant respectfully requests that the Court:

1. **DETERMINE** whether ECF Nos. 179 and 184 were timely under Rules 12(a)(4)(A) and 6(b)(1)(B) and whether ECF No. 184 was served in compliance with Rule 5;
2. **DISMISS** Counts I through VI of Defendant/Counter-Plaintiff's counterclaims under Rule 12(b)(6) for failure to state claims upon which relief can be granted;
3. **DISMISS** Count I to the extent it seeks affirmative recovery based upon publications made before August 10, 2025, absent a specifically pleaded and legally sufficient basis for tolling, relation back, or another applicable exception, and limit any use of older publications to a legally permissible contextual or defensive purpose, including setoff or recoupment to the extent permitted by law;
4. **ALTERNATIVELY, REQUIRE** the more definite statement and identity clarification requested under Rule 12(e) in Sections VI and VIII;
5. **CONSIDER** whether to exercise its authority under Rule 12(f)(1) to strike redundant, immaterial, impertinent, or scandalous matter having no possible bearing upon any surviving counterclaim;
6. **PROVIDE** that Plaintiff/Counter-Defendant's deadline to answer any surviving counterclaim will be governed by Rule 12(a)(4) and the Court's disposition of this Motion; and
7. **GRANT** such other relief as the Court deems appropriate.

Respectfully submitted,

/s/ Sybrena Evans

Sybrena Evans, Pro Se

17710 Lakeview Cr.

Northville, MI 48168

Dated: August 31, 2026

**DECLARATION OF SYBRENA EVANS IN SUPPORT OF HER CONSOLIDATED PRE-ANSWER RULE 12 MOTION TO DISMISS DEFENDANT/COUNTER-PLAINTIFF'S COUNTERCLAIMS (ECF NO. 184) AND FOR ALTERNATIVE RELIEF**

I, Sybrena Evans, declare as follows:

1. I am the Plaintiff/Counter-Defendant in this action. I make this Declaration from my personal knowledge in support of the accompanying Motion.
2. I did not receive ECF No. 184 or its accompanying attachments by mail or email. I am not authorized to receive service through CM/ECF and received no electronic notice through that system. I learned of the amended filing by reviewing the docket.
3. On May 23, 2026, I viewed and preserved a publicly available livestream titled *"The Dani Robertson After Show Cafe! The Secret OPP Recording! CPS! Terminations! Audience Choice!"* I reviewed the portions appearing at approximately 39:05–39:51 and 49:36–51:18. Exhibit A contains true and correct transcript excerpts as I heard them, together with information identifying the livestream.
4. On August 19, 2026, I viewed and preserved a publicly available livestream titled *"The Dani Robertson Aftershow Cafe: Trevor vs Jaguar Wright."* I reviewed the portion appearing at approximately 20:16–21:13. Exhibit B contains a true and correct transcript excerpt as I heard it, together with information identifying the livestream.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on August 31, 2026, in Northville, Michigan.

/s/ Sybrena Evans

Sybrena Evans

Plaintiff/Counter-Defendant, Pro Se

**CERTIFICATE OF SERVICE**

I certify that on August 31, 2026, I served the foregoing Motion, supporting Declaration, and attached exhibits by First-Class U.S. Mail upon:

Danielle Robertson

4539 N. 22nd St. Suite R.

Phoenix, Arizona 85016

/s/ Sybrena Evans

Sybrena Evans

## TABLE OF AUTHORITIES

### CASES

*Ashcroft v. Iqbal,* 556 U.S. 662, 678–79 (2009)

*Battaglieri v. Mackinac Ctr. for Pub. Policy,* 261 Mich. App. 296; 680 N.W.2d 915 (2004)

*Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 555, 570 (2007)

*Doe v. Mills*, 212 Mich. App. 73; 536 N.W.2d 824 (1995)

*Foundation for Behavioral Resources v. W.E. Upjohn Unemployment Trustee Corp.*, 332 Mich. App. 406; 957 N.W.2d 352 (2020)

*Ghanam v. Does*, 303 Mich. App. 522; 845 N.W.2d 128 (2014)

*Locricchio v. Evening News Ass'n,* 438 Mich. 84; 476 N.W.2d 112 (1991)

*Lucas v. Awaad*, 299 Mich. App. 345; 830 N.W.2d 141 (2013)

*Mitan v. Campbell,* 474 Mich. 21; 706 N.W.2d 420 (2005)

*Puetz v. Spectrum Health Hospitals*, 324 Mich. App. 51; 919 N.W.2d 439 (2018)

*Roberts v. Auto-Owners Ins. Co.*, 422 Mich. 594; 374 N.W.2d 905 (1985)

*Rossi v. Motion Picture Ass'n of Am., Inc.*, 391 F.3d 1000 (9th Cir. 2004)

### FEDERAL STATUTE

17 U.S.C. § 512(f)

### MICHIGAN STATUTES

Mich. Comp. Laws §§ 600.2954, 600.5805(2), 600.5805(11), and 750.411h

**FEDERAL RULES OF CIVIL PROCEDURE**

Fed. R. Civ. P. 4

Fed. R. Civ. P. 5

Fed. R. Civ. P. 6(b)(1)(B), 6(d)

Fed. R. Civ. P. 8(a)(2), 8(c)

Fed. R. Civ. P. 10(a)

Fed. R. Civ. P. 12(a)(4), 12(b)(1), 12(b)(2), 12(b)(5), 12(b)(6), 12(d), 12(e), 12(f), 12(g), 12(h)

Fed. R. Civ. P. 15(a)(1)(A)

Fed. R. Civ. P. 17(a)

**LOCAL RULE**

E.D. Mich. LR 7.1(a)

**CERTIFICATION OF CITATIONS**

Plaintiff certifies that she has personally checked each legal citation contained in this Motion, and each citation is accurate and stands for its asserted proposition. Plaintiff has also personally checked the citations and references to the case record, including ECF docket entries and PageID references, for accuracy.

/s/ Sybrena Evans

Sybrena Evans

**EXHIBITS**

**PLAINTIFF/COUNTER-DEFENDANT SYBRENA EVANS'S CONSOLIDATED PRE-ANSWER RULE 12 MOTION TO DISMISS DEFENDANT/COUNTER-PLAINTIFF'S COUNTERCLAIMS (ECF NO. 184) AND FOR ALTERNATIVE RELIEF**

The following exhibits are attached:

**Exhibit A** — May 23, 2026 "Curveball" Statements: Video Screenshot and Timestamped Transcript Excerpts

**Exhibit B** — August 19, 2026 "Restraining-Order" Statements: Video Screenshot and Timestamped Transcript Excerpt

**EXHIBIT A**

**MAY 23, 2026 "CURVEBALL" VIDEO STATEMENTS—VIDEO SCREENSHOT AND TIMESTAMPED TRANSCRIPT EXCERPTS**

**Video:** *The Dani Robertson After Show Cafe! The Secret OPP Recording! CPS! Terminations! Audience Choice!*

Streamed live May 23, 2026

Relevant excerpts: 39:05–39:51 and 49:36–51:18

This exhibit contains a screenshot identifying the video and excerpts from Plaintiff/Counter-Defendant's personally preserved, timestamped transcript. In the excerpts, Defendant/Counter-Plaintiff identifies Plaintiff's remaining claim as involving herself and "Come Get This Commentary," states that continuation of that claim would produce an unexpected "curveball," and discusses withholding her "next move" or "next strategy."



**EXHIBIT A — TIMESTAMPED TRANSCRIPT EXCERPTS**

39:05–39:15

"Let me say this. In that case, there will possibly be a 'curveball' depending on the decision that is made. In that case right now, there's only one claim remaining."

39:18–39:31

"The judge has recommended for dismissal almost a whole case besides one case which she's made up sh*t about, by the way, involving me and Come Get This Commentary and we've filed false reports against her on a medical board which is not true."

39:33–39:43

"Now, if that claim is kept and it continues on, there's gonna be a 'curveball' that she doesn't expect and no one will expect. It's gonna be shocking."

39:45–39:51

"And that's all I can really say. That's all I'm gonna say. If the case is dismissed and then it's dismissed but there's only one thing."

49:36–50:20

"She misrepresented that she owned it to the Copyright Office. No one has to talk about any of this fraudulent misrepresentation because of course it's not gonna fit their narrative. No one's gonna talk about a lot of other stuff that she put in there that's frivolous and lies and that's why all that stuff, a lot of that stuff was wiped out and there's only one thing left and even that is a lie but because we never accused her of no medical malpractice. It's a lie, so we it has to be investigated, looked into. So we're waiting right now for the judge to decide whether she's gonna

let this in the case, that one last thing which she said, me and Come Get This Commentary accused her of some sort of malpractice… but that's the last thing that's remaining."

50:27–50:45

"Once that's decided whether to keep that or dismiss that, then we'll see. But I will tell you this, if they decide to keep that one thing open, there is gonna be a 'curveball' and I can't say what it is but it will be a 'curveball' and people will be shocked and I will let y'all know what the 'curveball' is going to be when I can actually say what it's gonna be and it will be shocking."

50:49–51:18

"Okay, so anyway, it's probably if you get both of what's happening now with both cases. So that's what's happening with both and all I can say is when it's time to update, I will let you all know what's going on. It's not a hidden secret. It's not. It's called keeping it cute, keeping it moving, keeping it classy. I have to only tell y'all things when it's safe to tell y'all and when someone cannot use it against me or when someone cannot know my next move or my next strategy. And I'm only saying this now because people are trying to milk this."

— Danielle Robertson

**EXHIBIT B**

**AUGUST 19, 2026 "RESTRAINING-ORDER" VIDEO STATEMENTS—VIDEO SCREENSHOT AND TIMESTAMPED TRANSCRIPT EXCERPT**

**Video:** *The Dani Robertson Aftershow Cafe: Trevor vs Jaguar Wright*

Streamed live August 19, 2026

Relevant excerpt: 20:16–21:13

This exhibit contains a screenshot identifying the video and a timestamped transcript excerpt in which Defendant/Counter-Plaintiff discusses accumulating evidence and repeatedly pursuing restraining-order proceedings if an initial request were unsuccessful and conduct she characterized as stalking continued and seeking such relief against the person discussed in connection with Plaintiff's remaining lawsuit. The exhibit is cited in Section XI as documented context relevant to Count II and is not offered as an independent ground for dismissal under Rule 12(b)(6).



**EXHIBIT B — TIMESTAMPED TRANSCRIPT EXCERPT**

20:16–20:33

"Because like I said, it stops here with this, with this creepy sh*t. Okay. That person has been creepy crawling and a stalker since 2022 when I rejected a person. I have a mountain of evidence I'm going to be submitting and I am going to try to get a restraining order against that person."

20:33–20:50

"If it doesn't go through the first time, I will build up more receipts and evidence and then I will keep on taking them back to restraining order hearings until I finally get one if that person continues to be a stalker. Okay. But yeah, that, that co-defendant, that's the first person I plan on getting a restraining order against on the YouTube."

20:50–21:06

"Okay, I don't make videos on that person. I don't add that person. I don't contact that person. That person's elderly. I ignore that person, but they keep on stalking me and it's creepy. And even the judge said that person is fixated on me. So, I do want a restraining order against that person. Okay?"

21:06–21:13

"Anyway, if they violate a restraining order then you know what that means, contempt. Just like the other person got contempt of court. But this would be a criminal contempt one if you violate the restraining order. I'm just saying."

— Danielle Robertson